**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

KATE BRAVERMAN,

        Plaintiff,

vs.                                                                      No. CIV 11-0829 JB/WDS

THE STATE OF NEW MEXICO,
THE HONORABLE SARAH SINGLETON, and
JAMES HALL

        Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) Plaintiff's Amended Motion for Temporary

Restraining Order and Brief in Support, filed September 30, 2011 (Doc. 10)("Amended Motion");

(ii) Plaintiff's Second Emergency Motion for Temporary Restraining Order and Brief in Support,

filed February 28, 2012 (Doc. 29)("Second Motion"); and (iii) Plaintiff's Supplement to Second

Emergency Motion for Temporary Restraining Order and Brief in Support, filed February 29, 2012

(Doc. 31)("Second Supplement"). The Court held a hearing on March 22, 2012. The primary issues

are whether the Court should enter an order: (i) enjoining Defendant State of New Mexico, acting

through its agent the Honorable Sarah Singleton, District Judge, First Judicial District, State of New

Mexico, from allowing Alan H. Goldstein to further dissipate Plaintiff Kate Braverman's inherited

Individual Retirement Account ("IRA") assets in the account that Judge Singleton has seized; and

(ii) enjoining former Defendant LPL Financial Corporation from transferring any of Braverman's

IRA assets to Braverman's former husband, Alan H. Goldstein, or otherwise without Braverman's

consent. The Court will deny the Second Motion for reasons stated on the record at the hearing, and

for further reasons stated herein: the Second Motion does not overcome the legal barriers to her

Motion for Temporary Restraining Order, filed September 16, 2011 (Doc. 2)("Motion for TRO"), which the Court explained in its Memorandum Opinion, filed October 19, 2011 (Doc. 19)("Memorandum Opinion"); and (i) Braverman's loss in New Mexico state district court against the State of New Mexico and Judge Singleton precludes her from re-litigating some issues and likely some claims in federal court; and (ii) the Court must abstain from interfering with ongoing state-court judicial proceedings.

## FACTUAL BACKGROUND

This motion requires the Court to discuss not only cases before the Court, but also cases filed in the state court for the State of New Mexico, First Judicial District Court, as well as appeals to the United States Court of Appeals for the Tenth Circuit.  Braverman filed two state cases before she filed this federal case.  The Court will discuss each of Braverman's two prior state cases first.

1.    **Braverman's Divorce Proceedings.**

Braverman and her husband, Goldstein, are embroiled in a divorce proceeding in New Mexico state district court.  See First Amended Complaint ¶ 2, at 1, filed November 7, 2011 (Doc. 21).  Braverman commenced the divorce proceeding shortly after she suffered two physical attacks at the hands of Goldstein in October of 2009.  See First Amended Complaint ¶ 12, at 3.  The Honorable Sarah Singleton, State District Judge, is presiding over Braverman v. Goldstein.  See No. D-0101-DM-2009-01009 (First Judicial District, Santa Fe County, State of New Mexico), First Amended Complaint ¶ 2, at 1.  James Hall, former First Judicial District Judge, is the appointed Special Master in the divorce proceeding.  See First Amended Complaint ¶ 3, at 1-2.  Braverman has significant assets that she maintains in a separate account with LPL Financial, an institution which Braverman asserts is outside of New Mexico.  See First Amended Complaint ¶¶ 11, 14, 18, at 3-4.

As part of the divorce proceeding, Judge Singleton ruled that Braverman should have "unfettered control" over $1.5 million in assets in the LPL Financial account, and that the remaining $800,000.00 should be put in a "secondary IRA" that Judge Singleton and Special Master Hall control.  First Amended Complaint ¶ 16, at 4.  This transfer "deprived Plaintiff of $5,000.00 per month in income that those assets generated."  First Amended Complaint ¶ 17, at 4.  Braverman alleges that, on October 12, 2010, Judge Singleton granted Goldstein a veto power over transfer, investment, or expenditures of the secondary IRA, and Goldstein unreasonably exercised that power to veto several investment plans that Braverman proposed.  See First Amended Complaint ¶¶ 21-23, at 5-6.  She asserts that Special Master Hall threatened that he would transfer the assets in the secondary IRA to the court registry if Braverman did not herself transfer the assets to a financial institution within Special Master Hall's jurisdiction.  See First Amended Complaint ¶ 24, at 6.

Braverman "suffers from moderate bi-polar disorder."  First Amended Complaint, ¶ 8, at 2.  Braverman asserts that Judge Singleton and Special Master Hall treat her differently on the basis of her disability, specifically by denying her motions and requests during the divorce proceedings.  See First Amended Complaint ¶¶ 33, 37, 45 at 8-10, 12.  Braverman asserts that Judge Singleton "was under a mistaken belief that a suspension of [Braverman's] rights was necessitated and justified by [her] bi-polar disorder."  First Amended Complaint ¶ 27, at 7.  During the divorce proceeding, Judge Singleton denied Braverman's requests for an order of protection against Goldstein, an order directing disclosure of Goldstein's address, and an order removing Goldstein's attorney, Richard S. Lees, from the case.  See First Amended Complaint ¶¶ 33-34, 37, at 8-10.  Braverman, anticipating that she would be without counsel at her second deposition,  asked Special Master Hall to permit her an accommodation in her second deposition, that "her attorney-in-fact be permitted to attend to provide the support and protection she needed to cope with her disability during the

deposition." First Amended Complaint ¶ 41, at 11. Special Master Hall denied the request. See First Amended Complaint ¶ 41, at 11. In April 2011, Special Master Hall issued Proposed Findings of Fact and Conclusions of Law, a report which included many findings and conclusions regarding Braverman's bi-polar disorder. See First Amended Complaint ¶ 45, at 12. On July 25, 2011, Judge Singleton adopted the entirety of the Proposed Findings of Fact and Conclusions of Law. See First Amended Complaint ¶ 46, at 12. Braverman asserts that, "[b]y doing so, Singleton subjected Plaintiff to discrimination by a public entity on account of a disability protected by the Americans with Disabilities Act." First Amended Complaint ¶ 46, at 12.

Braverman asserts that Judge Singleton has applied one standard to her, and another to Goldstein and LPL Financial. See Second Motion ¶ 10, at 5. Braverman further alleges that Judge Singleton "has made it impossible for Plaintiff to realize any meaningful relief from her right to one appeal" "[b]y systematically destroying the assets from which Plaintiff might realize relief on appeal." Second Motion ¶ 7, at 3. In support of this allegation, Braverman points to Judge Singleton having entered a final decree in the divorce proceeding which makes a monetary award to Goldstein but does not award him spousal support. See Second Motion ¶ 3, at 2. Judge Singleton would not allow Braverman to withdraw separate funds to pay for her counsel until after the hearing on Braverman's motion to make such withdrawals, on October 12, 2011. On October 12, 2011, "[Judge] Singleton orally ruled that the secondary IRA that [she] had previously seized should be returned to Plaintiff's control to the extent that the value of the secondary IRA exceeded the amount of the award to Goldstein." Second Motion ¶ 3, at 2. Braverman alleges that, when she sought to exercise control over the assets in the secondary IRA pursuant to Judge Singleton's oral order, Goldstein and LPL Financial refused to comply with Judge Singleton's ruling. See Second Motion ¶ 4, at 2. Braverman asserts that she sought relief from Judge Singleton, and, in response, Judge

Singleton "reversed her oral ruling and ordered that even the excess assets in the secondary IRA would not be available to [Braverman,] citing her 'post-decree motions practice' as the grounds for reversal."  Second Motion ¶ 4, at 3.  Braverman alleges that Judge Singleton's continued control of the secondary IRA is without a legal basis and, as such, "is a denial of [Braverman's] constitutional right to equal protection under the law, her constitutional property rights, and her right to equal treatment" under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213 ("ADA").  Second Motion ¶ 6, at 3.

Braverman asserts that, after the entry of the Final Decree in the divorce proceeding, she sought to use her funds to pay her divorce proceeding counsel.  See Second Motion ¶ 10, at 4.  LPL Financial refused to comply, and Judge Singleton then sanctioned Braverman for the attempted withdrawal, because Judge Singleton found it "inconceivable" that Braverman could have believed that she was entitled to use her funds in that manner.  Second Motion ¶ 10, at 4.  Braverman alleges that, when LPL Financial distributed funds to Goldstein, Judge Singleton "did nothing," and when Goldstein tried to hold Braverman in contempt, Judge Singleton denied the request, yet "refused to sanction Goldstein."  Second Motion ¶ 10, at 4.  Braverman alleges that, although Judge Singleton informed the parties that she would not reconsider her rulings, Judge Singleton granted "a motion filed by Goldstein in direct contravention of her ruling."  Second Motion ¶11, at 5.  Braverman argues that the "repeated double standard applied by Singleton is continuing and the discrimination on which it is based is continuing to damage Plaintiff."  Second Motion ¶ 11, at 5.

Braverman alleges that the disparate treatment she has received caused her to suffer financial harm in the past, and a harm which she still suffers and expects to continue into the future.  See Second Supplement at 1-3.  On February 29, 2012, Judge Singleton entered an order allowing Goldstein to remove $4,200.00 per month from Braverman's secondary IRA while the divorce

proceeding is on appeal.  See Second Supplement ¶ 2, at 1.  Braverman asserts that Goldstein received $4,200.00 per month during the pendency of the divorce proceeding and after the entry of the Final Decree.  See Second Supplement ¶ 3, at 2.  Braverman alleges that, because of these payments to Goldstein, she has lost over $134,000.00 in money transfers and associated fees.  See Second Supplement ¶ 4, at 2.

2.      **Braverman's Complaint Against the State of New Mexico and Judge Singleton in New Mexico State District Court.**

Before bringing the present matter before the Court, Braverman filed in New Mexico state district court her Complaint for Injunctive Relief Against the State of New Mexico Pursuant to 42 U.S.C. § 12101, et. seq., Title II of the Americans with Disabilities Act (ADA), No. D-101-CV-201100199 (1st Judicial Dist. Jan. 18, 2011)("State Complaint").  Similar to Braverman's filings in this Court, Braverman's State Complaint sought injunctive relief against Judge Singleton's actions in Braverman's divorce proceeding.  See State Complaint ¶ 34, at 9.  Braverman made many of the same allegations, based on the same causes of action, in her State Complaint as she has in her First Amended Complaint and Second Motion, in this first case.  In her State Complaint, Braverman asserted that Judge Singleton's orders against Braverman in the divorce proceeding violate Braverman's rights.  See State Complaint ¶ 2, at 1.  Braverman argued that Judge Singleton has acted without jurisdiction, because Judge Singleton's orders are regarding Braverman's assets, which are located out-of-state.  See State Complaint ¶ 14, at 4.  Braverman alleged that the New Mexico state district court had jurisdiction over the State of New Mexico, as a defendant, pursuant to Title II of the ADA's abrogation of sovereign immunity.  See State Complaint ¶ 5, at 2 (citing 42 U.S.C. § 12202 (1990); Tennessee v. Lane, 541 U.S. 509, 518 (2004)).  Braverman asserted that she suffers from bi-polar disorder, a protected disability under the ADA, and that Judge Singleton's

"autocratic issuance" of orders is a violation of her rights under the ADA, and her rights to due process and equal protection under the United States Constitution.  State Complaint ¶ 8, at 2. Braverman alleged that Judge Singleton's orders single Braverman out and treat her differently than non-disabled persons.  See State Complaint ¶ 10, at 3.  Braverman further asserted that Judge Singleton's orders regarding her investment accounts -- dictating "how her money would be invested" and ordering Braverman to make monthly payments of $4,200.00 to Goldstein -- are an "unreasonable seizure of [Braverman's] property" in violation of her Fourth and Fourteenth Amendment rights.  State Complaint ¶¶ 23-24, at 6-7.  Braverman argued that she is entitled to injunctive relief enjoining these actions under Title II of the ADA, which, Braverman argued, makes the State of New Mexico liable for Judge Singleton's actions.  See State Complaint ¶¶ 25, 27, at 7. Braverman alleged that Judge Singleton's orders regarding Braverman's assets are also a violation of her right to privacy under the Fifth and Ninth Amendments.  See State Complaint ¶¶ 24-25, at 6-7.  Braverman further alleged that Judge Singleton is acting in "conspiracy" with Special Master Hall to circumvent New Mexico law regarding Braverman's separate property.  State Complaint ¶¶ 18-19, at 5.  Braverman alleged that Judge Singleton's orders cause Braverman monetary harm, having reduced her income by forty-percent, precluding Braverman from making profitable investments.  See State Complaint ¶ 30, at 8.  Braverman stated that her harm would be irreparable if an injunction is not issued.  See State Complaint ¶ 30, at 8.  Braverman also asserted that the defendants would not be harmed by an injunction in Braverman's favor, asserting that neither the State of New Mexico nor Judge Singleton have an interest in Braverman's financial assets.  See State Complaint ¶ 33, at 8-9.  Braverman alleged that the "public interest will be served by the injunction because investors must have confidence that their monies cannot be seized unreasonably through governmental intervention."  State Complaint ¶ 34, at 9.   Braverman alleged that the

"relative hardship to [her] in denying the injunction is greater than that of" the defendants in granting the injunction, because it is Braverman whose constitutional rights are violated without the injunction.  State Complaint ¶ 34, at 9.

The Honorable Raymond Z. Ortiz, District Judge, First Judicial District, State of New Mexico, found that Braverman's State Complaint, although naming the State of New Mexico as a defendant, sought relief against Judge Singleton in her capacity as presiding judge over Braverman's divorce case.  See Order ¶ 1, at 1-2 No. D-0101-CV-2011-00199 (1st Judicial Dist. Mar. 23, 2011)("State Dismissal Order").  Judge Ortiz ruled that the doctrines of judicial immunity, priority jurisdiction, improper collateral attack, and failure to join indispensable parties all barred Braverman from the relief she sought.  See State Dismissal Order ¶ 2, at 2; id. ¶ 8, at 3.  Judge Ortiz, accordingly, dismissed Braverman's State Complaint with prejudice.  See State Dismissal ¶ 8, at 3.

## PROCEDURAL BACKGROUND

After considerable litigation in state court, Braverman then moved to federal court.  With her original Complaint in this case, she sought emergency injunctive relief.  The Court denied that relief, and, for the most part, her two motions at issue here seek the same relief.

1.    **Braverman's Emergency Complaint for Injunctive Relief and Motion for Temporary Restraining Order in Federal District Court.**

Before this Court, Braverman contended in her Emergency Complaint for Injunctive Relief, that the Defendants are discriminating against her on the basis of her bi-polar disorder in contravention of her rights under the ADA, and the Fifth and Fourteenth Amendments to the United States Constitution.  See Emergency Complaint for Injunctive Relief ¶¶ 51-59, at 13-15, filed

September 16, 2011 (Doc. 1)("Complaint").[1]   In her Motion for TRO, filed concurrently with her Complaint, Braverman moved the Court, pursuant to rule 65(b) of the Federal Rules of Civil Procedure, to issue a temporary restraining order ("TRO"): (i) prohibiting the State of New Mexico, acting through its agents Judge Singleton and Special Master Hall, from taking any action that would have the effect of transferring Braverman's assets to Goldstein, including, without limitation, the entry of any order or decree purporting to implement Special Master Report No. 6 or Order Adopting Special Master Report No. 6[2] entered in the divorce proceeding; (ii) prohibiting LPL Financial from transferring any of Braverman's assets to Goldstein or otherwise without Braverman's prior consent; and (iii) affirmatively directing LPL Financial to immediately return to Braverman's name and unfettered control all assets presently held in the secondary IRA.  See Motion for TRO at 1.  Braverman additionally requested the Court to "[compel Judge] Singleton to allow [Braverman] to pay her counsel out of [Braverman's] separate property being held and controlled by [Judge] Singleton."  Amended Motion at 1.[3]  Braverman argued that she is entitled to

---

[1]On March 1, 2012, Braverman dismissed her claims against LPL Financial without prejudice.  See Notice of Dismissal of Claims Against LPL Financial Without Prejudice (Doc. 32)("LPL Financial Dismissal").  The Court will later use the term "State Defendants" to refer to the remaining Defendants -- The State of New Mexico, Judge Singleton, and Special Master Hall.

[2] Judge Singleton subsequently adopted the Findings of Fact and Conclusions of Law on July 25, 2011.  See First Amended Complaint ¶¶ 45 - 46, at 12.

[3]Braverman's Amended Motion was filed before the Court's Order denying TRO and Memorandum Opinion, but not directly mentioned in those documents.  Because Braverman's Amended Motion amended her Motion for TRO, on which the Court ruled in its Order denying TRO, the Court's denial of her Motion for TRO denied her Amended Motion as well.  While the Court appreciates that the state court's decisions have made it difficult for Braverman to continue to pay counsel, and that she is now pro se, that fact does not change the reality that she is unlikely to be able to proceed, much less succeed, in federal court.  Braverman's Amended Motion differed from her Motion for TRO only in that Braverman alleged that she was unable to withdraw funds from her IRA to pay her counsel.  See Amended Motion ¶ 5, at 3-4; id. ¶ 7(b), at 9-10.  Braverman did not make separate or new arguments of fact or law in her Amended Motion which would

prospective injunctive relief against New Mexico and its agents to halt violations of her right to equal treatment under Title II of the ADA.  See Motion for TRO ¶ 1, at 2.  She further argued that none of the Defendants are entitled to immunity.  See Motion for TRO ¶ 2, at 2.  The Court denied Braverman's Motion for TRO and entered a Memorandum Opinion to that effect.  See Court's Order denying Motion for Temporary Restraining Order, filed October 6, 2011 (Doc. 14)("Order denying TRO"); Memorandum Opinion.  In its Memorandum Opinion, the Court explained that it denied the TRO because:

> (i) Braverman has not met the heavy showing required to secure a disfavored temporary restraining order; (ii) the Court must abstain from interfering with ongoing state-court judicial proceedings that involve important state interests and provide a forum in which Braverman may raise her claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213 ("ADA"); (iii) the Anti-Injunction Act, 28 U.S.C. § 2283, also prohibits the Court from providing the relief Braverman requests; (iv) judicial immunity protects Judge Singleton and Special Master Hall; and (v) Judge Singleton and Special Master Hall may not be sued in their individual capacities.

Memorandum Opinion at 1-2.

On October 10, 2011, Braverman filed her Notice of Appeal, (Doc. 15)("Notice of Appeal"), appealing the Court's Order denying TRO to the Tenth Circuit.

**2.      Braverman's First Amended Complaint and Second Emergency Motion for Temporary Restraining Order in Federal Court.**

Braverman filed her First Amended Complaint and Second Motion within one month after her Notice of Appeal.  The relief that Braverman seeks in her Second Motion is based off of the allegations in both her First Amended Complaint and her Second Motion.  See Second Motion ¶ 22, at 9.  Braverman alleges two counts in her First Amended Complaint, the first for injunctive relief

---

overcome the legal hurdles discussed in the Court's Memorandum Opinion.  The Court thus finds that it effectively denied Braverman's Amended Motion in the Court's Order denying TRO.

and the second for damages.  <u>See</u> First Amended Complaint ¶ 50, at 13; ¶ 66, at 16.

With respect to her claim for damages, Braverman requests damages "proximately caused by the Defendants' violations of the Americans with Disabilities Act."  First Amended Complaint ¶ 66, at 16.  She alleges that she has lost, and continues to lose, $5,000.00 per month in investment income as the direct and proximate result of the seizure of her property.  <u>See</u> First Amended Complaint ¶ 67, at 16-17.  She further asserts that she has lost in excess of $700,000.00 in the value of her separate assets, and has been forced to expend more than $200,000.00 in attorney's fees and costs.  <u>See</u> First Amended Complaint ¶¶ 68-69, at 17.  She alleges that, in addition to those losses, she has lost in excess of $150,000.00 of her interest in community property that Goldstein "was allowed to hide by virtue of the fact that Singleton and Hall . . . refused to permit Plaintiff to inspect Alan Goldstein's property."  First Amended Complaint ¶ 70, at 17.  Braverman alleges that she has also been damaged by Judge Singleton and Special Master Hall "causing her to be labeled as a person who should be treated differently."  First Amended Complaint ¶ 71, at 17.  She asserts that Judge Singleton and Special Master Hall have caused her actual damages of at least $2,000,000.00 and that she is entitled to punitive damages of $10,000,000.00.  <u>See</u> First Amended Complaint ¶ 73, at 18.

With respect to her request for injunctive relief in her Second Motion, Braverman asserts that Judge Singleton's ruling since the Court denied her Motion for TRO are additional violations of Braverman's rights "to due process and equal protection pursuant to the Americans with Disabilities Act and the United States Constitution."  Second Motion ¶ 2, at 2.  Braverman's claim for prospective injunctive relief is based under Title II of the ADA, 42 U.S.C. § 12132.  <u>See</u> First Amended Complaint ¶ 50, at 13.  She alleges that the First Judicial District Court, acting through Judge Singleton and Special Master Hall, is a public entity subject to the ADA.  <u>See</u> First Amended

Complaint ¶ 51, at 13.  Braverman alleges that New Mexico, through its agent, Judge Singleton,

> "has unlawfully discriminated against [her] on account of her . . . disability protected
> by the [ADA] . . .[and has] denied Braverman her right to be free from the
> deprivation of property and liberty without due process of law, her procedural and
> substantive due-process rights to equal access to the courts, and her substantive due-
> process privacy rights all on account of her disability . . . contrary to the Fifth and
> Fourteenth Amendment to the United States Constitution."

Second Motion ¶ 12, at 5 (citing Grey v. Wilburn, 270 F.3d 607, 608 (8th Cir. 2001)).[4]

Braverman contends that Judge Singleton has repeatedly applied a different standard to Braverman than to Goldstein on account of Braverman's protected disability.  See Second Motion ¶ 9, at 4.  As an example of alleged disparate treatment, Braverman points to Goldstein's ability to withdraw funds from the LPL Financial account, while Judge Singleton did not intervene for five months when LPL Financial denied Braverman's request to withdraw funds to pay her counsel.  See Second Motion ¶¶ 10-11, at 4-5.  She contends that her inability to access her separate property has diminished her capacity to retain counsel and her ability to pursue her legal rights, and has deprived her of the right to equal protection and equal treatment under the law and her constitutional property rights.  See Second Motion ¶ 6, at 3.

Braverman points to other rulings from the divorce proceeding as examples of disparate treatment.   For one, Braverman argues that Mr. Lees was permitted to personally inspect

---

[4]Braverman further alleges that Judge Singleton's actions violate 18 U.S.C. § 241 (1996), as a conspiracy against the exercise of her rights.  See Second Motion ¶ 2, at 2.  Braverman states that "[t]his matter should be referred to the U.S. Attorney for the District of New Mexico for investigation and prosecution," and she asserts that "at a minimum," she is entitled to an injunction against Judge Singleton's actions.  Second Motion ¶ 2, at 2.  Braverman presumably is alleging that Judge Singleton and Special Master Hall have conspired together to violate her rights, because the statute which she cites only allows for liability  "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States."  18 U.S.C. § 241.  Braverman does not, however, specify in her Second Motion, with whom Judge Singleton has been conspiring to violate Braverman's rights.  See Second Motion ¶ 2, at 2.

Braverman's home for community property, while Braverman was not permitted to inspect Goldstein's home.  See First Amended Complaint ¶¶ 39-40, at 10-11.  Braverman alleges that she was denied access to Goldstein's home "on account of [her] bi-polar disorder."  First Amended Complaint ¶ 40, at 10-11.  As another example of alleged disparate treatment, Braverman argues that Judge Singleton and Special Master Hall have "determined nearly every conceivable factual dispute against [Braverman] in the [d]ivorce [p]roceeding."  First Amended Complaint ¶ 55, at 14.  Braverman asserts that this duplicitous treatment is a "retaliation against [Braverman] for her attempts to exercise her rights under the [ADA]."  First Amended Complaint ¶ 55, at 14.

Braverman further asserts that Judge Singleton and Special Master Hall have acted contrary to their state law obligations to Braverman in the divorce proceeding.  First, Braverman argues that Judge Singleton, through her control over the IRA and by allowing Goldstein to remove assets, will vitiate Braverman's right to one appeal under state law by destroying the means which Braverman would use to pay for her appeal.  See Second Motion ¶ 7, at 3.  Braverman asserts  that her assets in the IRA will be "systematically destroyed" by Goldstein's continual withdrawal of funds.  See Second Motion ¶ 7, at 3.  Braverman also asserts that the Defendants have violated New Mexico state law "by depriving [Braverman] of her property without jurisdiction and by granting Goldstein an interest in [Braverman's] separate property."  First Amended Complaint ¶ 54, at 14.  The statutes which Braverman cites provide, respectively, that a husband and wife cannot be excluded from each other's dwelling, and that a court in a divorce proceeding has jurisdiction over "all property of the parties, wherever located or situated in the state."  N.M.S.A. 1978 § 40-3-3; § 40-4-4.  Braverman alleges that Judge Singleton did not have jurisdiction over her IRA account, because the account is "located outside the state of New Mexico."  First Amended Complaint ¶ 18, at 4.  Additionally, Braverman asserts that Judge Singleton violated her statutory duty under N.M.S.A. 1978 § 40-13-4,

which requires a court to either grant an ex parte application for a protective order immediately and hold a hearing on the order within ten days, or hold a hearing on a request within seventy-two hours if the order is not immediately granted.  See First Amended Complaint ¶ 32, at 8.   Braverman argues that Judge Singleton "recklessly endangered" Braverman's safety, and deprived her of her "liberty without due process of law in violation of the Fifth and Fourteenth Amendments . . . and her right to the equal protection of the laws" by not holding a hearing until twenty-six days after Braverman requested the protective order.  First Amended Complaint ¶ 33, at 8-9.   Braverman asserts that Judge Singleton would not have delayed in holding the hearing had Braverman "not suffered from a protected disability."  First Amended Complaint ¶ 33, at 9.

Braverman also alleges that Judge Singleton and Special Master Hall have violated the ADA by denying various "reasonable accommodations" which Braverman requested on account of her disability.  First Amended Complaint ¶ 32, at 9; ¶ 41, at 11.  Braverman asserts that Judge Singleton violated the ADA by not granting Braverman's "request for an accommodation": Braverman wanted Judge Singleton to order Goldstein to disclose his Arizona address so Braverman could seek "protection from Goldstein in the courts of Arizona where Goldstein was a resident."  First Amended Complaint ¶ 34, at 9.   Braverman needed Goldstein's Arizona address to obtain a domestic order in Arizona court protecting her from Goldstein.  See First Amended Complaint ¶¶ 30-34, at 8-9. Special Master Hall also denied Braverman's request to have her attorney-in-fact sit in on her second deposition in the divorce proceeding.  First Amended Complaint ¶ 41, at 11. Braverman anticipated that she would not have counsel at the deposition, and requested the presence of her attorney-in-fact "to provide the support and protection she needed to cope with her disability during the deposition."  First Amended Complaint ¶ 41, at 11.  Braverman argues that the denial of these requests for accommodations is a violation of her rights under the ADA.  See First Amended

Complaint ¶ 34, at 9; ¶ 41, at 11.

Braverman alleges that many of Judge Singleton and Special Master Hall's actions have violated her constitutional rights.  Braverman alleges that Judge Singleton and Special Master Hall violated her right to privacy under the Fourteenth Amendment by allowing Mr. Lees to openly review a nude photograph of Braverman during Braverman's deposition.  See First Amended Complaint ¶ 42, at 11; 44, at 12.  Regarding her property rights, Braverman alleges that seizing her IRA was a "deprivation of property without due process of law," in violation of her Fifth and Fourteenth Amendment rights, because Judge Singleton allegedly had no jurisdiction over Braverman's out-of-state IRA.  First Amended Complaint ¶ 19, at 4-5.  Braverman asserts that Judge Singleton also violated her due-process rights by granting Goldstein a veto power over the transfer, investment, or expenditure of funds in Braverman's secondary IRA.  See First Amended Complaint ¶ 21-23, at 5-6.  Braverman alleges that Special Master Hall violated her due-process rights by allegedly threatening to transfer the assets in the secondary IRA to the state-court's registry if Braverman did not move the assets to an account within Special Master Hall's jurisdiction.  See First Amended Complaint ¶ 24, at 6.  Braverman also alleges that Judge Singleton violated her due-process rights under the Fifth and Fourteenth Amendments, and her right to equal protection under the law,  by not granting Braverman an order of protection against Goldstein in a timely fashion. See First Amended Complaint ¶¶ 32-33, at 8-9.

Braverman's First Amended Complaint contains other allegations against Special Master Hall and Judge Singleton.  Braverman asserts that Special Master Hall is guilty of extortion for his alleged threat to transfer her assets to the registry of the court.  See First Amended Complaint ¶ 24, at 6.  Braverman also alleges that Judge Singleton is liable for extortion, because she did not stop Mr. Lees from using a nude photograph of Braverman throughout the divorce proceeding.

Braverman alleges that the photograph was used to extort additional value from Braverman by humiliating her.  <u>See</u> First Amended Complaint ¶¶ 38-39, at 10; ¶ 43 at 11-12.

On the basis of the facts outlined above in her First Amended Complaint, Second Motion, and Second Supplement, Braverman has requested that the Court:

> (a) [prohibit] Defendant State of New Mexico acting through its agent the Honorable Sarah Singleton from allowing Alan H. Goldstein to further dissipate the secondary IRA or to make any withdrawals from such accounts; and (b) [prohibit] Defendant LPL Financial from transferring any assets in the secondary IRA to Goldstein or otherwise without Plaintiff's prior consent.

Second Motion at 9-10.  Braverman also asks the Court to award her attorney's fees and costs.  <u>See</u> First Amended Complaint ¶ 74(f), at 19; Second Motion at 10; Second Supplement at 3.

Braverman argues that she is entitled to prospective injunctive relief to halt the violations of her rights.  <u>See</u> Second Motion ¶ 13, at 6 (citing <u>Tennessee v. Lane</u>, 541 U.S. 509, 518 (2004); <u>Gutman v. Khalsa</u>, 446 F.3d 1027, 1034 (10th Cir. 2006)).  Braverman contends that the Anti-Injunction Act, 28 U.S.C. § 2283 (1948), does not prevent the Court from granting the requested relief because "the ADA expressly allowed injunctions against the state to prevent unlawful discrimination."  Second Motion ¶ 14, at 6 (citing <u>Mitchum v. Foster</u>, 407 U.S. 225 (1972); 42 U.S.C. § 12202).  She argues that none of the Defendants are entitled to immunity because they did not have jurisdiction over her out-of-state account.  <u>See</u> Second Motion ¶¶ 15-16, at 6-7 (citing <u>Brown v. Day</u>, 555 F.3d 882, 888 (10th Cir. 2009)).  She alleges that the public will lose confidence in the judicial system if the Court does not grant her Second Motion, and she asserts that the Second Motion will not harm the Defendants, because the "Defendants have no stake" in the injunction that she requests to preserve the status quo.  Second Motion ¶ 21, at 9.

Braverman further asserts that, unless the Court grants the requested TRO, she will be irreparably harmed.  Braverman alleges that Judge's Singleton's February 29, 2012 order, permitting

Goldstein to withdraw $4,200.00 per month from the secondary IRA, combined with Braverman's tax burden for each withdrawal from the IRA, amount to Braverman losing $6,100.00 each month. <u>See</u> Second Supplement ¶¶ 2, 5, at 1-2.  Braverman further asserts that over the course of the divorce proceeding, Goldstein has received over $92,000.00 of her money.  <u>See</u> Second Supplement ¶ 3, at 2.  Braverman argues that she has "no reasonable opportunity to recover these losses" and that the "unrecoverable burden will grow with each additional transfer."  Second Supplement ¶¶ 6-7, at 3. Braverman argues that her property is unrecoverable, because Goldstein resides in another state, has few assets, and no other means of support.  <u>See</u> First Amended Complaint ¶ 60, at 15; Second Motion ¶ 18-19, at 8; Second Supplement ¶ 6, at 3.  Braverman further argues that she will be completely unable to recover the tax burden from Goldstein's withdrawals.  <u>See</u> Second Supplement ¶ 7, at 3.  The Defendants did not file a written response to the Second Motion.[5]

In the hearing on the Second Motion and Second Supplement, the Court's primary concern was whether it had jurisdiction to entertain the Second Motion, because Braverman had filed her Notice of Appeal with the Tenth Circuit.  <u>See</u> Transcript of Hearing at 3:3-9 (March 22, 2012)(Court)("Tr.").[6]  The Court noted that, in <u>Avendano v. Smith</u>, No. CIV 11-0556, 2011 WL 5223041 (D.N.M. Oct. 6, 2011)(Browning, J.), the Court had explained that "the general rule is that, when a litigant files a notice of appeal, the district court loses jurisdiction over the case, save for collateral matters not involved in the appeal."  Tr. at 3:18-4:16 (Court).  The Court also pointed the parties to its opinion in <u>Guidance Endodontics, LLC v. Dentsply Int'l, Inc.</u>, No. CIV 08-1101, 2011

---

[5]Defendant LPL Financial was dismissed by Braverman on March 1, 2012.  <u>See</u> LPL Financial Dismissal.  The term "State Defendants" is used from this point on to refer to the remaining Defendants -- The State of New Mexico, Judge Singleton, and Special Master Hall.

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

WL 1336509 (D.N.M. Mar. 31, 2011)(Browning, J.), in which the Court clarified the meaning of collateral matters to include such issues as awarding attorney's fees.  See Tr. at 5:1-13 (Court).  The Court stated that it understood its Memorandum Opinion as declining to enjoin the transfer of assets from LPL Financial to Goldstein, through either an injunction of Judge Singleton or LPL Financial.  See Tr. at 6:8-17 (Court).  Braverman asserted that the authorities which the Court cited arose in a different context, final judgments, and that the different context should lead to a different result than here where she filed an interlocutory appeal.  See Tr. at 6:25-7:8 (Boyle).  The Court corrected Braverman, in that Avendano v. Smith did not address a final judgment.  See Tr. at 7:9-14(Court).

Braverman next contended that she was not asking the Court to change any rulings that it had already made, but to consider a new set of ADA violations  which, she asserted, made the Second Motion a new matter.  See Tr. at 8:1-10 (Boyle).  The Court disagreed that a new set of facts gave the Court jurisdiction, pointing Braverman to Lancaster v. Independent School District, 149 F.3d 1228, 1236 (10th Cir. 1998), wherein the Tenth Circuit notes the "general rule" that, "when a litigant files a notice of appeal," the district court loses jurisdiction "save for collateral matters not involved in the appeal."  Tr. at 8:11-23 (Court).  The Court then asked whether the Second Motion also requested that the Court prohibit the State, acting through Judge Singleton, from allowing Goldstein to access the secondary IRA.  See Tr. at 9:3-8 (Court).  Braverman's response was that, on September, 16 2011, she asked the Court to stop the State from issuing a final decree that would have the effect of transferring assets from the secondary IRA to Goldstein, but now her Second Motion is based on decrees issued since the State issued the final decree.  See Tr. at 9:9-16 (Boyle).  The Court pointed out that, on the first page of the Memorandum Opinion, one of the primary issues is whether the Court should issue an order enjoining the Defendants from taking any action that would transfer Braverman's assets to Goldstein, which is the same issue the Second Motion

addresses.  See Tr. at 9:17-24 (Court).  Further, the Court stated that, if the Court was wrong, then the Tenth Circuit will grant the relief that Braverman seeks and that, if the Tenth Circuit affirms the Court, then Braverman is probably not entitled to the relief she seeks in the Second Motion.  See Tr. at 10:18-21 (Court).  Braverman contended that, if the Court did not act, she would be left without any relief.  See Tr. at 10:25-11:1 (Boyle).  Yet, the Court stated that Braverman could pursue an appeal to the New Mexico Court of Appeals.  See Tr. at 11:2-3 (Court).  She argued that although the substance of the orders will be before the Court of Appeals of New Mexico, she will not have the opportunity to realize the benefits of the ADA or Fourteenth Amendment to the United States Constitution.  See Tr. at 11:4-12 (Boyle).  The Court, however, pointed out that New Mexico state courts have concurrent jurisdiction over both the ADA and Fourth Amendment claims.  See Tr. at 11:13-15 (Court).  She contended that it is fundamentally unfair to suggest that Judge Singleton, who is accused of violating the ADA, can somehow be the correct arbiter of that dispute.  See Tr. at 11:24-12:7 (Boyle).  The Court asked whether it would have to reverse itself on the issues before the Tenth Circuit to grant the relief requested in the Second Motion.  See Tr. at 12:19-23 (Court).  Braverman asserted that the Court would not have to overrule its prior decision, alleging that a new set of facts now exists which would permit the Court to come to a different conclusion.  See Tr. at 12:24-13:2 (Boyle).  The Court, yet, stated that in its Memorandum Opinion, the Court made legal rulings which new facts likely could not change.  See Tr. at 13:3-6 (Court).  Braverman admitted that she has a very heavy burden to overcome on the legal issues, but that the Court nonetheless has jurisdiction to entertain her Second Motion.  See Tr. at 13:15-14:7 (Boyle).

The State Defendants asserted that the Court correctly identified jurisdiction over the Second Motion as an issue and argued that there is nothing collateral about the Second Motion.  See Tr. at 27:9-25 (Fuqua).  The State Defendants contended that the factual circumstances on which

Braverman relies are directed to the same relief, precisely for what Braverman earlier moved the Court, and precisely what the Tenth Circuit was considering on appeal.  See Tr. at 28:21-29:8 (Fuqua).  More specifically, they argued that the Tenth Circuit was considering the legal issues that the Court's Memorandum Opinion raises about the applicability of the Anti-Injunction Act, abstention, and judicial immunity, which are unaffected by the facts to which Braverman points. See Tr. at 29:9-20 (Fuqua).  The State Defendants admitted that there may be categories of facts that would bear on the application of a legal standard, but that the additional facts before the Court are similar to those the Court initially considered.  See Tr. at 29:20-30:2 (Fuqua).  Viewed in that light, they argued, the Court cannot properly reach a decision on the Second Motion because the Second Motion is not collateral to the relief which was sought in the Tenth Circuit on appeal.  See Tr. at 30:3-8 (Fuqua).   The State Defendants contended that there are no issues in the Court's Memorandum Opinion which the State Defendants would not feel comfortable defending on appeal. See Tr. at 31:16-32:1 (Court, Fuqua).  Goldstein pointed out that the Tenth Circuit had already denied Braverman's motion for an injunction pending the adjudication of her appeal.  See Tr. at 32:13-33:1 (Lees); Order, Braverman v. New Mexico, No. 11-2199 (10th Cir. Jan. 5, 2012)(Doc. 01018772580).  Goldstein also noted that Braverman filed an appeal in the state case and is thus pursuing her state-court remedies.  See Tr. at 33:16-21 (Lees).

Braverman conceded that she had filed a notice of appeal in state court which would, if granted, have the same impact as the Second Motion, but argued that such an appeal does not affect the remedies she can seek for a violation of her rights under the ADA in federal court.  See Tr. at 36:12-37:4 (Boyle).  Braverman asked for an opportunity to submit additional briefing on the jurisdictional issue, which the Court granted for both parties.  See Tr. at 40:8-10 (Boyle), 40:21-24 (Court).

Braverman asserts in her additional briefing that courts have widely adopted the holding that the district court "retains jurisdiction during an appeal of an interlocutory order."  Brief Regarding Jurisdiction to Hear Plaintiff's Second Motion for Temporary Restraining Order, ¶ 4, at 2, filed March 29, 2012 ( Doc. 40)("Jurisdiction Brief").  Braverman argues that, in Pinson v. Pacheco, 424 F.App'x 749 (10th Cir. 2011)(unpublished), the Tenth Circuit held that a district court had jurisdiction to consider a second and third motion for a preliminary injunction, even though an appeal of the first motion for a preliminary injunction was pending.  See Jurisdiction Brief ¶ 2, at 1.  She asserts that, because the Court's denial of the Motion for TRO was on interlocutory appeal to the Tenth Circuit -- like the preliminary injunction in Pinson v. Pacheco -- the Court has jurisdiction to consider other matters that arise while the appeal was pending.  See Jurisdiction Brief ¶ 2, at 1.  Braverman also cites several other decisions which hold that a court may suspend, modify, restore, or grant an injunction during the pendency of an appeal.  See Jurisdiction Brief ¶ 4, at 2 (citing Moltan Co. v. Eagle-Picher Indus., 55 F.3d 1171, 1174 (6th Cir. 1995); Colorado v. Idarado Mining Co., 916 F.2d 1486, 1490 (10th Cir. 1990); Shevlin v. Schewe, 809 F.2d 447, 451 (7th Cir. 1987); Janousek v. Doyle, 313 F.2d 916, 921 (8th Cir. 1963); Phelan v. Taitano, 233 F.2d 117, 119 (9th Cir. 1956)).  Based on these authorities, Braverman contends that the Court had jurisdiction to decide the Second Motion, notwithstanding the appellate review pending at the time.  See Jurisdiction Brief at 2.

The State Defendants argue that neither Pinson v. Pacheco nor the other authorities which Braverman cites support the Court having jurisdiction over the Second Motion while her appeal was pending before the Tenth Circuit.  See Defendants State of New Mexico, Sarah Singleton, and James Hall's Response to Plaintiff's Brief Regarding the Court's Jurisdiction to Hear Her Second Application for a Temporary Restraining Order, at 1, filed April 2, 2012 (Doc. 41)("Jurisdiction

Response").  They assert that, in Pinson v. Pacheco, the Tenth Circuit determined that the district court retained sufficient jurisdiction to dismiss claims against certain defendants, and that resolution of the merits rendered the appeal moot.  See Jurisdiction Response at 1-2.  They further assert that the discussion in Colorado v. Idarado Mining Co. indicates that a district court retains jurisdiction to act on matters not involved in an appeal of an interlocutory order taken under 28 U.S.C. § 1292(b) and rule 54(b) of the Federal Rules of Civil Procedure.  See Jurisdiction Response at 2.  The State Defendants contend that the Tenth Circuit's discussion in Garcia v. Burlington Northern Railroad Co., 818 F.2d 713 (10th Cir. 1987), places the jurisdictional arguments in the proper context: "when an interlocutory appeal is taken, the district court retains jurisdiction to proceed with matters not involved in that appeal."  Jurisdiction Response at 2 (citing Garcia v. Burlington N. R.R. Co., 818 F.2d at 721).  Further, the State Defendants assert that Braverman cannot credibly argue that issues that she raises in her in her Second Motion are collateral to the issues raised in her first such application, because Braverman only alleges that new facts have arisen, and not that the issues have changed.  See Jurisdiction Response at 2-3.  They also argue that, even if the Court determined that the appeal did not divest the Court of jurisdiction, none of the additional facts alleged would lead to a different application of the legal standards that the Court applied in its Memorandum Opinion. See Tr. at 30:9-16 (Fuqua).

Turning to the merits of the Second TRO, Braverman argued at the hearing that new facts have created "a new compelling case" that takes her Second TRO out of the category of "disfavored injunctions" that require a higher showing.  Tr. at 13:21-14:1 (Boyle).  Braverman pointed to Judge Singleton's oral order that the secondary IRA was to be Braverman's property, save the costs and equalization payment awarded to Goldstein.  See Tr. at 15:5-20 (Boyle).  Judge Singleton's oral order allowed Goldstein to withdrawn $4,200.00 per month from the secondary IRA as a "reduction

of his award." Tr. at 15:17-20 (Boyle).  Braverman asserted that she immediately acted on that order and attempted to withdraw undisputed funds from the secondary IRA.  See Tr. at 15:21-25 (Boyle). She represented that LPL Financial refused her withdrawal request, while at the same time permitting Goldstein to withdraw funds, and Judge Singleton continued to allow this pattern without intervening to aid Braverman until February, 2012.  See Tr. at 16:1-21 (Boyle).  Braverman argued that Judge Singleton's delay is an example of disparate treatment.  See Tr. at 16:21-17:1 (Boyle). Braverman argued that, in an order denying Goldstein's request for sanctions, Judge Singleton admitted that the request was part of an ongoing smear campaign, which Braverman asserted was evidence that Judge Singleton knew Braverman was being retaliated against for "assert[ing] her . . . ADA and constitutional positions in the state court."  See Tr. at 17:15-18:4 (Boyle).  Braverman asserted that, in an order granting Goldstein's motion to reconsider, Judge Singleton stated that part of her holding was because of Braverman's conduct; Braverman argues this behavior was retaliation and a new act of discrimination.  See Tr. at 18:5-19:3 (Boyle).  Braverman pointed the Court to another order where Judge Singleton denied Braverman's motion for attorney's fees and argues that Judge Singleton applied a different standard when deciding LPL Financial's motion for attorney's fees.  See Tr. at 19:17-20:19 (Boyle).  Braverman argued that Judge Singleton's finding that Braverman acted in bad faith is additional evidence of disparate treatment.  See Tr. at 21:3-12 (Boyle).  Braverman asserted that the orders establish several facts: (i) that there is no adequate remedy in the state court; (ii) that Braverman has faced disparate treatment based on her bi-polar disorder; (iii) that she will be irreparably harmed; (iv) that she has been denied access to the courts; and (v) that her rights under the ADA have been violated.  See Tr. at 22:5-23:14 (Boyle).  She requests that the Court  maintain the status quo while the parties address the substantive issues in

the Court of Appeals of New Mexico.  See Tr. at 23:24-24:8 (Boyle).[7]

**3.      Braverman's Appeal to the Tenth Circuit.**

Subsequent to filing her Notice of Appeal, Braverman moved the Tenth Circuit to grant her an injunction pending the adjudication of her appeal; her motion was very similar to her Motion for TRO that the Court denied.  See Motion for Injunction Pending Appeal and Brief in Support, No. 11-2199 (10th Cir. Dec. 23, 2011)(Doc. 01018766858)("Motion for Injunction Pending Appeal"). The Tenth Circuit denied Braverman's Motion for Injunction Pending Appeal two weeks later, finding that Braverman had failed to show that "[s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest."  Order, No. 11-2199 (10th Cir., Jan. 5, 2012)(Doc. 01018772580)(quoting Winter v. Natural Res. Def. Council., Inc., 555 U.S. 7, 20 (2008)).  The State of New Mexico's, Judge Singleton's and Special Master Hall's brief before the Tenth Circuit was initially "deficient," as the brief failed to comply with the Tenth Circuit's filing requirements.  Notice of Appellee's Deficient Brief, No. 11-2199 (10th Cir., April 27, 2012)(Doc. 01018835344).  The appellees were able to file a brief in compliance the Tenth Circuit's requirements after the Notice of Appellee's Deficient Brief was issued.  See Brief of Appellees State of New Mexico, Sarah Singleton, and James Hall, No. 11-2199 (10th Cir., April 27, 2012)(Doc. 01018835382)("Appellee/Respondent's Brief").

---

[7]Braverman has filed two appeals to the Court of Appeals of New Mexico in her divorce proceeding.  See Braverman v. Goldstein, Case No. D-101-DM-200901009, "Notice of Appeal to Court of Appeals/Supreme Court," filed March 13, 2012, and "Notice of Appeal to Court of Appeals/Supreme Court, filed July 18, 2012.  At least one of Braverman's appeals to the Court of Appeals of New Mexico was dismissed by stipulation of the parties on September 13, 2012.  See Braverman v. Goldstein, Case No. Case No. D-101-DM-200901009, "Stipulation to Dismiss Undocketed Appeal," filed Sept. 13, 2012.

The Tenth Circuit did not rule on the merits of Braverman's appeal.  See Order, No. 11-2199.
On May 1, 2012, the parties stipulated that the "appeal may be dismissed as moot."  Stipulation for
Dismissal of Appeal, No. 11-2199 (10th Cir. May 1, 2012)(Doc. 01018837270).  Neither
Braverman's brief nor the State Defendants' brief discussed mootness.  See generally Appeal from
the United States District Court for the District of New Mexico, the Honorable James O. Browning,
No. 11-2199 (10th Cir. March 19, 2012)(Doc. 01018812984)("Appellant/Petitioner's Brief");
Appellee/Respondent's Brief (neither document containing any reference to the existing or potential
"mootness" of the matter in Braverman's Appellant/Petitioner's Brief).  The parties did not explain
how or why the appeal had become moot in the stipulation.  See Stipulation for Dismissal of Appeal.
The Tenth Circuit dismissed Braverman's appeal on May 1, 2012.  See Order of Tenth Circuit Court
of Appeals (Doc. 49).  The Tenth Circuit did not discuss mootness in dismissing the appeal.  See
Order of the Tenth Circuit, at 1.  The Court thus does not know why the parties stipulated that
Braverman's appeal was moot.

**4.     Braverman's Complaint Against Special Master Hall and Lees in New Mexico State District Court.**

Subsequent to the Tenth Circuit's dismissal of her appeal, Braverman filed another complaint
in New Mexico State District Court -- Braverman v. Paul Gerber, Complaint for Treble Damages
for a Pattern of Racketeering Activities and Conspiracy to Commit a Pattern of Racketeering
Activities, No. D-101-CV-2012-01333 (1st Judicial Dist. May 10, 2012)("Racketeering and
Conspiracy Complaint"),[8] in which Braverman alleges that the actions of Mr. Lees and Special
Master Hall during the divorce proceeding amount to extortion, larceny, fraud, solicitation and

---

[8]Braverman also named Paul Gerber, her prior counsel in the divorce proceeding, as a
Defendant in the Racketeering and Conspiracy Complaint.  See Racketeering and Conspiracy
Complaint ¶ 4, at 1-2.

racketeering.   See Racketeering and Conspiracy Complaint ¶¶37-42, at 10-11.   Mr. Lees was

voluntarily dismissed, with prejudice, from the matter on September 14, 2012, but Special Master

Hall remains a defendant in state court.   See Voluntary Dismissal, No. C-0101-CV-2012-01333 (1st

Judicial Dist. Sept. 14, 2012).

## LAW REGARDING A DISTRICT COURT'S JURISDICTION WHILE MATTERS ARE ON APPEAL

A district court does not have jurisdiction over issues involved in matters pending appellate

review.   See Lancaster v. Indep. School Dist. No. 5, 149 F.3d at1237; McKissick v. Yuen, 618 F.3d

1177, 1196 (10th Cir. 2010).   See also 20 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE §

303.32(2)(a), at 303-74 (3d ed. 2012)(explaining that a district court "cannot alter the status of a case

as it rests before a circuit court" on appeal).[9]   Conversely, the district court retains jurisdiction over

collateral matters, those being matters not involved in the appeal.   See Garcia v. Burlington North

R. Co., 818 F.2d at 721; Avendano v. Smith, WL 5223041, at *4 (citing McKissick v. Yuen, 618

F.3d at 1196).   The Court has ruled that certain matters are definitively collateral, including the

decision to award attorneys' fees, and correcting a clerical error in an order or judgment.   Avendano

v. Smith, 2011 WL 5223051, at *4; Guidance Endontics, LLC v. Dentsply Intern., Inc., 2011 WL

1336509, at *3.

A matter is collateral if it involves different claims against different parties than those claims

---

[9]The Tenth Circuit has established that a district court retains the jurisdiction to proceed with a case on the merits, notwithstanding an interlocutory appeal.   See Pinson v. Pacheco, 424 Fed. App'x at 754 ("An appeal from an interlocutory order denying a preliminary injunction does not divest the district court of jurisdiction to proceed with the underlying action on the merits." (citing Colo. v. Idarado Mining Co., 916 F.2d at 1490 n.2)).   Indeed, the very matter before the Tenth Circuit in Pinson v. Pacheco was whether an interlocutory appeal was moot, because the district court had dismissed the claims against some of the parties, against whom the preliminary injunction was sought, while the appeal was pending.   See 424 Fed. App'x at 754.

and parties in a matter pending appellate review.  See Int'l Paper Co. v. Whitson, 595 F.2d 559, 561-62 (10th Cir. 1979)).  In Int'l Paper Co. v. Whitson, a defendant asserted that the district court did not have jurisdiction to enter judgment against one defendant's cross-claims while the district court's judgment as to the cross-claimant in the same case was on appeal.  See 595 F.2d at 561-62.  The Tenth Circuit cited the "general rule [that] . . . filing of a notice of appeal divests the trial court of jurisdiction . . . with respect to any matters involved in the appeal" in explaining that the cross-claims were collateral, because they involved different parties and different claims than those on appeal.  595 F.2d at 561-62.  Thus, cross-claims were "not involved in the appeal by [the plaintiffs]," and were within the jurisdiction of the district court.  595 F.2d at 562.

In the same respect, a motion for a preliminary injunction which involves the same issues as those in a matter pending appeal is not a collateral matter and is beyond the jurisdiction of a district court.  The Second Circuit has addressed this issue with particularity.  See Int'l Bus. Mach. Corp. v. Johnson, 355 F.App'x. 454 (2d Cir. 2009).  In Int'l Bus. Mach. Corp. v. Johnson, the Second Circuit ruled on a district court's jurisdiction over a second motion for a preliminary injunction, while the moving party's appeal from the district court's prior denial of the same motion was pending review.  See 355 F.App'x. at 455-56.  Because the second motion presented the same issues and arose from the same facts as those in the motion on appeal, the Second Circuit found that the appeal divested the district court of its jurisdiction.  See 355 F.App'x. at 455-56 ("An interlocutory appeal from the denial of preliminary injunctive relief divests the court . . . of jurisdiction with regard to questions raised and decided upon the interlocutory order appealed from.").  The Second Circuit explained: "[T]he relevant issues were on appeal before [the Second Circuit], [thus,] the district court was correct in not allowing a second preliminary injunction motion that would have re-argued those issues before the district court as well."  355 F.App'x. at 455-56.

A district court, therefore, has no jurisdiction over a motion for a preliminary injunction which requests the same relief and involves the same issues as a matter awaiting appellate review. See 355 F.App'x. at 455-56.

In the Tenth Circuit, one district court has also found that its jurisdiction was divested over a preliminary injunction which involved issues pending appeal. In Mountain Solutions, Inc. v. State Corp. Comm'n of State of Kan., 982 F.Supp 812 (D. Kan. 1997), the plaintiffs had requested preliminary and permanent injunctive relief in district court. See 982 F.Supp. at 816. After the district court denied the plaintiffs' request for preliminary injunctive relief, the plaintiffs filed an interlocutory appeal of that order. Before the Tenth Circuit ruled on the plaintiffs' appeal, the defendants brought a motion for partial summary judgment, moving the court to deny the plaintiffs' request for permanent injunctive relief. See 982 F.Supp. at 814-15. The relief that the plaintiffs requested in their motion for a preliminary injunction and that which the defendants' motion requested the district court to grant was identical -- the parties raised the same legal arguments and requested the same relief. See 982 F.Supp. at 816. In both the plaintiffs' and defendants' motions, the facts were not in dispute; rather, the parties disagreed only upon the district court's interpretation of the applicable law. See 982 F.Supp. at 816. Although the district court noted that normally it would have jurisdiction to proceed on the merits of a case notwithstanding an interlocutory appeal, and a motion for partial summary judgment would appear to go to the merits of a case, the district court nonetheless found that the plaintiffs' appeal had divested it of its jurisdiction. See 982 F.Supp. at 815-16. Because the legal issues and arguments in the partial summary judgment motion were "identical to those the court addressed in denying plaintiffs a preliminary injunction," the district court ruled that it did not have jurisdiction while appellate review was pending of the plaintiff's motion. 982 F.Supp. at 816. The district court distinguished other cases where courts had made

-28-

rulings during a pending appeal on the grounds that "the merits upon which the district courts were empowered to proceed did not involve the same issues pending on appeal."  Mountain Solutions, Inc. v. State Corp. Comm'n of State of Kan., 982 F.Supp. at 815.  Thus, where a motion presents the same legal issues as those which are on appeal, a district court has no jurisdiction over the matters on appeal until the appellate court has ruled.  See 982 F.Supp. at 816 (citing Int'l Paper Co. v. Whitson 595 F.2d at 561-62.)).

## THE *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine embodies the jurisdictional principle that federal district courts may not serve as courts of appeal for state courts.  See Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507, 2012 WL 1132374, at *19 (D.N.M. 2012)(Browning, J.).  Review of state court judgments is within the Supreme Court of the United States' exclusive jurisdiction.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Bolden v. City of Topeka, 441 F.3d 1129, 1140 (10th Cir. 2006).  A district court has no jurisdiction over a matter in which:  "(i) a state-court loser; (ii) is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) [the state court] judgment was rendered before the commencement of the federal proceeding."  Valdez v. Metro. Prop. & Cas. Ins. Co., 2012 WL 1132374 at *38 (citing Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006).

Although *Rooker-Feldman*, in its four elements, appears to be a straight-forward principle, the application of the doctrine can be complex.  For example, a challenge to a state court judgment is "barred even if the claim forming the basis of the challenge was not raised in the state proceedings," yet, "*Rooker-Feldman* does not bar a federal-court suit raising a claim  previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the state court judgment."  Bolden v. City of Topeka, 441 F.3d at 1141, 1144.  The Tenth

Circuit has reconciled these principles by concluding that the scope of *Rooker-Feldman* is "confined to the cases of the kind . . . brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Bolden v. City of Topeka, 441 F.3d at 1142-43 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 282). Thus, an essential characteristic of a suit barred under *Rooker-Feldman* is that the "loser in state court invites a federal district court to overturn state court judgments." Bolden v. City of Topeka, 441 F.3d at 1143-44. Conversely, a plaintiff whose "claims do not rest on any allegation concerning the state court proceedings or judgment" would not be barred from bringing suit in federal district court under *Rooker-Feldman*. Bolden v. City of Topeka, 441 F.3d at 1145.[10] Thus, where a plaintiff does not put the state court judgment itself at issue, the plaintiff may bring a federal suit "regarding the same subject matter, or even the same claims, as those presented in the state court action." Bolden v. City of Topeka, 441 F.3d at 1139.[11]

---

[10]The Court has previously discussed the relation of *Rooker-Feldman*, as a jurisdictional bar, and Younger v. Harris, 401 U.S. 37 (1971), a doctrine of federal abstention. See F.D.I.C. v. Harger, 778 F.Supp. 2d 1123, 1135 n.6 (D.N.M. 2011)(Browning, J.). In brief, where *Rooker-Feldman* bars a federal district court from reviewing state court judgments which are final, Younger v. Harris "prevents the federal district court from interfering in an ongoing state proceeding." F.D.I.C. v. Harger, 778 F.Supp. 2d at 1135, n.6. Thus, a plaintiff may not request a federal district court to interfere before a state court judgment is final, or pray for relief from a state court judgment once it becomes final.

[11]The preclusion doctrine of res judicata may bar a complaint that *Rooker-Feldman* does not. *Rooker-Feldman* is a jurisdictional requirement, whereas res judicata can preclude a suit which a district court has jurisdiction to entertain. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the [state court] judgment . . . to do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the [federal] District Courts is strictly original."); Bolden v. City of Topeka, 441 F.3d at 1145 (discussing that where *Rooker-Feldman* is not a bar, "a myriad of doctrines, including res judicata, would almost certainly bar the suit" which is brought after a state court judgment adverse to the plaintiff). See also Campbell v.

The distinction between claims that *Rooker-Feldman* bars, and those that allege the same cause of action but are not barred, is best understood through the Tenth Circuit's application of doctrine.  The Tenth Circuit provided an example of this distinction in a hypothetical child-custody case in Bolden v. City of Topeka.  See 441 F.3d at 1129.  The Tenth Circuit explained that a father, who lost custody of his child in a state court judgment, could not then bring suit in federal court alleging that the state court judgment was invalid.  The father would be barred even if his claims in federal court were different from those in state court -- were the father, perhaps to argue that the state court deprived him of due process or was contrary to federal law on other grounds.  *Rooker-Feldman* would bar such an action.  *Rooker-Feldman* would not, however, have barred the father from seeking custody of his child in federal court.  So long as the father's complaint did not raise any allegations regarding the state court judgment specifically, *Rooker-Feldman* would be no bar.  See 441 F.3d at 1145.

The Tenth Circuit, in Bolden v. City of Topeka, ruled that a district court was wrong to bar a plaintiff's suit under *Rooker-Feldman* where the plaintiff "did not seek to overturn the state court judgment." 441 F.3d at 1138.  The City of Topeka tole the plaintiff in Bolden v. City of Topeka that several properties he owned failed to meet housing code regulations and thus would be demolished.  See 441 F.3d at 1131-32.  The plaintiff initially sought to enjoin the destruction of his buildings in state court, and the state court denied his request.  The plaintiff then filed suit in federal district court, once again seeking to enjoin the destruction of his buildings.  His federal suit did not address the validity of the state court judgment or argue that federal court should override, on any grounds,

---

City of Spencer, 682 F.3d 1278, 1283 (10th Cir. 2012)("*Rooker-Feldman* does not . . . override or supplant preclusion doctrine.")(quoting Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. at 282).

the state court judgment denying his requested injunction.  See 441 F.3d at 1132.  The district court dismissed his request for an injunction under *Rooker-Feldman*, but the Tenth Circuit found that the district court misapplied the doctrine.  See 441 F.3d at 1132, 1138.   The Tenth Circuit focused on the plaintiff's claims in federal court being "identical to what they would have been had there been no state court proceeding."   441 F.3d at 1138.  Because the plaintiff's did not argue that the "judgment itself inflicted an injury," *Rooker-Feldman* did not bar the plaintiff's claims alleging violations against the city's action of destroying his buildings.  441 F.3d at 1138, 1145.  *Rooker-Feldman* did not apply, because the plaintiff's claims "would be identical even had there been no state court judgment."  441 F.3d at 1145.

As a converse example, the Tenth Circuit has barred a plaintiff's due-process claims against a city, under *Rooker-Feldman,* where the alleged violations occurred because of a state court's order. See Campbell v. City of Spencer, 682 F.3d, 1278, 1284 (10th Cir. 2012).  In Campbell v. City of Spencer, a plaintiff filed suit in federal court, alleging, among other claims, that the City of Spencer had violated her due-process and Eighth Amendment rights by seizing her horses and imposing an "excessive fine" pursuant to a state court order.  682 F.3d at 1280.  The federal court dismissed her due-process allegations, finding that *Rooker-Feldman* barred the claims.  682 F.3d at 1280.  The Tenth Circuit agreed.  Because the plaintiff's "deprivation of property . . . allegedly without just compensation or due process was the deprivation ordered by the state court . . . [her] claim [had] merit only if the state court forfeiture order was unlawful on the record before the court."  682 F.3d at 1284.  The plaintiff's suit was a "direct attack on the state court's judgment because an element of [her] claim [was] that the judgment was wrongful."   682 F.3d at 1284.  "The alleged constitutional wrong was the content of the judgment . . . not . . . some act by a defendant that led to the judgment."  682 F.3d at 1285.  Thus, *Rooker-Feldman* barred the plaintiff's claims, because

the harm the plaintiff alleged would not have occurred but-for the state court judgment.

## LAW REGARDING THE FINALITY OF STATE COURT JUDGMENTS IN FEDERAL COURT

Res judicata and collateral estoppel are common-law doctrines of finality, which serve to relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and prevent inconsistent decisions.  See Allen v. McCurry, 449 U.S. 90, 94 (1980).  Res judicata precludes a party from re-litigating issues that were or could have been raised in a final judgment on the merits.  Collateral estoppel precludes re-litigation of a common issue of law or fact which was necessarily decided in a prior court's final judgment.  See Allen v. McCurry, 449 U.S. at 94.  In determining whether a doctrine of finality applies, a decision from a state court has the same preclusive effect in federal court as the decision would have in a subsequent state court action.  See Reed v. McKune, 298 F.3d at 949-50 (citing 28 U.S.C. 1738 (1948)("[The] judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States  . . . as they would by law or usage in the courts of such State . . . from which they are taken.")).   A district court in the Tenth Circuit applying res judicata or collateral estoppel to a decision from a state court must look to the laws of that state to determine the required elements for either doctrine to preclude a claim or issue brought in federal court.  See Reed v. McKune, 298 F.3d at 949.  Thus, if a state law in state court would preclude re-litigation of a claim or an issue of law or fact, the same claim or issue is precluded in federal court.  See Reed v. McKune, 298 F.3d at 949 (applying Kansas law to determine whether collateral estoppel precludes an issue of fact or law in federal court).

### 1.     New Mexico's Law on Res Judicata.

Under New Mexico law, res judicata, also known as claim preclusion, bars re-litigation of

"the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." Deflon v. Sawyers, 139 N.M. 637, 640, 137 P.3d 577, 580 (2006).  New Mexico law prescribes four elements for a party seeking to assert res judicata: "(i) the same parties or parties in privity; (ii) the identity of capacity or character of persons for or against whom the claim is made; (iii) the same subject matter; and (iv) the same cause of action in both suits." Hartnett v. Papa John's Pizza USA, Inc., 828 F.Supp. 2d 1278, 1285-86 (D.N.M. 2011)(Browning, J.)(citing Apodaca v. AAA Gas Co., 134 N.M. 77, 101, 73 P.3d 215, 239 (Ct. App. 2003). Res judicata is a broad bar, precluding a party from bringing any claims which were, or which could have been raised in a prior proceeding finally determined on the merits.  See Kirby v. Guardian Life Ins. Co., 148 N.M. 106, 124, 231 P.3d 87, 105 (2010).  To determine whether a claim in a second suit is precluded under res judicata by a prior suit, New Mexico courts will look to: "(i) the relatedness of the facts in time, space origin, or motivation; (ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." Hartnett v. Papa John's Pizza USA, Inc., 828 F.Supp.2d at1285-86 (citing Bank of Santa Fe v. Marcy Plaza Assocs., 131 N.M. 537, 540, 40 P.3d 442, 445 (Ct. App. 2001)).  Additionally, res judicata bars a claim only where a party had a "full and fair opportunity to litigate issues arising out of that claim." Kirby v. Guardian Life Ins. Co., 231 P.3d at 105.

Under New Mexico law, a final judgment is "on the merits" for the purposes of res judicata where a court has ruled after parties filed written motions on a matter and after having a hearing, giving a losing party notice and an opportunity to be heard.  See Cagan v. Village of Angel Fire, 137 N.M. 570, 575, 113 P.3d 393, 398 (Ct. App. 2005).  Thus, when applying res judicata to a judgment from a New Mexico state court, a federal court must look to the proceedings before the state court

to determine if the losing party had an opportunity to be heard through their motions and a hearing on the claim.  See Cagan v. Village of Angel Fire,  137 N.M. at 575, 113 P.3d at 398 (discussing how a state court judgment, while "with prejudice," was not "on the merits" for the purposes of res judicata because the state court had ruled sua sponte, and the parties had not filed motions or been given a hearing on the court's basis for dismissal).  Without such an opportunity to present a case, a New Mexico state court's dismissal of a plaintiff's case cannot serve as res judicata in federal court.

### 2.     New Mexico's Law on Collateral Estoppel.

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  Similar to the doctrine of res judicata, a federal district court must look to the laws of a state to determine whether a judgement from state court precludes the re-litigation of issues of law or fact in federal court.  See Reed v. McKune, 298 F.3d at 949.

Collateral estoppel, or issue preclusion, under New Mexico law does not require that an issue be raised by the same cause of action, or against the same party, to be precluded by a prior decision. See Ideal v. Burlington Res. Oil & Gas Co., 148 N.M. 228, 232, 233 P.3d 362, 366 (2010).  Issue preclusion

> bars re-litigation of the same issue if: 1) the party to be estopped was a party to the prior proceeding, 2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, 3) the issue was actually litigated in the prior adjudication, and 4) the issue was necessarily determined in the prior litigation.

Ideal v. Burlington Res. Oil & Gas Co., 148 N.M. at 233, 233 P.3d at 366.  If a party in a subsequent action is  not the same as in the first, issue preclusion also applies if the party in the

subsequent action is privy to the party in the first.  See 148 N.M. at 233, 233 P.3d at 366.  The

second prong, that the "cause of action in the case presently before the court is different from the

cause of action in the prior adjudication," has been used to distinguish collateral estoppel from its

partner in finality doctrines, res judicata, not as a binding requirement describing the cause of action

in the second suit.  See Rosette, Inc. v. United States Dept. Of the Interior, 142 N.M. 717, 729, 169

P.3d 704, 716 (Ct. App. 2007)("In contrast to res judicata, collateral estoppel applies whether or not

the two suits involve the same cause of action.").  Because collateral estoppel applies to issues, and

not to parties, collateral estoppel can be used "either defensively or offensively," meaning that a

defendant may use collateral estoppel to preclude an issue which a plaintiff raises, and a plaintiff

may use collateral estoppel to preclude a defense which a defendant raises.  O'Brien v. Mitchell, No.

CIV 11-0409, 2012 WL 3150371 at *21 (D.N.M. 2012)(Browning, J.).  "In both offensive and

defense use situations, the party against whom estoppel is asserted has litigated and lost in an earlier

action."  O'Brien v. Mitchell, 2012 WL 3150371 at *21.  Nonetheless, collateral estoppel is a

doctrine available within the trial court's discretion, and "the trial court must consider whether

countervailing equities militate against application of the doctrine."  O'Brien v. Mitchell, 2012 WL

3150371 at *23 (citing Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 115 N.M.

159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993)).  A trial court judge should not apply collateral

estoppel where the doctrine would be "fundamentally unfair."  O'Brien v. Mitchell, 2012 WL

3150371 at *23 (citing Reeves v. Wimberly, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988)).

### LAW REGARDING YOUNGER ABSTENTION AND CLAIMS FOR MONEY DAMAGES

Under the abstention doctrine that the Supreme Court articulated in Younger v. Harris, 401

U.S. 37 (1971), "federal courts should not 'interfere with state court proceedings' by granting

equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" -- when the state forum provides an adequate avenue for relief.  Weitzel v. Div. of Occupational & Prof'l Licensing, 240 F.3d 871, 875 (10th Cir. 2001)(quoting Rienhardt v. Kelly, 164 F.3d 1296, 1302 (10th Cir.1999)).  Younger abstention is not a doctrine only belonging to courts of equity, although the doctrine arose from parties seeking equitable relief from state court proceedings in federal court.  The Tenth Circuit has "not treated abstention as a 'technical rule of equity procedure,' [r]ather, [it has] recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief."  Morrow v. Winslow, 94 F.3d at 1392 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-17 (1996).  This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs."  J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999)(quoting Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)).

For Younger abstention to be appropriate, the Tenth Circuit has ruled that three elements must be present: (i) interference with an ongoing state judicial proceeding; (ii) involvement of important state interests; and (iii) an adequate opportunity afforded in the state court proceedings to raise the federal claims.  See J.B. ex rel. Hart v. Valdez, 186 F.3d at 1291 (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); Sw. Air Ambulance, Inc. v. City of Las Cruces, 268 F.3d 1162, 1177-78 (10th Cir. 2001).  When all of the elements mandating abstention clearly exist in the record, courts may, and should, address application of the Younger abstention doctrine sua sponte.  See Bellotti v. Baird, 428 U.S. 132, 143 n. 10 (1976)(stating that "abstention may be raised by the court sua sponte"); Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211, 1214 (10th Cir. 2003)("The applicability of Younger abstention was

-37-

not raised by the parties below.  However, the issue arose after a motions panel of this circuit determined, sua sponte, that the District Court was required to abstain from granting the plaintiff's request for injunctive relief based on the principles articulated in <u>Younger</u> . . . ."); <u>Morrow v. Winslow</u>, 94 F.3d 1386, 1390-91 & n. 3 (10th Cir. 1996)(raising and applying <u>Younger</u> abstention doctrine <u>sua</u> <u>sponte</u>, holding that parties need not raise the <u>Younger</u> abstention doctrine to preserve its applicability, and reversing and remanding for entry of an order of dismissal, because the district court failed to <u>sua</u> <u>sponte</u> apply the doctrine).  "<u>Younger</u> abstention is not discretionary once the [three] conditions are met, absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims."  <u>Seneca-Cayuga Tribe v. Oklahoma</u>, 874 F.2d 709, 711 (10th Cir. 1989)(citation omitted).  <u>See</u> <u>Taylor v. Jaquez</u>, 126 F.3d 1294, 1296 (10th Cir.1997)(holding that, because "'application of the <u>Younger</u> doctrine is absolute . . . when a case meets the <u>Younger</u> criteria,' there is no discretion for the district court to exercise.").  When the elements of <u>Younger</u> abstention are met, a district court should dismiss the claims before it, unless a petitioner has brought claims which "cannot be redressed in the state proceeding," in which case the district court should stay the federal proceedings pending the conclusion of the state litigation.  <u>Deakins v. Monaghan</u>, 484 U.S. 198, 194 (1988).  For example, where a party brings a claim for damages under 42 U.S.C. § 1983 (1979), as well as a request for equitable relief from a state court proceeding, a federal district court should dismiss the claims for equitable relief under <u>Younger</u>, but stay the complaint with respect to the damages claim, since § 1983 is exclusively a federal cause of action.  <u>See</u> <u>Myers v. Garff</u>, 876 F.2d 79, 81 (10th Cir. 1989)(holding that a district court was right to dismiss claims for declaratory and injunctive relief, but that the district court should have stayed claims for damages under § 1983 against defendants until the state court proceedings ended).  <u>See</u> <u>also</u> <u>Younger v. Harris</u>, 401 U.S. at 43 (holding that

the federal courts must dismiss suits requesting declaratory or injunctive relief when there are pending state criminal proceedings).

On the other hand, where a plaintiff's causes of action may be addressed in state court, a federal court should abstain and dismiss the case even if the plaintiff requests monetary damages in addition to injunctive relief from the state court proceeding.  In <u>Wideman v. Colorado</u>, 242 F.App'x 611 (10th Cir. 2007), the Tenth Circuit was presented with a parent's complaints alleging ongoing violations arising from the Colorado State courts' adjudication of his child custody rights. <u>See</u> 242 F.App'x at 613.  The parent had requested a federal district court to issue an order regarding his parental rights and rights to child support payments, and to award the parent monetary damages recompensing him for his past child support payments.  <u>See</u> 242 F.App'x at 611.  Additionally, the parent alleged that the Colorado state trial and appellate courts had treated him with "disrespect" on account of his gender and race, and he brought a § 1983 case in federal court seeking money damages from the state court officials adjudicating his state custody case.  242 F.App'x at 613.  The Tenth Circuit ruled that the district court was right to abstain from hearing the parent's case under <u>Younger v. Harris</u>.  The Tenth Circuit explained that the parent's "complaints assert claims that involve matters still pending in Colorado state courts," as the custody proceedings were ongoing. 242 F.App'x at 614.  Further, the dispute implicated "important state interests," because the parent's complaints covered domestic relations issues.  242 F.App'x at 614.  Lastly, the Tenth Circuit found that the parent had "an adequate opportunity to litigant any federal constitutional issues that may arise . . . in the Colorado state proceedings."  242 F.App'x at 614.  Thus, where the criteria for abstention delineated under <u>Younger v. Harris</u> are otherwise met, even if a party requests monetary damages, a federal court in the Tenth Circuit must abstain from adjudicating the entire case while state proceedings are ongoing.

**LAW REGARDING REQUESTS FOR TEMPORARY RESTRAINING ORDERS**

The requirements for the issuance of a temporary restraining order are similar to those for the issuance of a preliminary injunction.  Injunctive relief is considered an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted.  <u>Greater Yellowstone Coal. v. Flowers</u>, 321 F.3d 1250, 1256 (10th Cir. 2003).  In determining whether to grant injunctive relief, courts consider the following four factors: (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be adverse to the public interest.  <u>See</u> <u>Fed. Lands Legal Consortium ex rel. Robart Estate v. United States</u>, 195 F.3d 1190, 1194 (10th Cir. 1999); <u>Resolution Trust Corp. v. Cruce</u>, 972 F.2d 1195, 1198 (10th Cir. 1992).  If a movant can show that the first, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  <u>Okla. ex rel. OK Tax Comm'n v. Int'l Registration Plan, Inc.</u>, 455 F.3d 1107, 1113 (10th Cir. 2006).  The Tenth Circuit has stated that "in cases where the requested preliminary injunction alters the status quo . . . the movant will ordinarily find it difficult to meet its heavy burden of showing that the four factors, on balance, weigh heavily and compellingly in its favor, without showing a substantial likelihood of success on the merits."  <u>Herrera v. Santa Fe Pub. Schs.</u>, No. CIV 11-0422, 2011 WL 2433050, at *4 (D.N.M. May 20, 2011)(Browning, J.)(quoting <u>Kikumura v. Hurley</u>, 242 F.3d 950, 955 (10th Cir. 2001)).

## RELEVANT LAW REGARDING TITLE II OF THE ADA

Title II of the ADA, 42 U.S.C. §§ 12131-12165, commands that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of such services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Tenth Circuit requires that a plaintiff prove three factors to establish a claim under Title II: (i) that he or she is a qualified individual with a disability; (ii) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  See Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir. 1999)(explaining that this general standard, which tracks the language of the statute, is "plainly correct").  Although a plaintiff may claim intentional discrimination, the Tenth Circuit has not yet articulated the essential elements of a claim of intentional discrimination under Title II of the ADA or detailed what a plaintiff must plead at a minimum to establish such a claim.  See Tyler v. City of Manhattan, 118 F.3d 1400, 1405 (10th Cir. 1997)(Jenkins, J., dissenting); Young v. City of Claremore, O.K., 411 F.Supp.2d 1295, 1314 (N.D. Okla. 2005).

## ANALYSIS

The Court did not have jurisdiction over Braverman's Second Motion when Braverman filed the motion, because the Second Motion involves the same issues as those in the Order denying TRO which was on appeal before the Tenth Circuit.  Braverman's Second Motion requests the same injunctive relief against the same defendants as her Motion for TRO.  Ruling on the Second Motion would have required the Court to re-visit the legal issues addressed in the Order denying TRO regarding injunctive relief against Judge Singleton and LPL Financial.  Braverman's filing her

Notice of Appeal divested the court of its jurisdiction over the Second Motion.  Because the Tenth

Circuit has dismissed Braverman's Appeal, the Court now has jurisdiction to rule on the merits of

her Second Motion.  The Second Motion, however, does not overcome the legal hurdles that kept

the Court from granting Braverman's Motion for TRO.  Moreover, Braverman previously lost a

matter alleging similar violations against the State of New Mexico and Judge Singleton.  The

disposition of this prior matter presents issues regarding Braverman's First Amended Complaint and

Second Motion.  The Court will thus deny Braverman's Second Motion for many of the same

reasons the Court denied her Motion for TRO, and because Braverman's loss in New Mexico state

district court may preclude the re-litigation of the same issues and claims in this Court.

I.  **THE COURT WAS DIVESTED OF JURISDICTION OVER BRAVERMAN'S SECOND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WHILE BRAVERMAN'S APPEAL WAS PENDING BEFORE THE TENTH CIRCUIT.**

The Court did not have jurisdiction over Braverman's Second Motion while pending

appellate review, because the Second Motion raises the same issues as those which were on appeal

before the Tenth Circuit.  See Int'l Bus. Mach. Corp. v. Johnson, 355 F.App'x. at 455-56.

Braverman, in her Second Motion, has requested the same relief, against the same State Defendants,

as in her Motion for TRO.  Compare Second Motion at 9-10, with Motion for TRO at 1.  Braverman

moved the Court in her Motion for TRO to issue an injunction:

> (a) prohibiting Defendant State of New Mexico acting through its [agent] the
> Honorable Sarah Singleton ("Singleton") . . . from taking any action that would have
> the effect of transferring Plaintiff's assets to Alan H. Goldstein . . . ; [and] (b)
> prohibiting Defendant LPL Financial from transferring any of Plaintiff's assets to
> Alan H. Goldstein without Plaintiff's prior consent."

Motion for TRO at 4-5.  Braverman's Second Motion requests the Court to enjoin the same actions:

prohibiting Judge Singleton from "allowing Alan H. Goldstein to further dissipate" Braverman's

assets, and prohibiting LPL Financial from "transferring any assets" to Goldstein.  Second Motion at 9-10.  Braverman's basis for relief is grounded in the same statutory authority as her Motion for TRO -- both motions assert that "Plaintiff is entitled to prospective injunctive relief against New Mexico and its agents . . . under Title II of the ADA."  <u>Compare</u> Second Motion ¶ 14, at 9, <u>with</u> Motion for TRO ¶ 2, at 2.  The Court previously ruled on whether the ADA grants authority to issue injunctive relief against the same State Defendants, and Braverman appealed that ruling.  <u>See</u> MO at 23-40; Notice of Appeal, at 1.  Thus, Braverman's Second Motion is a motion over which the Court did not have jurisdiction until the Tenth Circuit ruled on the appeal, because the motions implicate "questions raised and decided upon the interlocutory order appealed from" in Braverman's Notice of Appeal.  <u>Int'l Bus. Mach. Corp. v. Johnson</u>, 355 F.App'x. at 455-56.

Braverman attempted to persuade the Court that her Second Motion is collateral to her Motion for TRO, and thus within the Court's jurisdiction.  <u>See</u> Tr. at 8:24-9:2 (Boyle).  In support, Braverman argued that her Second Motion is based upon new facts which have transpired since the Court denied Braverman's Motion for TRO, and Braverman thus asserted that the basis for her Second Motion is a different matter than the matter before the Tenth Circuit.  <u>See</u> Tr. at 8:24-9:2 (Boyle).  Notwithstanding whether new events have transpired, Braverman's Second Motion alleges the same claims, against the same parties, and on the same authority, as her Motion for TRO.  Braverman's Second Motion is not within the Tenth Circuit's understanding of collateral matters, such as those which include different claims against different parties.  <u>See</u> <u>Int'l Paper Co. v. Whitson</u>, 595 F.2d at 561-62.  Braverman's Second Motion is a matter which the "district court must refrain from ruling on" while "appellate review is imminent."  <u>Mountain Solutions, Inc. v. State Corp. Comm'n State of Kan</u>, 982 F.Supp. at 816.  Additional facts in Braverman's Second Motion -- which do not change the legal issues -- do not grant the Court jurisdiction over the unchanged legal

issues -- judicial immunity and the availability of injunctive relief -- which were awaiting appellate review.  See Int'l Bus. Mach. Corp. v. Johnson, 355 F.App'x. at 455-56.

Second, Braverman pointed to a myriad of authorities in arguing that the Court has jurisdiction over her Second Motion, yet all of these are off-point.  Braverman relied chiefly on Pinson v. Pacheco, which Braverman argues holds that a "District Court [has] jurisdiction to consider a second and third motion for preliminary injunction even though an appeal of the Plaintiff's first motion for preliminary injunction [is] pending on appeal."  Jurisdiction Brief ¶ 2, at 2.  Braverman has misinterpreted this case.  The Tenth Circuit in Pinson v. Pacheco addressed whether a matter on appeal was moot, in light of a district court's dismissal of the claims against some defendants.  See 424 F.App'x. at 754.  Because claims remained against some defendants in the district court, the Tenth Circuit ruled that appellate review was not moot as to the claims against the remaining defendants.  See 424 F.App'x. at 754.  Furthermore, Pinson v. Pacheco had a different procedural history than that which was before the Court here.  In Pinson v. Pacheco, the plaintiff moved the district court for three separate preliminary injunctions.  See 424 F.App'x. at 750.  The first and second requested the court to enjoin the same defendants from the same actions, not unlike the matter before the Court here.  See 424 F.App'x. at 751-52.  The district court denied the plaintiff's first motion; the plaintiff promptly appealed that denial to the Tenth Circuit, and the Tenth Circuit affirmed the district court.  See 424 F.App'x. at 752.  The district court did not, however, rule on the plaintiff's request for the same injunctive relief in her second motion until after the Tenth Circuit had affirmed the district court's prior ruling on appeal.  See Pinson v. Pacheco, 397 F.App'x. 488, 490-91 (10th Cir. 2010); Pinson v. Pacheco, 2010 WL 4602939, *1 (D. Colo. 2010).  Thus, Pinson v. Pacheco did not present the same procedural issue as here, where Braverman moved the Court a second time for injunctive relief while the Court awaited appellate review of its earlier

ruling denying the same injunctive relief.

The other authorities to which Braverman cited are similarly not on point.  In <u>Colo. v. Idarado Mining Co.</u>, 916 F.2d 1486, (10th Cir. 1990), the Tenth Circuit affirmed a district court's jurisdiction to "act on matters not involved" in an appeal of an order granting a mandatory injunction.  916 F.2d at 1490.  Thus, <u>Colo. v. Idarado Mining Co.</u> is contrary to Braverman's proposition that the Court has jurisdiction over matters which are involved in her pending appeal. Likewise, the other authorities to which Braverman cites all hold that a district court has jurisdiction to proceed on the merits of a case, notwithstanding a pending interlocutory appeal, but that jurisdiction is limited to matters not involved in the interlocutory appeal.  <u>See</u> <u>Moltan Co. v. Eagle-Picher Industries, Inc.</u>, 55 F.3d at 1174 ("An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues in the case."); <u>Shevlin v. Schewe</u>, 809 F.2d at 452 (noting that an interlocutory appeal "does not prevent the district court from proceeding with matters not involved in the appeal"); <u>Janousek v. Doyle</u>, 313 F.2d at 920 (ruling that an interlocutory appeal of an order granting an injunction allowed a district court to retain jurisdiction over all matters "except a review of the injunction"); <u>Phelan v. Taitano</u>, 233 F.2d at 119 ("An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue with other phases of the case.").  These authorities therefore do not support a finding that the Court had jurisdiction over matters involved in the appeal until the Tenth Circuit dismissed the appeal.  Because the Tenth Circuit has now dismissed the appeal, the Court now has jurisdiction over all matters related to the appeal.

## II.   BRAVERMAN HAS NOT SHOWN THAT SHE WILL SUFFER IRREPARABLE HARM UNLESS THE INJUNCTION ISSUES.

Braverman asserts that she will suffer irreparable harm if the Court does not grant her TRO,

largely because she will be unable to recover her property once it is transferred out-of-state to Goldstein.  See First Amended Complaint ¶ 60, at 15; Second Motion ¶ 18-19, at 8; Second Supplement ¶ 6, at 3.  Braverman alleges that the source of her harm are the withdrawals which Goldstein makes from her IRA account pursuant to Judge Singleton's orders.  See Second Motion ¶¶ 6-7, at 3; id. ¶ 19, 8.  Although Braverman has now shown the Court how she calculates the "hundreds of thousands of dollars in her investment accounts" which she has allegedly lost, she has still not established that a suit for monetary damages and tax liability would be an insufficient remedy.  Second Motion ¶ 19, at 8, Second Supplement ¶¶ 2-7, at 1-3.  While she suggests that Goldstein has no assets other than her IRA, there is no evidence before the Court to substantiate this assertion.

As the Court discussed in its Memorandum Opinion, "an irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages."  Memorandum Opinion at 22 (quoting Greater Yellowstone Coal v. Flowers, 321 F.3d at 1258).  As with Braverman's Motion for TRO, Braverman has not explained why she may not recover any monies lost if she prevails in the appellate process of New Mexico state courts.  While Goldstein may not have much assets, he must have some; the Court is left to speculate whether he could pay back all or some of what he is taking out of the IRA.  Braverman has not met her burden.  That state court will have jurisdiction over any appeal by Braverman and Goldstein, thus the problems that Braverman alleges with inspecting Goldstein's property, albeit out-of-state, should not be an issue.[12]  The Court thus finds that Braverman has not

---

[12]New Mexico law provides that a court which has personal jurisdiction over a party in a divorce proceeding may "determine the equities in the out-of-state real estate and order parties to act, or refrain from acting, with regard to the property."  Fenner v. Fenner, 106 N.M. 36, 40, 738 P.2d 908, 913 (Ct. App. 1987).  Although a New Mexico state court cannot compel title to out-of-

shown that she will suffer an irreparable injury in the absence of the TRO that she requests.

## III.   BRAVERMAN HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON THE MERITS.

The motions now before the Court present many of the same legal issues that the Court addressed in its Order denying TRO and Memorandum Opinion.  Braverman's First Amended Complaint and Second Motion request the Court to interfere with an ongoing state proceeding, in contravention to the Supreme Court's ruling in Younger v. Harris.  See 401 U.S. at 40. Furthermore, Braverman has not presented new arguments to the Court to show that the relief she requests avoids the restrictions that Congress mandated in the Anti-Injunction Act, which "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding in the absence of one of the recognized exceptions."  Mitchum v. Foster, 407 U.S. at 228-29. Braverman lost in her New Mexico state district court action against Judge Singleton and the State of New Mexico, and that loss likely precludes litigation of Braverman's allegations against the State of New Mexico, Judge Singleton, and Special Master Hall in this case.  Even if her claims are not specifically precluded, the Court finds that judicial immunity likely protects Judge Singleton and Special Master Hall against Braverman's claims.  Braverman has not shown any new reason why such would not be the case, or how Judge Singleton and Special Master Hall could be liable in their individual capacity under the ADA.

Additionally, Braverman's attempted argument that "a new compelling case" entitles her to relief under the ADA is likely to fail.  Tr. at 13:20-23 (Boyle).  Braverman has alleged facts which show only that the divorce proceeding is ongoing since the Court's Order denying TRO; she has

_____

state property to pass without the owner's consent, the court can hold a noncompliant spouse in contempt for failure to pass title when a court determines the property should belong to the other spouse.  See 106 N.M. at 40, 738 P.2d at 913.

failed to show that Judge Singleton and Special Master Hall subjected her to discrimination based on her disability.  Therefore, even if Braverman's claims are not precluded against the State of New Mexico by Braverman's prior New Mexico state district court loss, the Court still finds that her First Amended Complaint is not likely to succeed on the merits.  Lastly, Braverman has not given the Court any new facts or arguments which show that the threatened injury to herself outweighs the harm which would befall other parties, or how her proposed injunction favors the public interest. Thus, the Court will deny Braverman's Second Motion.

Braverman's Second Motion requests that the Court enjoin the actions of LPL Financial, who is no longer a party to this matter.  See LPL Financial Dismissal, at 1.  The Court will thus not discuss any claims against LPL Financial, as the Court no longer has jurisdiction to enjoin LPL Financial.  See Williamson v. Sena, 2006 WL 1308268 (D.N.M. 2006)(Browning, J.)(finding that a court does not have jurisdiction to enjoin non-parties to a litigation).

Braverman has included a new allegation in her First Amended Complaint and Second Motion -- that the State Defendants "conspired to deprive [Braverman] of the free exercise of her rights assured by the United States Constitution and by the [ADA]," and "willfully deprived [Braverman] of rights, privileges, and immunities secured and protected by the United States Constitution and by the [ADA]" in violation of 18 U.S.C. §§ 241-242.  First Amended Complaint ¶¶ 47-48, at 13; Second Motion ¶ 2, at 2.  Braverman asserts that she is "at a minimum . . . entitled to an order enjoining such actions."  Second Motion ¶ 2, at 2.  No private cause of action exists under 18 U.S.C. §§ 241-242, Congress' conspiracy provisions, and thus 18 U.S.C. §§ 241-242 do not provide a basis for granting the injunctive relief Braverman requests.  See, e.g., Kelly v. Rockefeller, 69 F.App'x 414, 415 (10th Cir. 2003)("The district correctly dismissed plaintiff's claims under 18 U.S.C. § 241 . . . for failure to state a claim, because criminal statutes do not

provide for private civil causes of action.")).

## A.   *ROOKER-FELDMAN* LIKELY DOES NOT BAR THE COURT FROM ENTERTAINING BRAVERMAN'S FIRST AMENDED COMPLAINT.

"A federal court must, in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction." Cook v. Rockwell Intern. Corp., 618 F.3d 1127, 1135 n. 6 (10th Cir. 2010). As the Court is now aware of Braverman's loss in New Mexico state district court, the Court must determine whether it has jurisdiction over Braverman's action in this Court.  This Court may not serve as a court of appeal from New Mexico state courts.  See Valdez v. Metro. Prop. & Cas. Ins. Co., 2012 WL 1132374, at *19 ("Valdez").  Were Braverman, as a state-court loser, coming before this Court requesting a review of the correctness of the New Mexico state district court's judgment against her that was rendered before her proceeding in federal court commenced, the Court would have no jurisdiction over her First Amended Complaint.  See Valdez, 2012 WL 1132374, at *38. The Court finds, however, that Braverman is not requesting a review of the New Mexico state district court's judgment against her.  Rather, Braverman is requesting the same relief as she would request had she not brought suit in state court.  The Court, thus, probably has jurisdiction to entertain her First Amended Complaint.  See Bolden v. City of Topeka, 441 F.3d at 1138 (finding that *Rooker-Feldman* does not bar a party's complaint was not barred under *Rooker-Feldman* when the relief sought was independent of a state court judgment against the party).

In Braverman's First Amended Complaint, she requests the Court to award money damages and enjoin the actions of the State Defendants' actions.  See First Amended Complaint ¶ 50, at 13; id. ¶ 66, at 16.  The New Mexico state district court did not cause the specific harm which she alleges. The actions of the State Defendants which she allege violate her rights, began before the New Mexico state district court issued its ruling.  Both her State Complaint and her First Amended

Complaint allege that Judge Singleton's orders violated Braverman's rights during Braverman's divorce proceedings; Judge Singleton first issued her orders on October 29, 2010.  See State Complaint, ¶ 21, at 5; First Amended Complaint ¶ 16, at 4.  The New Mexico state district court, in the State Dismissal Order, did not stop ongoing actions.  Furthermore, Braverman has not requested that the Court examine and overrule the State Dismissal Order.  Indeed, she did not even bring the State Dismissal Order to the Court's attention.  Thus, her First Amended Complaint does not fall within the narrow category of cases in which a "loser in state court invites federal district court to overturn state court judgments," because Braverman is not alleging that the state court "judgment itself inflicted the injury" that she requests the Court to review.  Bolden v. City of Topeka, 441 F.3d at 1143-45.  Braverman's First Amended Complaint is instead identical to what it would have been "had there been no state court proceeding."  Bolden v. City of Topeka, 441 F.3d at 1138.  Therefore, even though Braverman's First Amended Complaint is "regarding the same subject matter, [and] even the same claims, as those presented in the state court action," *Rooker-Feldman* does not bar this Court from entertaining her suit.  441 F.3d at 1139.

**B.    THE COURT WILL LIKELY HAVE TO ABSTAIN FROM HEARING BRAVERMAN'S CASE.**

Braverman's First Amended Complaint includes a new claim for money damages from the State Defendants in addition to a request for injunctive relief.  See First Amended Complaint ¶¶ 65-74, at 16-19.  The Court previously discussed its reasons for abstaining, under Younger v. Harris from entertaining Braverman's Complaint, which requested only injunctive relief.  See Memorandum Opinion at 17-19, 23-30 (discussing the relevant law of abstention under Younger v. Harris and finding that the Court's intervention would be improper in Braverman's ongoing state divorce proceeding, in part because a divorce, as a domestic relation proceeding, involves an

-50-

important state interest in which federal courts should not interfere).

Braverman argues that she has "no other forum in which [she] can obtain relief from [Judge] Singleton's acts," Second Motion ¶ 17, at 7, yet she admitted that her appeal in the Court of Appeals of New Mexico would grant the same relief as that which she currently seeks from the Court. "[I]t's true that Braverman has filed a notice of appeal [in state court] and . . . a motion to stay execution, which would have effectively the same impact as what we're [requesting] here . . . [and if we are] unhappy about what the state court does with that motion to stay we can seek a review of that." Tr. at 36:12-37:4 (Boyle). While Braverman seems to be arguing that she can enforce her rights under the Constitution and the ADA only be enforced in federal court, see Tr. at 11:4-12 (Boyle),  the Court already explained that state courts are adequate forums for these federal claims in its Memorandum Opinion, see Doc. 19 at 29-30.  Braverman's appeal to the Court of Appeals of New Mexico is now dismissed, by the parties' stipulation, yet the Court still has no reason to believe that the state courts are an inadequate forum for the relief Braverman requests.  That Braverman's appeal to the Court of Appeals of New Mexico was dismissed by stipulation only denotes that she has reached some sort of accord in state court and found the appeal to be unnecessary.  Just as the Court discussed in its Memorandum Opinion, Braverman's lawsuit in state court is still ongoing for the purposes of Younger v. Harris abstention, making any intervention by the Court improper.  See Memorandum Opinion at 26 (citing Pennzoil Co. v. Texaco, Inc., 481, U.S. 1, 14 n.13).  She appears to have made interlocutory appeals, but there is nothing to indicate that she cannot appeal at the end of the case, the more usual means of appeal.  The Court thus is unpersuaded that any "extraordinary circumstances" are present which would make New Mexico state courts unable to give Braverman a "full and fair hearing on her federal claims," and the Court will need to abstain.  See Memorandum Opinion at 30 (quoting Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989).

Even though Braverman has requested money damages in addition to injunctive relief, that new claim does not change the Court's analysis of abstention. The Tenth Circuit addressed the requirement of mandatory abstention from enjoining ongoing state proceedings, even where a party seeks money damages, in Wideman v. Colorado. The Tenth Circuit ruled that a district court must still abstain, under Younger v. Harris, from interfering with ongoing state proceedings, even where a party alleges that state courts are committing constitutional violations against him, and the party has sought both injunctive relief and money damages in federal court. See 242 F.App'x at 611, 614. Similarly, the Court's need to abstain from interfering with Braverman's ongoing divorce proceeding is not changed because Braverman has sought monetary damages from the State Defendants.

It may be an issue whether her state court remedies will be adequate if she cannot sue judges for money damages in state court in the same case over which they are presiding. This dilemma, however, was also present in Wideman v. Colorado and may be one of the reasons that judges enjoy judicial immunity. Because Braverman can likely sue in either state court or federal court, in this case or in another case, for the actions and omissions of which Braverman complains, it is likely that the adequate remedy analysis does not change because of the claims against them. As to the State of New Mexico, Judge Singleton and Special Master Hall will likely preside over that case, even if it implicates their actions; a judge's actions are often at issue on appeal, and that fact does not prohibit the judge from sitting on the case. Accordingly , Braverman likely can bring the identical ADA claim in her state case and can argue the same matter that she seeks to bring here. The Court, thus, will likely need to abstain, under Younger v. Harris, from entertaining Braverman's First Amended Complaint.

-52-

### C.   BRAVERMAN'S LOSSES IN NEW MEXICO STATE COURT LIKELY PRECLUDE BRAVERMAN'S FIRST AMENDED COMPLAINT.

New Mexico state district court dismissed Braverman's State Complaint before she commenced her suit in federal court. The New Mexico state district court dismissed Braverman's State Complaint, because her allegations, although naming the State of New Mexico as a defendant, were directed at Judge Singleton's actions in her judicial capacity, overseeing Braverman's divorce proceeding. The New Mexico state district court thus found that Judge Singleton's judicial immunity barred Braverman's claims. See State Dismissal ¶¶ 1-2, at 1-2; id. ¶ 8, at 3. Braverman's First Amended Complaint brings the same cause of action, arising from the same facts, against nearly the same defendants, as her State Complaint. The Court, thus, finds that res judicata may bar her claims against the State Defendants and collateral estoppel may preclude re-litigation of the factual and legal issues.

New Mexico's law on res judicata likely bars Braverman's First Amended Complaint. Res judicata, under New Mexico law, bars "the same claim between the same parties . . . when the first litigation resulted in a final judgment on the merits." Deflon v. Sawyers, 139 N.M. at 640, 137 P.3d at 580. Her First Amended Complaint and State Complaint both: (i) are brought by Braverman; (ii) name the State of New Mexico and Judge Sarah Singleton, individually and as an agent of the State of New Mexico, as defendants; (iii) allege violations of Braverman's rights occurring during her divorce proceeding; and (iv) bring allegations under the ADA. Compare State Complaint ¶¶ 1-2, 5, 8, 11, at 1, 2, 3, with, e.g. First Amended Complaint ¶¶ 2, 5, 10, 19, 45, at 1, 2, 3, 4, 12. This level of overlap tends to show that Braverman's loss in state court precludes her First Amended Complaint. See Deflon v. Sawyer, 139 N.M. at 640, 137 P.3d at 588.

The ADA allegations against Judge Singleton and the State of New Mexico are not the only

overlapping claims in both of Braverman's state and federal complaints.  Both complaints assert that Judge Singleton's control over Braverman's assets, and her delay in hearing Braverman's request for a protective order, were unlawful under New Mexico statutes.  Compare State Complaint ¶¶ 14-15, 19, at 4, 5, with First Amended Complaint, ¶¶ 18, 21, 32, at 4, 5, 8.  Thus, her loss in New Mexico state district court likely precludes the allegations in Braverman's First Amended Complaint against Judge Singleton and the State of New Mexico, because Braverman has brought the same cause of action, regarding the same subject matter, against the same parties, with claims she could have raised, in both cases.

Furthermore, the Court has no reason to believe that Braverman did not have an opportunity to be heard on her claims in New Mexico state district court.  The Court notes that the New Mexico state district court docket contains several entries an hearings regarding the State of New Mexico's motion to dismiss Braverman's State Complaint, and responsive filings from Braverman and the State of New Mexico regarding the State of New Mexico's motion to dismiss.  See Kate Braverman v. State of New Mexico, No. D-101-CV-201100199, *Hearings for this Case, Register of Actions, Activity,* https://caselookup.nmcourts.gov/caselookup?component=cnLink&page=searchResults& service=direct&seession=t&sp=sd-101-CV-201100199 (last updated March 23, 2011)(showing that the State of New Mexico filed a Motion to Dismiss on February 10, 2011, Braverman filed a Response in Opposition to Defendant's Motion to Dismiss on March 1, 2011,  and a Hearing for multiple matters was held on March 10, 2011 ).  Thus, the State Dismissal Order may be a final judgment "on the merits," such that Braverman is precluded from bringing the claims in her First Amended Complaint before this Court.  See Cagan v. Village of Angel Fire,  137 N.M. at 575, 113 P.3d at 398 (finding that a final judgment on the merits occurs where a party had the opportunity to be heard through filing motions and oral arguments at a hearing).

Furthermore, many issues of fact and law in Braverman's First Amended Complaint may not be re-litigated because of collateral estoppel; her First Amended Complaint presents issues the State Dismissal Order necessarily decided.  Braverman is likely to be estopped from bringing her claims against the State Defendants, as she was the losing party in her prior action in New Mexico state district court.  Compare State Complaint, ¶ 1, at 1, with First Amended Complaint at 1.  "In both offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action."  O'Brien v. Mitchell, 2012 WL 3150371, at *21.  The New Mexico state district court necessarily determined, in dismissing Braverman's State Complaint, that judicial immunity bars Braverman's allegations against Judge Singleton.  See State Dismissal Order ¶ 8, at 3 ("[Braverman's] Complaint . . .[is] barred by the absolute judicial immunity of Judge Singleton from such claims for relief under the Doctrine of Judicial Immunity.").  Thus, Braverman would be a losing party, attempting to re-litigate the issues already decided against her, the situation which New Mexico's collateral estoppel law precludes.  See 2012 WL 3150371, at*21; Burlington Res. Oil & Gas Co., 148 N.M. at 233, 233 P.3d at 366.   The Court does not see any reason why "countervailing equities militate against application" of the collateral estoppel doctrine, because Braverman already had an opportunity to seek relief in New Mexico state court.  See O'Brien v. Mitchell, 2012 WL 3150371, at 23.  The Court will thus likely find that  the New Mexico state district court ruling that judicial immunity protected Judge Singleton in her actions presiding over Braverman's divorce may preclude some of Braverman's allegations against Judge Singleton.

### D. THE COURT MAY NOT BE ABLE TO STAY OR TO ENJOIN THE STATE COURT PROCEEDING UNDER THE ANTI-INJUNCTION ACT.

Braverman has requested that the Court:

(a) [prohibit] Defendant State of New Mexico acting through its agent the Honorable Sarah Singleton from allowing Alan H. Goldstein to further dissipate the secondary

> IRA or to make any withdrawals from such accounts; and (b) [prohibit] Defendant LPL Financial from transferring any assets in the secondary IRA to Goldstein or otherwise without Plaintiff's prior consent.

Second Motion at 9-10. As the Court discussed in its Memorandum Opinion, "[t]he Anti-Injunction Act provides that 'a court of the United States may not grant an injunction to stay proceedings in State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" Memorandum Opinion at 31(quoting 28 U.S.C. § 2283). Braverman argues in her Second Motion that the Anti-Injunction Act "does not prevent this Court from granting the relief sought in this motion because the ADA expressly allowed injunctions against the state to prevent unlawful discrimination." Second Motion ¶ 14, at 6. Braverman made the same argument in the Court's hearing on her Motion for TRO. See Transcript of Hearing at 28:20-23 (September 26, 2011)(Court, Boyle)(Mr. Boyle, Braverman's Counsel, responding "that's correct" to the Court's inquiry whether Braverman is arguing that the ADA expressly allows a federal court to grant an injunction to stay proceedings in state court). Braverman cites the Supreme Court's decision in Mitchum v. Foster, 407 U.S. 225 (1972), for her proposition that the "test" for whether an act of Congress empowers a federal court to enjoin state proceedings is whether the federal law creates a "federal right or remedy enforceable in federal court of equity [which] could be given its intended scope only by stay of state proceedings." Second Motion ¶ 14, at 29.

The Court discussed Mitchum v. Foster, and many other cases, in its Memorandum Opinion explaining why the Anti-Injunction Act probably prohibits the Court from granting Braverman the relief she requested. See Memorandum Opinion at 16-17, 19-21, 30-36. The Court addressed the argument which Braverman makes in her Second Motion, that the ADA "expressly allow[s]" federal courts to enjoin state court proceedings. Memorandum Opinion at 30-36. The Court finds that there

is no reason to re-state the relevant law or its discussion of the relation of the ADA to the Anti-Injunction Act, because Braverman has not presented the Court with a new reason, based in fact or law, to re-visit these legal issues.  Instead, Braverman has put into writing the argument that she made at the hearing on her Motion for TRO, see Transcript of Hearing at 28:20-23 (September 26, 2011)(Court, Boyle) , an argument which the Court discussed and ruled against in its Memorandum Opinion, see Memorandum Opinion at 30-36.  The Court thus finds that it may not be able to enjoin the state court September 24, 2012 divorce proceedings underlying Braverman's Second Motion, as the Anti-Injunction Act likely precludes such an injunction.

### E.    JUDGE SINGLETON AND SPECIAL MASTER HALL ARE PROBABLY PROTECTED FROM BRAVERMAN'S LAWSUIT.

In both Braverman's Motion for TRO and Second Motion, she requests the Court to issue orders to Judge Singleton regarding Judge Singleton's control over the secondary IRA in Braverman's divorce proceeding.  Compare Motion for TRO at 1, with Second Motion at 1. Braverman alleges in both motions that Judge Singleton's orders regarding Braverman's separate property are a form of discrimination against Braverman on account of Braverman's bi-polar disorder.  Compare Motion for TRO ¶ 4, at 2-3, with Second Motion ¶ 17, at 7.  Braverman also alleges in both her Complaint and Amended Complaint that Special Master Hall issued orders regarding the disposition of assets in the secondary IRA on account of his misunderstanding of Braverman's bi-polar disorder, and were thus a form of discrimination against Braverman.  Compare Complaint ¶¶ 23-27, at 6-7, with Amended Complaint ¶¶ 23-27, at 6-7.  Braverman alleges in both motions that none of the State Defendants are "entitled to immunity for their discrimination against Plaintiff in violation of the ADA and her constitutional rights," because their actions were taken "in the absence of any jurisdiction."  Motion for TRO ¶ 3, at 2; Second Motion ¶ 15, at 6 (same wording

in both motions).  Braverman asserts in both her Complaint and Amended Complaint that Judge Singleton and Special Master Hall acted without jurisdiction, because they took control over out-of-state property, a violation of N.M.S.A. 1978 § 40-4-4.  Compare Complaint ¶ 18, at 5, id. ¶ 20, at 5, with Amended Complaint ¶ 18, at 4, id. ¶ 20, at 5.  The statute to which Braverman points provides that, in a divorce proceeding, "the court shall have jurisdiction of all property of the parties, wherever located or situated in the state."  N.M.S.A. 1978 § 40-4-4.

The Court ruled, in its Order denying TRO, found that Braverman is unlikely to succeed on the merits of her claim, because judicial immunity and quasi-judicial immunity probably protects Judge Singleton and Special Master Hall from Braverman's allegations.  See Memorandum Opinion at 36-39.  Braverman has not made any new showing why Judge Singleton and Special Master Hall are not immune, as she repeats her argument that both Defendants did not have jurisdiction over her out-of-state property, and, because they had no jurisdiction, immunity does not cover them; the Court addressed these issues in its Memorandum Opinion.  Furthermore, the Court also ruled that Braverman likely could not sue Judge Singleton and Special Master Hall in their individual capacity under the ADA, even if judicial immunity does not protect them.  See Memorandum Opinion at 39-40 ("Title II [of the ADA by its]  plain language would therefore suggest that officials may not be sued in their individual capacity.").  Although Braverman brings suit against Judge Singleton and Special Master Hall as individuals, and as agents of the State of New Mexico, she has not shown the Court how she can sue these defendants in their individual capacity under the ADA.  See Amended Complaint ¶¶ 2-3, at 1-2.  The Court, thus, will not re-visit its discussion and analysis of Judge Singleton and  Special  Master  Hall's  likely  judicial  immunity  and  quasi-immunity.   See Memorandum Opinion at 11-16, 36-39.  Braverman's Second Motion raises the same issues regarding Judge Singleton's and Special Master Hall's judicial immunity, and the Court has no

reason to change its analysis of this issue from its Memorandum Opinion. The Court will likely find that judicial immunity protects Judge Singleton and quasi-judicial immunity protects Special Master Hall from Braverman's claims and allegations in her First Amended Complaint.

**F.      IT IS UNLIKELY THAT BRAVERMAN WILL BE ABLE TO SHOW THAT THE STATE DEFENDANTS DISCRIMINATED AGAINST HER ON THE BASIS OF DISABILITY.**

Braverman likely will not be able to show that the State Defendants discriminated against her on the basis of her protected disability. The Tenth Circuit requires that a plaintiff prove three factors to establish a claim under Title II: (i) that he or she is a qualified individual with a disability; (ii) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or the public entity otherwise discriminated against the plaintiff; and (iii) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. See Gohier v. Enright, 186 F.3d at 1219. Braverman is an individual with a disability, on account of her having bi-polar disorder. See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1081 (10th Cir. 1997)("[E]very appellate court which has considered the question has held or assumed that 'bipolar disorder' is a mental disability covered under the ADA . . . . We agree."). Just as with Braverman's Motion for TRO, however, the Court doubts that the State Defendants have discriminated against Braverman because of her disability.

Much of Braverman's First Amended Complaint contains the same allegations, indeed even the same wording, as her Complaint. Compare Complaint ¶¶ 1-39, at 1-10, id. ¶¶ 40-45, at 11-12, with First Amended Complaint ¶¶ 1-39, at 1-10, id. ¶¶ 41-46 at 11-12. Both complaints contain numerous allegations against Judge Singleton and Special Master Hall, arguing that the orders which have favored Goldstein rather than Braverman, and the use of a nude photograph during the divorce proceedings, were acts of discrimination. The Court previously discussed these allegations in its

-59-

Memorandum Opinion.  See Memorandum Opinion at 44 ("Braverman asks the Cour to infer discrimination from a series of legal decisions in the divorce proceedings the state court determined in Goldstein's [favor].  The evidence Braverman offers in support of her claim of discrimination does not demonstrate anything other than speculation.").  The Court will not re-visit the allegations upon which it has already ruled.  The Court finds that, just as Braverman's Complaint likely failed to show that Braverman has suffered discrimination during the divorce proceeding, the same facts in Braverman's First Amended Complaint cannot succeed in showing that Braverman has suffered discrimination against because of her bi-polar disorder.

While Braverman's Second Motion is no longer within the category of injunctions that the Tenth Circuit disfavors, because granting the TRO would not give Braverman the money damages she also seeks, the Court is still unpersuaded that Braverman has suffered discrimination during her divorce proceeding.  Cf. Flood v. ClearOne Commc'ns, Inc., 618 F.3d 1110, 1117 n.1 (10th Cir. 2010)(explaining that a disfavored preliminary injunction is one which grants "the moving party all the relief it could achieve at trial").  Much of Braverman's argument in the hearing on March 22, 2012, attempted to persuade the Court that the facts which have occurred since the Court denied her Motion for TRO meet the stringent standard that would be required were her Second Motion a disfavored injunction.  See Tr. at 13:21-14:1 (Boyle).  The Court, however, finds that the "new set of facts," which Braverman alleges, no more demonstrate that the State Defendants have discriminated against Braverman because of her disability, than did her allegations in her Complaint and Motion for TRO.  See Tr. at 14:1-2 (Boyle).

The "new set of facts" to which Braverman points center around alleged disparate treatment which Braverman has suffered since the Court's Order denying TRO.  Tr. at 14:1-2 (Boyle).  Yet, the actions which Braverman alleges show disparate treatment only demonstrate that Judge

Singleton either delayed in granting Braverman's motions, or denied Braverman's motions in the divorce proceeding.  Such judicial action is not likely discrimination.  For example, Braverman asserted that Judge Singleton delayed from October, 2011 to February, 2012, to enforce Braverman's ability to make withdrawals from the secondary IRA.  See Tr. at 16:1 - 17:21 (Boyle). The Court cannot comment on Judge Singleton's reasons for so delaying, but a delay in and of itself is not evidence of disparate treatment.  Further, Braverman's arguments that Judge Singleton denied requests  because of Braverman's disability has no basis apart from Braverman's allegations.  See 17:2-18:4, 19:17-20:19 (Boyle).  Braverman provided the Court with a copy of these allegedly discriminatory orders with her Second Motion.  Nowhere in Judge Singleton's orders -- denying a request for sanction,  attorneys fees, and to stay enforcement of an order -- does Judge Singleton reference Braverman's disability, either directly or indirectly.  See Second Motion, E's. 1-7, filed Feb. 28, 2012.  Braverman's hypothetical reason for why she has lost certain motions in her divorce proceeding is not likely to persuade the Court that she is entitled to the injunctive relief she requests.

Braverman has further alleged that Judge Singleton and Special Master Hall "unconstitutionally deprived" Braverman of her separate property by asserting control over the LPL Financial account.  First Amended Complaint ¶¶ 26-27, at 6-7.  Braverman alleges that she was denied her property, because of Judge Singleton and Special Master Hall's "mistaken belief" that the seizure was "necessitated and justified by" Braverman's bi-polar disorder.  First Amended Complaint ¶ 27, at 7.  A court may, however, assert control over a spouses' assets during a divorce proceeding to ensure that both sides are able to receive the property belonging to them.  Such control is not uncommon, especially where one party has a disparate amount of assets when compared with the other, as with Braverman and Goldstein.  Indeed, Judge Singleton stated that part of her rationale for controlling the secondary IRA was so that it would not "be difficult, if not impossible for

[Goldstein] to collect" his award if the funds are exhausted during Braverman's appeals.  Second

Motion, Ex. 3 at 2.  This rationale does not bespeak discrimination.  Thus, Judge Singleton's and

Special Master Hall's actions do not show disparate treatment because of Braverman's bi-polar

disorder.

The Court, therefore, will probably find that Braverman has not suffered discrimination

because of her disability during the divorce proceeding.  Braverman has not shown that the orders

issued against her were based upon Judge Singleton or Special Master Hall's intent to treat her

differently because of her bi-polar disorder.  Braverman has shown only that things have not gone

as she would like, but Braverman has not pointed to any concrete fact where she definitively

received disparate treatment because of her disability.  Braverman will thus not likely be able to

show that she qualifies for the relief she seeks in her First Amended Complaint.

### G.   BRAVERMAN HAS NOT SHOWN THAT THE THREATENED INJURY TO HERSELF OUTWEIGHS ANY HARM THE PROPOSED INJUNCTION MAY CAUSE OTHER PARTIES.

As with Braverman's Motion for TRO, Braverman once again asserts that the State

Defendants and Goldstein have no interest in the TRO that she seeks, in "[preservation of] the status

quo."  Compare Motion for TRO ¶ 8, at 4, with Second Motion ¶ 21, at 9.  This argument no more

compels the Court a second time than it did the first.  If the Court grants Braverman's Second

Motion, Goldstein will not have access to the funds which the state court determined he is entitled

to.  Thus, Braverman has not shown that any harm she suffers outweighs that which Goldstein would

suffer were the Court to grant the TRO.  See Memorandum Opinion at 44-45.

### H.   BRAVERMAN HAS NOT SHOWN THAT THE INJUNCTION WOULD NOT BE CONTRARY TO THE PUBLIC INTEREST.

Braverman argues that "the public will lose confidence in the judicial system" "if [Judge]

Singleton's unlawful and unconstitutional acts are not immediately enjoined." Second Motion ¶ 20, at 8. Braverman's Second Motion and First Amended Complaint, however, request the Court to intervene in the State of New Mexico's adjudication of her divorce, a domestic relations proceeding in which the State of New Mexico has a strong interest. See Memorandum Opinion at 45 (citing Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12-13 (2004), Hunt v. Lamb, 427 F.3d 725, 727 (10th Cir. 2005)(holding that "federal courts [should] leave delicate issues of domestic relations to the state courts")). The Court already ruled that the relief which Braverman requests would interfere with a state's determination of a uniquely state interest -- a strong policy consideration which indicates that the public interest does not favor granting her TRO. See Memorandum Opinion at 45. Braverman's general allegation that the Court must intervene, or else the public will lose confidence in the judicial system, does not rise to a level of gravity sufficient to justify her requested interference with the State of New Mexico's determination of a domestic relations issue.

Braverman's Second Motion does not, therefore, overcome the legal hurdles posed by her Motion for TRO, that the Court denied. Braverman has not shown that she will suffer irreparable harm if the Court does not grant her injunction, as she may seek relief from Judge Singleton's orders in New Mexico state court. Braverman is unlikely to succeed on the merits of her claims. She requests a federal court to enjoin an ongoing state court divorce proceeding, an injunction which is not allowed under either Younger v. Harris or the Anti-Injunction Act. Additionally, Defendants Judge Singleton and Special Master Hall are likely protected from Braverman's lawsuit, because their judicial or quasi-judicial immunity covers their actions in Braverman's divorce proceeding. Braverman will not likely be able to show that the Defendants' denial of her motions, or delay in granting her motions, were acts of discrimination against Braverman because of her protected disability. Furthermore, Braverman has not shown the Court that the harm she will suffer without

her requested TRO will outweigh any harm Goldstein would suffer were the Court to enjoin his withdrawals from Braverman's IRA. Nor has Braverman shown the Court that the injunction she requests favors the public interest, a high standard given that Braverman asks the Court to enjoin a state's adjudication of a domestic relations issue, a matter in which the State of New Mexico has a strong interest.

Lastly, Braverman's loss in state court against the State of New Mexico and Judge Singleton likely precludes many claims and issues in her First Amended Complaint. The Court is not a court of appeals to New Mexico state courts, and Braverman's attempt to re-litigate the claims and issues on which she has already lost is likely precluded under New Mexico's doctrines of res judicata and collateral estoppel. Accordingly, Braverman is unlikely to proceed on the merits of her First Amended Complaint, and the Court will thus not grant her the relief she requests in the Second Motion.

**IT IS ORDERED** that the relief requested in: (i) Plaintiff's Amended Motion for Temporary Restraining Order and Brief in Support; (ii) Plaintiff's Second Emergency Motion for Temporary Restraining Order and Brief in Support; and (iii) Plaintiff's Supplement to Second Emergency Motion for Temporary Restraining Order and Brief in Support, is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kate Braverman
Santa Fe, New Mexico

     *Plaintiff Pro se*

Gary K. King
  Attorney General of New Mexico
Scott Fuqua
  Assistant Attorney General
Santa Fe, New Mexico

> *Attorneys for the Defendants State of New Mexico, Judge Sarah Singleton, and
>   Special Master James Hall*

Richard S. Lees
Richard S. Lees, P.A.
Santa Fe, New Mexico

> *Attorney for Proposed Intervenor Alan H. Goldstein*

Ross Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

> *Attorney for dismissed Defendant LPL Financial Corporation*