IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATE BRAVERMAN,

     Plaintiff,

vs.                                                            No. CIV 11-0829 JB/WDS

THE STATE OF NEW MEXICO,
THE HONORABLE SARAH SINGLETON, and
JAMES HALL

     Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS'[1] MOTION TO DISMISS

**THIS MATTER** comes before the Court on the State Defendants' Motion to Dismiss, filed

October 3, 2011 (Doc. 12).  On October 31, 2011, Plaintiff Kate Braverman filed her Response to

Motion to Dismiss.  See Doc. 20.  The Court determines that a hearing on the motion is not

necessary.  The primary issues are: (i) whether the Court should stay or dismiss the claims in

Braverman's First Amended Complaint, filed November 7, 2011 (Doc. 21), under Younger v.

Harris, 401 U.S. 37 (1971); (ii) whether the Anti-Injunction Act, 28 U.S.C. § 2283 (1948), bars the

relief Braverman requests in her First Amended Complaint; (iii) whether the Honorable Sarah

Singleton, District Judge, First Judicial District, State of New Mexico, and Special Master James

Hall, former First Judicial District Judge, have judicial or quasi-judicial immunity from Braverman's

claims; (iv) whether the injunctive relief Braverman requests is inappropriate, because Braverman

---

[1] Braverman dismissed Defendant LPL Financial on March 1, 2012.  See Notice of Dismissal of Claims Against LPL Financial Without Prejudice (Doc. 32)("LPL Financial Dismissal").  The Court will use the term "State Defendants," the authors of the Motion to Dismiss before the Court, to refer to Defendant State of New Mexico, Judge Singleton, and Special Master Hall.  For motions filed before LPL Financial was dismissed, the Court will use the term "Defendants" to refer collectively to the State Defendants and LPL Financial.

has an adequate remedy at law; and (v) whether Braverman is likely to succeed on the merits of her First Amended Complaint.  <u>See</u> State Defendants' Motion to Dismiss at 2.  The Court finds that it must abstain from entertaining Braverman's First Amended Complaint under <u>Younger v. Harris</u>. Accordingly, the Court will dismiss Braverman's claims for injunctive relief without prejudice, and will stay her legal claims for money damages pending the conclusion of her litigation in state court. The Court will not address the other issues that the State Defendants have raised regarding Braverman's First Amended Complaint, as the Court finds it must abstain from reaching any decision on the merits while Braverman's state court proceedings are still pending.

**FACTUAL BACKGROUND**

Braverman filed two state cases before she filed this federal case.  One is the ongoing state divorce proceeding, and the other is a closed case that resembles the federal case.  Because the state litigation is important to the resolution of the Motion to Dismiss, the Court will discuss Braverman's two prior state cases first.

**1.      Braverman's Divorce Proceedings.**

Braverman and her husband, Alan H. Goldstein, are embroiled in a divorce proceeding in New Mexico state district court.  <u>See</u> First Amended Complaint ¶ 2, at 1.  Braverman commenced the divorce proceeding shortly after she suffered two physical attacks at the hands of Goldstein in October of 2009.  <u>See</u> First Amended Complaint ¶ 12, at 3.  The Honorable Sarah Singleton, State District Judge, is presiding over <u>Braverman v. Goldstein</u>.  <u>See</u> No. D-0101-DM-2009-01009 (1st Judicial District, Santa Fe County, State of New Mexico); First Amended Complaint ¶ 2, at 1. James Hall, former First Judicial District Judge, is the appointed Special Master in the divorce proceeding.  <u>See</u> First Amended Complaint ¶ 3, at 1-2.  Braverman has significant assets that she maintains in a separate account with LPL Financial, an institution which Braverman asserts is

outside of New Mexico.  See First Amended Complaint ¶¶ 11, 14, 18, at 3-4.

As part of the divorce proceeding, Judge Singleton ruled that Braverman should have "unfettered control" over $1.5 million in assets in the LPL Financial account, and that the remaining $800,000.00 should be put in a "secondary IRA" that Judge Singleton and Special Master Hall control.  First Amended Complaint ¶ 16, at 4.  This transfer "deprived Plaintiff of $5,000.00 per month in income that those assets generated."  First Amended Complaint ¶ 17, at 4.  Braverman alleges that, on October 12, 2010, Judge Singleton granted Goldstein a veto power over transfer, investment, or expenditures of the secondary IRA, and Goldstein unreasonably exercised that power to veto several investment plans that Braverman proposed.  See First Amended Complaint ¶¶ 21-23, at 5-6.  She asserts that Special Master Hall threatened that he would transfer the assets in the secondary IRA to the court registry if Braverman did not herself transfer the assets to a financial institution within Special Master Hall's jurisdiction.  See First Amended Complaint ¶ 24, at 6.

Braverman "suffers from moderate bi-polar disorder."  First Amended Complaint, ¶ 8, at 2. Braverman asserts that Judge Singleton and Special Master Hall treat her differently on the basis of her disability, specifically by denying her motions and requests during the divorce proceedings.  See First Amended Complaint ¶¶ 33, 37, 45 at 8-10, 12.  Braverman asserts that Judge Singleton "was under a mistaken belief that a suspension of [Braverman's] rights was necessitated and justified by [her] bi-polar disorder."  First Amended Complaint ¶ 27, at 7.  During the divorce proceeding, Judge Singleton denied Braverman's requests for an order of protection against Goldstein, an order directing disclosure of Goldstein's address, and an order removing Goldstein's attorney, Richard S. Lees, from the case.  See First Amended Complaint ¶¶ 33-34, 37, at 8-10.  Braverman, anticipating that she would be without counsel at her second deposition,  asked Special Master Hall to permit her an accommodation in her second deposition, that "her attorney-in-fact be permitted

-3-

to attend to provide the support and protection she needed to cope with her disability during the deposition." First Amended Complaint ¶ 41, at 11.  Special Master Hall denied the request.  See First Amended Complaint ¶ 41, at 11.  In April 2011, Special Master Hall issued Proposed Findings of Fact and Conclusions of Law, a report which included many findings and conclusions regarding Braverman's bi-polar disorder.  See First Amended Complaint ¶ 45, at 12.  On July 25, 2011, Judge Singleton adopted the entirety of the Proposed Findings of Fact and Conclusions of Law.  See First Amended Complaint ¶ 46, at 12.  Braverman asserts that, "[b]y doing so, Singleton subjected Plaintiff to discrimination by a public entity on account of a disability protected by the Americans with Disabilities Act."  First Amended Complaint ¶ 46, at 12.

Braverman asserts that Judge Singleton has applied one standard to her, and another to Goldstein and LPL Financial.  See Plaintiff's Second Emergency Motion for Temporary Restraining Order and Brief in Support, ¶ 10, at 5, filed February 28, 2012 (Doc. 29)("Second Motion").  Braverman further alleges that Judge Singleton  "has made it impossible for Plaintiff to realize any meaningful relief from her right to one appeal" "[b]y systematically destroying the assets from which Plaintiff might realize relief on appeal."  Second Motion ¶ 7, at 3.  In support of this allegation, Braverman points to Judge Singleton having entered a final decree in the divorce proceeding which makes a monetary award to Goldstein but does not award him spousal support.  See Second Motion ¶ 3, at 2.  Judge Singleton would not allow Braverman to withdraw separate funds to pay for her counsel until after the hearing on Braverman's motion to make such withdrawals, on October 12, 2011.  On October 12, 2011, "[Judge] Singleton orally ruled that the secondary IRA that [she] had previously seized should be returned to Plaintiff's control to the extent that the value of the secondary IRA exceeded the amount of the award to Goldstein."  Second Motion ¶ 3, at 2.  Braverman alleges that, when she sought to exercise control over the assets in the

secondary IRA pursuant to Judge Singleton's oral order, Goldstein and LPL Financial refused to comply with Judge Singleton's ruling.  See Second Motion ¶ 4, at 2.  Braverman asserts that she sought relief from Judge Singleton, and, in response, Judge Singleton "reversed her oral ruling and ordered that even the excess assets in the secondary IRA would not be available to [Braverman,] citing her 'post-decree motions practice' as the grounds for reversal."  Second Motion ¶ 4, at 3. Braverman alleges that Judge Singleton's continued control of the secondary IRA is without a legal basis and, as such, "is a denial of [Braverman's] constitutional right to equal protection under the law, her constitutional property rights, and her right to equal treatment" under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213 ("ADA").  Second Motion ¶ 6, at 3.

Braverman asserts that, after the entry of the Final Decree in the divorce proceeding, she sought to use her funds to pay her divorce proceeding counsel.  See Second Motion ¶ 10, at 4.  LPL Financial refused to comply, and Judge Singleton then sanctioned Braverman for the attempted withdrawal, because Judge Singleton found it "inconceivable" that Braverman could have believed that she was entitled to use her funds in that manner.  Second Motion ¶ 10, at 4.  Braverman alleges that, when LPL Financial distributed funds to Goldstein, Judge Singleton "did nothing," and when Goldstein tried to hold Braverman in contempt, Judge Singleton denied the request, yet "refused to sanction Goldstein."  Second Motion ¶ 10, at 4.  Braverman alleges that, although Judge Singleton informed the parties that she would not reconsider her rulings, Judge Singleton granted "a motion filed by Goldstein in direct contravention of her ruling."  Second Motion ¶11, at 5.  Braverman argues that the "repeated double standard applied by Singleton is continuing and the discrimination on which it is based is continuing to damage Plaintiff."  Second Motion ¶ 11, at 5.

Braverman alleges that the disparate treatment she has received caused her to suffer financial harm in the past, and a harm which she still suffers and expects to continue into the future.  See

Plaintiff's Supplement to Second Emergency Motion for Temporary Restraining Order and Brief in Support, at 1-3, filed February 29, 2012 (Doc. 31)("Second Supplement"). On February 29, 2012, Judge Singleton entered an order allowing Goldstein to remove $4,200.00 per month from Braverman's secondary IRA while the divorce proceeding is on appeal. See Second Supplement ¶ 2, at 1. Braverman asserts that Goldstein received $4,200.00 per month during the pendency of the divorce proceeding and after the entry of the Final Decree. See Second Supplement ¶ 3, at 2. Braverman alleges that, because of these payments to Goldstein, she has lost over $134,000.00 in money transfers and associated fees. See Second Supplement ¶ 4, at 2.

       2.      <u>**Braverman's Complaint Against the State of New Mexico and Judge Singleton in New Mexico State District Court.**</u>

Before bringing the present matter before the Court, Braverman filed in New Mexico state district court her Complaint for Injunctive Relief Against the State of New Mexico Pursuant to 42 U.S.C. § 12101, et. seq., Title II of the Americans with Disabilities Act (ADA), No. D-101-CV-201100199 (1st Judicial Dist. Jan. 18, 2011)("State Complaint"). Similar to Braverman's filings in this Court, Braverman's State Complaint sought injunctive relief against Judge Singleton's actions in Braverman's divorce proceeding. See State Complaint ¶ 34, at 9. Braverman made many of the same allegations, based on the same causes of action, as she has in her First Amended Complaint, in this first case. In her State Complaint, Braverman asserted that Judge Singleton's orders against Braverman in the divorce proceeding violate Braverman's rights. See State Complaint ¶ 2, at 1. Braverman argued that Judge Singleton has acted without jurisdiction, because Judge Singleton's orders are regarding Braverman's assets, which are located out-of-state. See State Complaint ¶ 14, at 4. Braverman alleged that the New Mexico state district court had jurisdiction over the State of New Mexico, as a defendant, pursuant to Title II of the ADA's abrogation of sovereign immunity.

See State Complaint ¶ 5, at 2 (citing 42 U.S.C. § 12202 (1990); Tennessee v. Lane, 541 U.S. 509,

518 (2004)).  Braverman asserted that she suffers from bi-polar disorder, a protected disability under

the ADA, and that Judge Singleton's "autocratic issuance" of orders is a violation of her rights under

the ADA, and her rights to due process and equal protection under the United States Constitution.

State Complaint ¶ 8, at 2.  Braverman alleged that Judge Singleton's orders single Braverman out

and treat her differently than non-disabled persons.  See State Complaint ¶ 10, at 3.  Braverman

further asserted that Judge Singleton's orders regarding her investment accounts -- dictating "how

her money would be invested" and ordering Braverman to make monthly payments of $4,200.00 to

Goldstein -- are an "unreasonable seizure of [Braverman's] property" in violation of her Fourth and

Fourteenth Amendment rights.  State Complaint ¶¶ 23-24, at 6-7.  Braverman argued that she is

entitled to injunctive relief enjoining these actions under Title II of the ADA, which, Braverman

argued, makes the State of New Mexico liable for Judge Singleton's actions.  See State Complaint

¶¶ 25, 27, at 7.  Braverman alleged that Judge Singleton's orders regarding Braverman's assets are

also a violation of her right to privacy under the Fifth and Ninth Amendments.  See State Complaint

¶¶ 24-25, at 6-7.  Braverman further alleged that Judge Singleton is acting in "conspiracy" with

Special Master Hall to circumvent New Mexico law regarding Braverman's separate property.  State

Complaint ¶¶ 18-19, at 5.  Braverman alleged that Judge Singleton's orders cause Braverman

monetary harm, having reduced her income by forty-percent, precluding Braverman from making

profitable investments.  See State Complaint ¶ 30, at 8.  Braverman stated that her harm would be

irreparable if an injunction is not issued.  See State Complaint ¶ 30, at 8.  Braverman also asserted

that the defendants would not be harmed by an injunction in Braverman's favor, asserting that

neither the State of New Mexico nor Judge Singleton have an interest in Braverman's financial

assets.  See State Complaint ¶ 33, at 8-9.  Braverman alleged that the "public interest will be served

by the injunction because investors must have confidence that their monies cannot be seized unreasonably through governmental intervention." State Complaint ¶ 34, at 9.  Braverman alleged that the "relative hardship to [her] in denying the injunction is greater than that of" the defendants in granting the injunction, because it is Braverman whose constitutional rights are violated without the injunction.  State Complaint ¶ 34, at 9.

The Honorable Raymond Z. Ortiz, District Judge, First Judicial District, State of New Mexico, found that Braverman's State Complaint, although naming the State of New Mexico as a defendant, sought relief against Judge Singleton in her capacity as presiding judge over Braverman's divorce case.  See Order ¶ 1, at 1-2 No. D-0101-CV-2011-00199 (1st Judicial Dist. Mar. 23, 2011)("State Dismissal Order").  Judge Ortiz ruled that the doctrines of judicial immunity, priority jurisdiction, improper collateral attack, and failure to join indispensable parties all barred Braverman from the relief she sought.  See State Dismissal Order ¶ 2, at 2; id. ¶ 8, at 3.  Judge Ortiz, accordingly, dismissed Braverman's State Complaint with prejudice.  See State Dismissal ¶ 8, at 3.

## PROCEDURAL BACKGROUND

Braverman commenced suit in federal court after her state divorce proceedings were not going as she would like.  She has filed a Complaint, a First Amended Complaint, and two motions for temporary restraining orders in this Court.  Additionally, she has taken matters on appeal to the United States Court of Appeals for the Tenth Circuit, and she has brought a subsequent lawsuit in state court.

1.    **Braverman's Emergency Complaint for Injunctive Relief and Motion for Temporary Restraining Order in Federal District Court.**

Before this Court, Braverman contended in her Emergency Complaint for Injunctive Relief, filed September 16, 2011 (Doc. 1)("Complaint"), that the Defendants are discriminating against her

on the basis of her bi-polar disorder in contravention of her rights under the ADA, and the Fifth and Fourteenth Amendments to the United States Constitution. See Complaint ¶¶ 51-59, at 13-15. In her Motion for TRO, filed concurrently with her Complaint, Braverman moved the Court, pursuant to rule 65(b) of the Federal Rules of Civil Procedure, to issue a temporary restraining order ("TRO"): (i) prohibiting the State of New Mexico, acting through its agents Judge Singleton and Special Master Hall, from taking any action that would have the effect of transferring Braverman's assets to Goldstein, including, without limitation, the entry of any order or decree purporting to implement Special Master Report No. 6 or Order Adopting Special Master Report No. 6[2] entered in the divorce proceeding; (ii) prohibiting LPL Financial from transferring any of Braverman's assets to Goldstein or otherwise without Braverman's prior consent; and (iii) affirmatively directing LPL Financial to immediately return to Braverman's name and unfettered control all assets presently held in the secondary IRA. See Motion for TRO at 1. Braverman additionally requested the Court to "[compel Judge] Singleton to allow [Braverman] to pay her counsel out of [Braverman's] separate property being held and controlled by [Judge] Singleton." Amended Motion at 1. Braverman argued that she is entitled to prospective injunctive relief against New Mexico and its agents to halt violations of her right to equal treatment under Title II of the ADA. See Motion for TRO ¶ 1, at 2. She further argued that none of the Defendants are entitled to immunity. See Motion for TRO ¶ 2, at 2. The Court denied Braverman's Motion for TRO and entered a Memorandum Opinion to that effect. See Court's Order denying Motion for Temporary Restraining Order, filed October 6, 2011 (Doc. 14)("Order denying TRO"); Memorandum Opinion, filed October 19, 2011 (Doc. 19)("Memorandum Opinion"). In its Memorandum Opinion, the Court explained that it denied the

---

[2] Judge Singleton subsequently adopted the Findings of Fact and Conclusions of Law on July 25, 2011. See First Amended Complaint ¶¶ 45-46, at 12.

TRO because:

> (i) Braverman has not met the heavy showing required to secure a disfavored temporary restraining order; (ii) the Court must abstain from interfering with ongoing state-court judicial proceedings that involve important state interests and provide a forum in which Braverman may raise her claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12111-12213 ("ADA"); (iii) the Anti-Injunction Act, 28 U.S.C. § 2283, also prohibits the Court from providing the relief Braverman requests; (iv) judicial immunity protects Judge Singleton and Special Master Hall; and (v) Judge Singleton and Special Master Hall may not be sued in their individual capacities.

Memorandum Opinion at 1-2.

On October 10, 2011, Braverman filed her Notice of Appeal, (Doc. 15)("Notice of Appeal"), appealing the Court's Order denying TRO to the Tenth Circuit.

### 2.     Braverman's First Amended Complaint.

Braverman filed her First Amended Complaint within one month of her Notice of Appeal. See First Amended Complaint at 1.  Braverman alleges two counts in her First Amended Complaint, the first for injunctive relief and the second for damages.  See First Amended Complaint ¶ 50, at 13; ¶ 66, at 16.  Braverman also asks the Court to award her attorney's fees and costs.  See First Amended Complaint ¶ 74, at 19.

With respect to her claim for damages, Braverman requests damages "proximately caused by the Defendants' violations of the Americans with Disabilities Act."  First Amended Complaint ¶ 66, at 16.  She alleges that she has lost, and continues to lose, $5,000.00 per month in investment income as the direct and proximate result of the seizure of her property.  See First Amended Complaint ¶ 67, at 16-17.  She further asserts that she has lost in excess of $700,000.00 in the value of her separate assets, and has been forced to expend more than $200,000.00 in attorney's fees and costs.  See First Amended Complaint ¶¶ 68-69, at 17.  She alleges that, in addition to those losses, she has lost in excess of $150,000.00 of her interest in community property that Goldstein "was

allowed to hide by virtue of the fact that Singleton and Hall . . . refused to permit [her] to inspect Alan Goldstein's property." First Amended Complaint ¶ 70, at 17.  Braverman alleges that she has also been damaged by Judge Singleton and Special Master Hall "causing her to be labeled as a person who should be treated differently." First Amended Complaint ¶ 71, at 17.  She asserts that Judge Singleton and Special Master Hall have caused her actual damages of at least $2,000,000.00 and that she is entitled to punitive damages of $10,000,000.00. See First Amended Complaint ¶ 73, at 18.

Braverman's claim for prospective injunctive relief is based under Title II of the ADA, 42 U.S.C. § 12132.  See First Amended Complaint ¶ 50, at 13.  She alleges that the First Judicial District Court, acting through Judge Singleton and Special Master Hall, is a public entity subject to the ADA.  See First Amended Complaint ¶ 51, at 13.  Braverman makes many allegations in her First Amended Complaint which are identical to those in her Complaint.  Compare Complaint ¶¶ 1-39, at 1-11, id. 42-45, at 12, with First Amended Complaint ¶¶ 1-39, at 1-10, id. 44-46, at 12 (alleging close to identical claims).  Braverman's First Amended Complaint also focuses on actions which have transpired since the Court denied her Motion for TRO, actions by Judge Singleton and Special Master Hall that Braverman alleges show she has received disparate treatment on account of her disability.  For one, Braverman argues that Mr. Lees was permitted to personally inspect Braverman's home for community property, while Braverman was not permitted to inspect Goldstein's home.  See First Amended Complaint ¶¶ 39-40, at 10-11.  Braverman alleges that she was denied access to Goldstein's home "on account of [her] bi-polar disorder."  First Amended Complaint ¶ 40, at 10-11.  As another example of alleged disparate treatment, Braverman argues that Judge Singleton and Special Master Hall have "determined nearly every conceivable factual dispute against [Braverman] in the [d]ivorce [p]roceeding."  First Amended Complaint ¶ 55, at 14.

-11-

Braverman asserts that this duplicitous treatment is a "retaliation against [Braverman] for her attempts to exercise her rights under the [ADA]." First Amended Complaint ¶ 55, at 14.

Braverman further asserts that Judge Singleton and Special Master Hall have acted contrary to their state law obligations to Braverman in the divorce proceeding. Braverman asserts that the Defendants have violated New Mexico state law "by depriving [Braverman] of her property without jurisdiction and by granting Goldstein an interest in [Braverman's] separate property." First Amended Complaint ¶ 54, at 14. The statutes which Braverman cites provide, respectively, that a husband and wife cannot be excluded from each other's dwelling, and that a court in a divorce proceeding has jurisdiction over "all property of the parties, wherever located or situated in the state." N.M.S.A. 1978 §§ 40-3-3; 40-4-4. Braverman alleges that Judge Singleton did not have jurisdiction over account with LPL Financial at all, because the LPL Financial is "located outside the state of New Mexico." First Amended Complaint ¶ 18, at 4. Additionally, Braverman asserts that Judge Singleton violated her statutory duty under N.M.S.A. 1978 § 40-13-4, which requires a court to either grant an ex parte application for a protective order immediately and hold a hearing on the order within ten days, or hold a hearing on a request within seventy-two hours if the order is not immediately granted. See First Amended Complaint ¶ 32, at 8. Braverman argues that Judge Singleton "recklessly endangered" Braverman's safety, and deprived her of her "liberty without due process of law in violation of the Fifth and Fourteenth Amendments . . . and her right to the equal protection of the laws" by not holding a hearing until twenty-six days after Braverman requested the protective order. First Amended Complaint ¶ 33, at 8-9. Braverman asserts that Judge Singleton would not have delayed in holding the hearing had Braverman "not suffered from a protected disability." First Amended Complaint ¶ 33, at 9.

Braverman also alleges that Judge Singleton and Special Master Hall have violated the ADA

by denying various "reasonable accommodations" which Braverman requested on account of her disability.  First Amended Complaint ¶ 32, at 9; ¶ 41, at 11.  Braverman asserts that Judge Singleton violated the ADA by not granting Braverman's "request for an accommodation": Braverman wanted Judge Singleton to order Goldstein to disclose his Arizona address so Braverman could seek "protection from Goldstein in the courts of Arizona where Goldstein was a resident."  First Amended Complaint ¶ 34, at 9.  Braverman alleged that she needed Goldstein's Arizona address to obtain a domestic order in Arizona court protecting her from Goldstein.  See First Amended Complaint ¶¶ 30-34, at 8-9.  Special Master Hall also denied Braverman's request to have her attorney-in-fact sit in on her second deposition in the divorce proceeding.  See First Amended Complaint ¶ 41, at 11.[3]  Braverman anticipated that she would not have counsel at the deposition, and requested the presence of her attorney-in-fact "to provide the support and protection she needed to cope with her disability during the deposition."  First Amended Complaint ¶ 41, at 11.  Braverman argues that the denial of these requests for accommodations is a violation of her rights under the ADA.  See First Amended Complaint ¶ 34, at 9; ¶ 41, at 11.

Braverman alleges that many of Judge Singleton and Special Master Hall's actions have violated her constitutional rights.  Braverman alleges that Judge Singleton and Special Master Hall violated her right to privacy under the Fourteenth Amendment by allowing Mr. Lees to openly review a nude photograph of Braverman during Braverman's deposition.  See First Amended Complaint ¶¶ 42, 44, at 11-12.  Regarding her property rights, Braverman alleges that seizing her LPL Financial account and partitioning part of her assets into the secondary IRA was a "deprivation of property without due process of law," in violation of her Fifth and Fourteenth Amendment rights,

---

[3]Braverman has not informed the Court who her "attorney-in-fact" is.

because Judge Singleton allegedly had no jurisdiction over Braverman's account with LPL Financial, an entity that is located outside of New Mexico.  First Amended Complaint ¶ 19, at 4-5. Braverman asserts that Judge Singleton also violated her due-process rights by granting Goldstein a veto power over the transfer, investment, or expenditure of funds in Braverman's secondary IRA. See First Amended Complaint ¶ 21-23, at 5-6.  Braverman alleges that Special Master Hall violated her due-process rights by allegedly threatening to transfer the assets in the secondary IRA to the state-court's registry if Braverman did not move the assets to an account within Special Master Hall's jurisdiction.  See First Amended Complaint ¶ 24, at 6.  Braverman also alleges that Judge Singleton violated her due-process rights under the Fifth and Fourteenth Amendments, and her right to equal protection under the law,  by not granting Braverman an order of protection against Goldstein in a timely fashion.  See First Amended Complaint ¶¶ 32-33, at 8-9.

Braverman's First Amended Complaint contains other allegations against Special Master Hall and Judge Singleton.  Braverman asserts that Special Master Hall is guilty of extortion for his alleged threat to transfer her assets to the registry of the court.  See First Amended Complaint ¶ 24, at 6.  Braverman also alleges that Judge Singleton is liable for extortion, because she did not stop Mr. Lees from using a nude photograph of Braverman throughout the divorce proceeding. Braverman alleges that the photograph was used to extort additional value from Braverman by humiliating her.  See First Amended Complaint ¶¶ 38-39, at 10; ¶ 43 at 11-12.

Braverman argues that injunctive relief is appropriate, because her property is unrecoverable -- Goldstein resides in another state, has few assets, and no other means of support.  See First Amended Complaint ¶ 60, at 15.

### 3. Braverman's Second Emergency Motion for a Temporary Restraining Order.

Braverman based her claim for relief in her Second Motion on the allegations in both her

First Amended Complaint and Second Motion.  See Second Motion ¶ 22, at 9.  Braverman's Second

Motion contained additional grounds that Braverman asserted supported her request for preliminary

injunctive relief, based on Judge Singleton and Special Master Hall's actions since the Court denied

her first Motion for TRO.

Braverman asserted that Judge Singleton's ruling since the Court denied her Motion for TRO

are additional violations of Braverman's rights "to due process and equal protection pursuant to the

Americans with Disabilities Act and the United States Constitution."  Second Motion ¶ 2, at 2.

Braverman alleged that New Mexico, through its agent, Judge Singleton,

> has unlawfully discriminated against [her] on account of her . . . disability protected
> by the [ADA] . . .[and has] denied Braverman her right to be free from the
> deprivation of property and liberty without due process of law, her procedural and
> substantive due-process rights to equal access to the courts, and her substantive due-
> process privacy rights all on account of her disability . . . contrary to the Fifth and
> Fourteenth Amendment to the United States Constitution.

Second Motion ¶ 12, at 5 (citing Grey v. Wilburn, 270 F.3d 607, 608 (8th Cir. 2001)).[4]  As in her

First Amended Complaint, Braverman contended that Judge Singleton had repeatedly applied a

different standard to Braverman than to Goldstein on account of Braverman's protected disability.

See Second Motion ¶ 9, at 4.  As an example of alleged disparate treatment, Braverman pointed to

Goldstein's ability to withdraw funds from the secondary IRA, while Judge Singleton did not

---

[4]Braverman further alleges that Judge Singleton's actions violate 18 U.S.C. § 241 (1996),
as a conspiracy against the exercise of her rights.  See Second Motion ¶ 2, at 2.  Braverman states
that "[t]his matter should be referred to the U.S. Attorney for the District of New Mexico for
investigation and prosecution," and she asserts that, "at a minimum," she is entitled to an injunction
against Judge Singleton's actions.  Second Motion ¶ 2, at 2.  Braverman presumably is alleging that
Judge Singleton and Special Master Hall have conspired together to violate her rights, because the
statute which she cites is only violated  "[i]f two or more persons conspire to injure, oppress,
threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege
secured to him by the Constitution or laws of the United States."  18 U.S.C. § 241.  Braverman does
not, however, specify in her Second Motion, with whom Judge Singleton has been conspiring to
violate Braverman's rights.  See Second Motion ¶ 2, at 2.

intervene for five months when LPL Financial denied Braverman's request to withdraw funds to pay her counsel.  See Second Motion ¶¶ 10-11, at 4-5.  She contended that her inability to access her separate property has diminished her capacity to retain counsel and her ability to pursue her legal rights, and has deprived her of the right to equal protection and equal treatment under the law and her constitutional property rights.  See Second Motion ¶ 6, at 3.  Braverman argued that Judge Singleton, through her control over the secondary IRA, and by allowing Goldstein to remove assets, will vitiate Braverman's right to one appeal under state law by destroying the means which Braverman would use to pay for her appeal.  See Second Motion ¶ 7, at 3.  Braverman asserted that her assets in the secondary IRA will be "systematically destroyed" by Goldstein's continual withdrawal of funds.  Second Motion ¶ 7, at 3.

On the basis of the facts in her First Amended Complaint, Second Motion, and Second Supplement, Braverman requested that the Court:

> (a) [prohibit] Defendant State of New Mexico acting through its agent the Honorable Sarah Singleton from allowing Alan H. Goldstein to further dissipate the secondary IRA or to make any withdrawals from such accounts; and (b) [prohibit] Defendant LPL Financial from transferring any assets in the secondary IRA to Goldstein or otherwise without Plaintiff's prior consent.

Second Motion at 9-10.  She alleged that the public would lose confidence in the judicial system if the Court did not grant her Second Motion, and she asserted that the Second Motion would not harm the Defendants, because the "Defendants have no stake" in the injunction that she requested to preserve the status quo.  Second Motion ¶ 21, at 9.

Braverman also provided additional facts in her Second Motion and Second Supplement, which she alleged show how she would be irreparably harmed if the Court did not grant her Second Motion.  Braverman alleged that Judge's Singleton's February 29, 2012 order, permitting Goldstein

to withdraw $4,200.00 per month from the secondary IRA, combined with Braverman's tax burden for each withdrawal from the account, amount to Braverman losing $6,100.00 each month.  See Second Supplement ¶¶ 2, 5, at 1-2.  Braverman further asserted that, over the course of the divorce proceeding, Goldstein has received over $92,000.00 of her money.  See Second Supplement ¶ 3, at 2.  Braverman argued that she has "no reasonable opportunity to recover these losses" and that the "unrecoverable burden will grow with each additional transfer."  Second Supplement ¶¶ 6-7, at 3.  The Defendants did not file a written response to the Second Motion.

The Court held a hearing on Braverman's Second Motion and Second Supplement.  See Transcript of Hearing at 3:3-9 (March 22, 2012)(Court)("Tr.").[5]  Braverman conceded at the hearing that she had filed a notice of appeal in state court which would, if granted, have the same impact as the Second Motion, but argued that such an appeal would not affect the remedies she can seek for a violation of her rights under the ADA in federal court.  See Tr. at 36:12-37:4 (Boyle).  Braverman also argued at the hearing that new facts created "a new compelling case" for her Second Motion, providing the Court with a stronger basis to grant her Second Motion than her Motion for TRO.  Tr. at 13:21-14:1 (Boyle).  Braverman pointed to Judge Singleton's oral order that the secondary IRA was to be Braverman's property, save the costs and equalization payment awarded to Goldstein.  See Tr. at 15:5-20 (Boyle).  Judge Singleton's oral order allowed Goldstein to withdraw $4,200.00 per month from the secondary IRA as a "reduction of his award."  Tr. at 15:17-20 (Boyle).  Braverman asserted that she immediately acted on that order and attempted to withdraw undisputed funds from the secondary IRA.  See Tr. at 15:21-25 (Boyle).  She represented that LPL Financial refused her withdrawal request, while at the same time permitting Goldstein to withdraw

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

funds, and Judge Singleton continued to allow this pattern without intervening to aid Braverman until February, 2012. See Tr. at 16:1-21 (Boyle). Braverman argued that Judge Singleton's delay was an example of disparate treatment. See Tr. at 16:21-17:1 (Boyle). Braverman argued that, in an order denying Goldstein's request for sanctions, Judge Singleton admitted that the request was part of an ongoing smear campaign, which Braverman asserted was evidence that Judge Singleton knew Braverman was being retaliated against for "assert[ing] her . . . ADA and constitutional positions in the state court." Tr. at 17:15-18:4 (Boyle). Braverman asserted that, in an order granting Goldstein's motion to reconsider, Judge Singleton stated that part of her holding was because of Braverman's conduct; Braverman argued this behavior was retaliation and a new act of discrimination. See Tr. at 18:5-19:3 (Boyle). Braverman pointed the Court to another order where Judge Singleton denied Braverman's motion for attorney's fees and argued that Judge Singleton applied a different standard when deciding LPL Financial's motion for attorney's fees. See Tr. at 19:17-20:19 (Boyle). Braverman argued that Judge Singleton's finding that Braverman acted in bad faith was additional evidence of disparate treatment. See Tr. at 21:3-12 (Boyle). Braverman asserted that the orders established several facts: (i) that there is no adequate remedy in the state court; (ii) that Braverman has faced disparate treatment based on her bi-polar disorder; (iii) that she will be irreparably harmed; (iv) that she has been denied access to the courts; and (v) that her rights under the ADA have been violated. See Tr. at 22:5-23:14 (Boyle). She requested that the Court maintain the status quo while the parties address the substantive issues in the Court of Appeals of New Mexico. See Tr. at 23:24-24:8 (Boyle).[6]

---

[6]Braverman has filed two appeals to the Court of Appeals of New Mexico in her divorce proceeding. See Braverman v. Goldstein, Case No. D-101-DM-200901009, "Notice of Appeal to Court of Appeals/Supreme Court," filed March 13, 2012; "Notice of Appeal to Court of Appeals/Supreme Court, filed July 18, 2012. At least one of Braverman's appeals to the Court of

On September 26, 2012, the Court denied Braverman's Second Motion.  See Memorandum Opinion and Order, filed September 26, 2012 (Doc. 53)("MOO").  In its MOO, the Court explained that Braverman's Second Motion did not overcome many of the legal hurdles that her Motion for TRO had faced: (i) Braverman had not shown that she was likely to suffer irreparable harm if the Second Motion was not granted; (ii) the Court would likely have to abstain from reaching the merits of Braverman's First Amended Complaint under the abstention doctrine of Younger v. Harris, 401 U.S. 37; (iii) the Anti-Injunction Act likely barred the Court granting Braverman's requested relief; (iv) Judge Singleton and Special Master Hall were likely protected from her lawsuit because of their judicial or quasi-judicial immunity; (v) Braverman was unlikely to show that the State Defendants' actions were acts of discrimination against Braverman; (vi) the harm that Braverman would suffer in the absence of granting Braverman's TRO did not outweigh any harm to Goldstein if the TRO were granted; (vii) Braverman had not shown that the injunction she requested was in the public interest; and (viii) Braverman's loss in state court against the State of New Mexico and Judge Singleton likely prevented her from re-litigating many of the claims and issues in her First Amended Complaint in federal court.[7]  See MOO at 63-64.

**4.     Braverman's Appeal to the Tenth Circuit.**

Before the Tenth Circuit, the State of New Mexico's, Judge Singleton's and Special Master

---

Appeals of New Mexico was dismissed by stipulation of the parties on September 13, 2012.  See Braverman v. Goldstein, Case No. Case No. D-101-DM-200901009, "Stipulation to Dismiss Undocketed Appeal," filed Sept. 13, 2012.

[7]The Court also explained that Braverman's claims under 18 U.S.C. §§ 241-242, alleging that Judge Singleton and Special Master Hall had conspired violate her rights, were likely to be unsuccessful because the statutes to which Braverman cites are criminal, and do not provide a private cause of action.  See MOO at 48 (citing Kelly v. Rockefeller, 69 F.App'x 414, 415 (10th Cir. 2003)).

Hall's brief was initially "deficient," as the brief failed to comply with the Tenth Circuit's filing requirements.  Notice of Appellee's Deficient Brief, No. 11-2199 (10th Cir., April 27, 2012)(Doc. 01018835344).   The appellees were able to file a brief in compliance the Tenth Circuit's requirements after the Notice of Appellee's Deficient Brief was issued.  See Brief of Appellees State of New Mexico, Sarah Singleton, and James Hall, No. 11-2199 (10th Cir., April 27, 2012)(Doc. 01018835382)("Appellee/Respondent's Brief").

The Tenth Circuit did not rule on the merits of Braverman's appeal.  See Order, No. 11-2199.  On May 1, 2012, the parties stipulated that the "appeal may be dismissed as moot."  Stipulation for Dismissal of Appeal, No. 11-2199 (10th Cir. May 1, 2012)(Doc. 01018837270).  Neither Braverman's brief nor the State Defendants' brief discussed mootness.  See generally Appeal from the United States District Court for the District of New Mexico, the Honorable James O. Browning, No. 11-2199 (10th Cir. March 19, 2012)(Doc. 01018812984)("Appellant/Petitioner's Brief"); Appellee/Respondent's Brief (neither document containing any reference to the existing or potential "mootness" of the matter in Braverman's Appellant/Petitioner's Brief).  The parties did not explain how or why the appeal had become moot in the stipulation.  See Stipulation for Dismissal of Appeal. The Tenth Circuit dismissed Braverman's appeal on May 1, 2012.  See Order of Tenth Circuit Court of Appeals (Doc. 49).  The Tenth Circuit did not discuss mootness in dismissing the appeal.  See Order of the Tenth Circuit, at 1.  The Court thus does not know why the parties stipulated that Braverman's appeal was moot.

**5.    Braverman's Complaint Against Special Master Hall and Lees in New Mexico State District Court.**

Subsequent to the Tenth Circuit's dismissal of her appeal, Braverman filed another complaint in New Mexico State District Court -- Braverman v. Gerber, Complaint for Treble Damages for a

Pattern of Racketeering Activities and Conspiracy to Commit a Pattern of Racketeering Activities, No. D-101-CV-2012-01333 (1st Judicial Dist. May 10, 2012)("Racketeering and Conspiracy Complaint"), in which Braverman alleges that Mr. Lees and Special Master Hall's actions during the divorce proceeding amount to extortion, larceny, fraud, solicitation and racketeering.  See Racketeering and Conspiracy Complaint ¶¶ 37-42, at 10-11.  Mr. Lees was voluntarily dismissed, with prejudice, from the matter on September 14, 2012, but Special Master Hall remains a defendant in state court.  See Voluntary Dismissal, No. C-0101-CV-2012-01333 (1st Judicial Dist. Sept. 14, 2012).

### 6.    The State Defendants's Motion to Dismiss.

The State Defendants move the Court to dismiss Braverman's First Amended Complaint with prejudice.  See State Defendants' Motion to Dismiss at 1.  The State Defendants argue that Braverman's First Amended Complaint suffers from five legal flaws: (i) "the Court should decline to review [Braverman's First Amended Complaint] pursuant to the abstention doctrine set forth in Younger v. Harris;" (ii) "[Braverman's First Amended Complaint] is barred by application of the Anti-Injunction Act;" (iii) "the State Defendants are entitled to immunity from the injunctive relief [Braverman] requests;" (iv) "injunctive relief is inappropriate because [Braverman] has an adequate remedy at law;" and (v) "[Braverman] cannot show the requisite likelihood of success on the merits."  State Defendants' Motion to Dismiss at 2.

With regard to their assertion that the Court should abstain from entertaining Braverman's case under Younger v. Harris, the State Defendants argue that Braverman's First Amended Complaint meets the three elements which make a federal court's abstention mandatory.  See State Defendants' Motion to Dismiss at 3 (citing Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)).  The State Defendants assert that Braverman has requested an injunction which

would interfere with an ongoing state judicial proceeding, that Braverman has requested the Court to interfere with a proceeding that involves an important state interest -- the domestic relations issue presented by her divorce proceeding -- and the State Defendants argue that Braverman has an adequate opportunity to make her ADA arguments in state court -- because she can argue to the New Mexico Court of Appeals that Judge Singleton's orders have violated her rights under the ADA. See State Defendants' Motion to Dismiss at 2-3.

The State Defendants assert that the Anti-Injunction Act bars Braverman's First Amended Complaint, because Braverman requests the Court to enjoin a state-court proceeding, an injunction that the Anti-Injunction Act prohibits. See State Defendants' Motion to Dismiss at 3 (citing Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977)). The State Defendants argue that, although the Anti-Injunction Act has three express exceptions that allow a federal court to enjoin a state-court proceeding, bringing claims under the ADA is not within one of those express exceptions. See State Defendants' Motion to Dismiss at 4 (arguing that the text of the ADA, 42 U.S.C. § 12202, does not expressly authorize federal courts to enjoin state-court proceedings).

The State Defendants assert that the Court should dismiss Braverman's First Amended Complaint because her injunctive relief seeks to enjoin the actions of state judicial officers, actions which Judge Singleton's and Special Master Hall's judicial immunity protects. See State Defendants' Motion to Dismiss at 5, 8. Further, the State Defendants assert that Braverman has an "obvious adequate legal remedy," in the form of an appeal to the New Mexico Court of Appeals, where she may bring her claims under the ADA against the State Defendants. State Defendants' Motion to Dismiss at 9.

Lastly, the State Defendants argue that Braverman's First Amended Complaint fails on the merits. The State Defendants assert that Braverman's "subjective belief about the reasons Judge

-22-

Singleton and former Judge Hall have made the rulings and recommendations they have is hardly evidence, and is woefully inadequate to sustain a finding of discrimination."  State Defendants' Motion to Dismiss at 9-10.  The State Defendants assert that Special Master Hall's Findings of Fact, which Braverman characterizes as discriminatory for discussing her "mood disorder," were not only requested by Braverman, but used by Special Master Hall to Braverman's favor -- his findings on her bi-polar disorder factored into the decision to deny Goldstein spousal support.  State Defendants' Motion to Dismiss at 10.  The State Defendants assert that Braverman's attempt to call Special Master Hall's orders discriminatory is actually a "trap[] set by [Braverman] and sprung upon the court at a later time."  State Defendants' Motion to Dismiss at 10.  The State Defendants argue that Braverman has construed New Mexico statutes regarding a judges' jurisdiction over out-of-state spousal property in an "unduly restrictive" manner, which would lead to "intolerable results" if she were correct that judges in divorce proceedings could not issue orders regarding property outside of New Mexico.  State Defendants' Motion to Dismiss at 10-11.  In conclusion, the State Defendants assert that "all of the so-called evidence [Braverman] has provided to this Court showing discrimination by Judge Singleton and [Special Master] Hall is little more than [Braverman's] unsupported conjecture."  State Defendants' Motion to Dismiss at 11.

Braverman objects to all of the State Defendants' arguments in her Response to Motion to Dismiss, filed October 13, 2011 (Doc. 20).  Braverman argues that the Court should not abstain under Younger v. Harris from entertaining her case, because "the state court does not provide an adequate forum to hear claims raised in this proceeding."  Response to Motion to Dismiss ¶ 3, at 2.  Braverman asserts that the facts she has brought to the Court's attention "very clearly establish that [Braverman] does not have an adequate state court forum to hear the claims raised in her [First Amended Complaint]."  Response to Motion to Dismiss ¶ 3, at 1.  Braverman relies on the Tenth

Circuit's decision in <u>Brown ex. rel. Brown v. Day</u>, 555 F.3d 882 (10th Cir. 2009), in her argument

that <u>Younger v. Harris</u> abstention does not apply.  Braverman asserts that the Tenth Circuit ruled

in <u>Brown ex. rel. Brown v. Day</u> that "it was inappropriate to abstain from exercising jurisdiction

where a Plaintiff [seeks] to recover Medicaid benefits that [the Plaintiff] claimed [were] denied as

the result of unlawful state conduct."  Response to Motion to Dismiss ¶ 4, at 3.  Braverman asserts

that the enforcement of her rights, under the ADA and Constitution, is not meaningfully different

from the enforcement of the right to Medicaid benefits.  <u>See</u> Response to Motion to Dismiss ¶ 4, at

3.  She also argues that the Tenth Circuit's decision to not abstain in <u>Brown ex. rel. Brown v. Day</u>

was, in part, based on the state court action not being coercive -- which she asserts is similar to her

state court divorce proceedings.  <u>See</u> Response to Motion to Dismiss ¶ 4, at 3.[8]  Braverman argues

that, "[b]ecause this proceeding represents [her] efforts to protect her federally guaranteed right to

be free from discrimination on account of her disability by the very state court involved, this Court

is not compelled to abstain from exercising its jurisdiction."  Response to Motion to Dismiss ¶ 4,

at 3.

       Braverman also argues that the Anti-Injunction Act does not bar the relief she requests in her

First Amended Complaint, because "[t]he [ADA] quite clearly expresses Congressional intent to

---

     [8]Braverman is referring to the Tenth Circuit's discussion of "coercive" administrative proceedings, and "remedial" administrative proceedings, a distinction the Tenth Circuit has established to determine whether an administrative proceeding is "ongoing" for the purposes of <u>Younger v. Harris</u> abstention.  <u>Brown ex. rel. Brown v. Day</u>, 555 F.3d at 889.  The Tenth Circuit explains in <u>Brown ex. rel. Brown v. Day</u>, that coercive proceedings are those where a "federal plaintiff contends that the state proceeding is unlawful, where as remedial proceedings are where a "federal plaintiff seeks a remedy for some other state-inflicted wrong."  555 F.3d at 889.  The distinction only applies to administrative proceedings.  <u>See</u> <u>infra</u>, Analysis, III.  A federal court should abstain from interfering with pending coercive administrative proceedings, but <u>Younger v. Harris</u> abstention does not apply to remedial administrative proceedings.  <u>See</u> <u>Brown ex. rel. Brown v. Day</u>, 555 F.3d at 890.

provide an exception to the Anti-Injunction Act."  Response to Motion to Dismiss ¶ 5, at 3. Braverman argues that, although the ADA does not expressly refer to the Anti-Injunction Act, injunctive relief against state court proceedings is available from the ADA's allowance that "equitable remedies are available 'to the same extent as such remedies are available . . . against any public or private entity.'"  Response to Motion to Dismiss ¶ 6, at 4 (quoting 42 U.S.C. § 12202). Braverman asserts that, because an injunction is available as a remedy against a public or private entity, an injunction "is available against the state, notwithstanding the provision of the Anti-Injunction Act."  Response to Motion to Dismiss ¶ 6, at 4.  Braverman argues that her divorce proceeding "presents positive proof that, if injunctions of state court proceedings for violations of the ADA are not permitted, the uniquely federal rights and remedies assured by the ADA will most certainly be frustrated or . . . completely destroyed."  Response to Motion to Dismiss ¶ 7, at 5.

Braverman asserts that the State Defendants are not entitled to judicial immunity. Braverman argues that there is "no generally applicable rule that would make judges immune from suits for equitable relief."  Response to Motion to Dismiss ¶ 9, at 5-6.  She further argues that Judge Singleton and Special Master Hall acted without jurisdiction in issuing orders regarding her out-of-state property, and thus they have no judicial immunity for those actions.  See Response to Motion to Dismiss ¶ 10, at 6 (citing Stump v. Sparkman, 435 U.S. 349, 357 (1978)).  Braverman points to her financial account being held by a California corporation as evidence that judicial immunity does not protect Judge Singleton and Special Master Hall in issuing orders over her out-of-state property. See Response to Motion to Dismiss ¶ 11, at 6.

Braverman argues that she has no adequate remedy at law, because, she alleges,  she will be irreparably harmed if she does not receive the injunctive she requests in her First Amended Complaint.  See Response to Motion to Dismiss ¶ 12, at 6-7.  Braverman asserts that she will never

-25-

be able to recover the property of which the State Defendants have deprived her, because "[she] will never be allowed to recover based on their assertion of judicial immunity."  Response to Motion to Dismiss ¶ 12, at 7.  She further alleges that she cannot recover any property transferred to Goldstein, because Goldstein has limited assets, and because neither the Court nor a state court can assert personal jurisdiction over him, because he resides outside New Mexico.  See Response to Motion to Dismiss ¶ 13, at 7.

Braverman lastly argues that the Court should not look to the merits of her First Amended Complaint in ruling on a motion to dismiss.  Braverman argues that the "likelihood of success on the merits is very clearly not an appropriate ground on which a federal court can dismiss a complaint," and thus the merits of her First Amended Complaint should not factor into the State Defendants' Motion to Dismiss.   Response to Motion to Dismiss ¶ 15, at 7 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## THE *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine embodies the jurisdictional principle that federal district courts may not serve as courts of appeal for state courts.  See Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507, 2012 WL 1132374, at *19 (D.N.M. 2012)(Browning, J.).  Review of state court judgments is within the Supreme Court of the United States' exclusive jurisdiction.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Bolden v. City of Topeka, 441 F.3d 1129, 1140 (10th Cir. 2006).  A district court has no jurisdiction over a matter in which:  "(i) a state-court loser; (ii) is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) [the state court] judgment was rendered before the commencement of the federal proceeding."   Valdez v. Metro. Prop. & Cas. Ins. Co., 2012 WL 1132374, at *38 (citing Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006)).

-26-

Although *Rooker-Feldman*, in its four elements, appears to be a straight-forward principle, the application of the doctrine can be complex.  For example, a challenge to a state court judgment is "barred even if the claim forming the basis of the challenge was not raised in the state proceedings," yet, "*Rooker-Feldman* does not bar a federal-court suit raising a claim  previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the state court judgment."  Bolden v. City of Topeka, 441 F.3d at 1141, 1144.  The Tenth Circuit has reconciled these principles by concluding that the scope of *Rooker-Feldman* is "confined to the cases of the kind . . . brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Bolden v. City of Topeka, 441 F.3d at 1142-43 (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 282).  Thus, an essential characteristic of a suit barred under *Rooker-Feldman* is that the "loser in state court invites a federal district  court to overturn state court judgments."  Bolden v. City of Topeka, 441 F.3d at 1143-44.  Conversely, a plaintiff whose  "claims do not rest on any allegation concerning the state court proceedings or judgment" would not be barred from bringing suit in federal district court under *Rooker-Feldman*.  Bolden v. City of Topeka, 441 F.3d at 1145.[9]  Thus,  where a plaintiff does not put the state court judgment itself at issue, the plaintiff may bring a federal suit "regarding the same subject matter, or even the same claims, as those presented in the state court action."  Bolden v. City of Topeka, 441

---

[9]The Court has previously discussed the relation of *Rooker-Feldman* and Younger v. Harris, 401 U.S. 37 (1971).  See F.D.I.C. v. Harger, 778 F.Supp.2d 1123, 1135 n.6 (D.N.M. 2011)(Browning, J.).  In brief, where *Rooker-Feldman* bars a federal district court from reviewing state court judgments which are final, Younger v. Harris "prevents the federal district court from interfering in an ongoing state proceeding."  F.D.I.C. v. Harger, 778 F.Supp. 2d at 1135, n.6.  Thus, a plaintiff may not request a federal district court to interfere before a state court judgment is final, or pray for relief from a state court judgment once it becomes final.

F.3d at 1139.[10]

The distinction between claims that *Rooker-Feldman* bars, and those that allege the same cause of action but are not barred, is best understood through the Tenth Circuit's application of doctrine.  The Tenth Circuit provided an example of this distinction in a hypothetical child-custody case in Bolden v. City of Topeka.  See 441 F.3d at 1129.  The Tenth Circuit explained that a father, who lost custody of his child in a state court judgment, could not then bring suit in federal court alleging that the state court judgment was invalid.  The father would be barred even if his claims in federal court were different from those in state court -- were the father, perhaps to argue that the state court deprived him of due process or was contrary to federal law on other grounds.  *Rooker-Feldman* would bar such an action.  *Rooker-Feldman* would not, however, have barred the father from seeking custody of his child in federal court.  So long as the father's complaint did not raise any allegations regarding the state court judgment specifically, *Rooker-Feldman* would be no bar. See 441 F.3d at 1145.

The Tenth Circuit, in Bolden v. City of Topeka, ruled that a district court was wrong to bar a plaintiff's suit under *Rooker-Feldman* where the plaintiff "did not seek to overturn the state court judgment."  441 F.3d at 1138.  The City of Topeka notified the plaintiff in Bolden v. City of Topeka

---

[10]The preclusion doctrine of res judicata may bar a complaint that *Rooker-Feldman* does not. *Rooker-Feldman* is a jurisdictional requirement, whereas res judicata can preclude a suit which a district court has jurisdiction to entertain.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the [state court] judgment . . . to do so would be an exercise of appellate jurisdiction.  The jurisdiction possessed by the [federal] District Courts is strictly original."); Bolden v. City of Topeka, 441 F.3d at 1145 (discussing that where *Rooker-Feldman* is not a bar, "a myriad of doctrines, including res judicata, would almost certainly bar the suit" which is brought after a state court judgment adverse to the plaintiff).  See also Campbell v. City of Spencer, 682 F.3d 1278, 1283 (10th Cir. 2012)("*Rooker-Feldman* does not . . . override or supplant preclusion doctrine.")(quoting Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. at 282).

that several properties he owned failed to meet housing code regulations and thus would be demolished.  See 441 F.3d at 1131-32.  The plaintiff initially sought to enjoin the destruction of his buildings in state court, and the state court denied his request.  The plaintiff then filed suit in federal district court, once again seeking to enjoin the destruction of his buildings.  His federal suit did not address the validity of the state court judgment or argue that federal court should override, on any grounds, the state court judgment denying his requested injunction.  See 441 F.3d at 1132.  The district court dismissed his request for an injunction under *Rooker-Feldman*, but the Tenth Circuit found that the district court misapplied the doctrine.  See 441 F.3d at 1132, 1138.  The Tenth Circuit focused on the plaintiff's claims in federal court being "identical to what they would have been had there been no state court proceeding."  441 F.3d at 1138.  Because the plaintiff's did not argue that the "judgment itself inflicted an injury," *Rooker-Feldman* did not bar the plaintiff's claims alleging violations against the city's action of destroying his buildings.  441 F.3d at 1138, 1145.  *Rooker-Feldman* did not apply, because the plaintiff's claims "would be identical even had there been no state court judgment."  441 F.3d at 1145.

Similarly, the Tenth Circuit has endorsed the logic of Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995), wherein the United States Court of Appeals for the Seventh Circuit found that *Rooker-Feldman* does not apply to a party's claims that do not request relief from a state-court judgment.  See Read v. Klein, 1 Fed. App'x 866, 870 (10th Cir. 2001)(quoting Nesses v. Sehpard, 68 F.3d at 1005).  In Nesses v. Shepard, the plaintiff suffered several losses in state court before suing the lawyers and judges involved in those state-court decisions in federal court.  See 68 F.3d at 1004.  He "allege[d] a massive, tentacular conspiracy among the lawyers and the judges to engineer [his] defeat[s]" in the state court suits.  68 F.3d at 1004.  The federal district court dismissed the federal case for want of jurisdiction on the basis of the *Rooker-Feldman* doctrine.  See

68 F.3d at 1004.  On appeal, the Seventh Circuit held that *Rooker-Feldman* did not apply.  The

Honorable Richard Posner, Circuit Judge, explained:

> [The *Rooker-Feldman* doctrine] is not that broad. Were [a plaintiff is] merely
> claiming that the decision of the state court was incorrect, even that it denied him
> some constitutional right, the doctrine would indeed bar his claim. But if he claims,
> as he does, that people involved in the decision violated some independent right of
> his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated
> by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue
> to vindicate that right and show as part of his claim for damages that the violation
> caused the decision to be adverse to him and thus did him harm.  Otherwise there
> would be no federal remedy for a violation of federal rights whenever the violator
> so far succeeded in corrupting the state judicial process as to obtain a favorable
> judgment.

Nesses v. Shepard, 68 F.3d at 1005 (internal citation omitted).  The Seventh Circuit distinguished

the case from one barred under *Rooker-Feldman* by pointing out that, although the plaintiff "was

in a sense attacking the ruling by the state court," by asserting that he lost in state-court because of

the "lawyers and the judges [engineered the plaintiff's] defeat," the plaintiff was not "seeking to

undo a remedial order of some sort," *Rooker-Feldman* did not bar his suit.  68 F.3d at 1005.

Conversely, the Tenth Circuit has barred a plaintiff's due-process claims against a city, under

*Rooker-Feldman,* where the alleged violations occurred because of a state court's order.  See

Campbell v. City of Spencer, 682 F.3d, 1278, 1284 (10th Cir. 2012).  In Campbell v. City of

Spencer, a plaintiff filed suit in federal court, alleging, among other claims, that the City of Spencer

had violated her due-process and Eighth Amendment rights by seizing her horses and imposing an

"excessive fine" pursuant to a state court order.  682 F.3d at 1280.  The federal court dismissed her

due-process allegations, finding that *Rooker-Feldman* barred the claims.  682 F.3d at 1280.  The

Tenth Circuit agreed.  Because the plaintiff's "deprivation of property . . . allegedly without just

compensation or due process was the deprivation ordered by the state court . . . [her] claim [had]

merit only if the state court forfeiture order was unlawful on the record before the court."  682 F.3d

at 1284.  The plaintiff's suit was a "direct attack on the state court's judgment because an element of [her] claim [was] that the judgment was wrongful."  682 F.3d at 1284.  "The alleged constitutional wrong was the content of the judgment . . . not . . . some act by a defendant that led to the judgment." 682 F.3d at 1285.  Thus, *Rooker-Feldman* barred the plaintiff's claims because the harm the plaintiff alleged would not have occurred but-for the state court judgment.

## LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P.12(b)(1).  The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011)(Browning, J.).  As the United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995).  In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).  Where, however, the court determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) or rule 56.  See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

**LAW REGARDING ABSTENTION UNDER <u>YOUNGER v. HARRIS</u>
AND CLAIMS FOR MONEY DAMAGES**

Under the abstention doctrine that the Supreme Court articulated in <u>Younger v. Harris</u>, federal courts should not "interfere with state court proceedings" by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings -- when the state forum provides an adequate avenue for relief. <u>Rienhardt v. Kelly</u>, 164 F.3d 1296, 1302 (10th Cir.1999).  Abstention under <u>Younger v. Harris</u> is not a principle only belonging to courts of equity, although the doctrine arose from parties seeking equitable relief from state court proceedings in federal court.  The Tenth Circuit has "not treated abstention as a 'technical rule of equity procedure,' [r]ather, [it has] recognized that the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." <u>Morrow v. Winslow</u>, 94 F.3d at 1392 (quoting <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716-17 (1996)).  This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs." <u>J.B. ex rel. Hart v. Valdez</u>, 186 F.3d 1280, 1291 (10th Cir. 1999)(quoting <u>Seneca-Cayuga Tribe v. Oklahoma</u>, 874 F.2d 709, 711 (10th Cir. 1989)).

For <u>Younger v. Harris</u> abstention to be appropriate, the Tenth Circuit has required three elements to be present: (i) interference with an ongoing state judicial proceeding; (ii) involvement of important state interests; and (iii) an adequate opportunity afforded in the state court proceedings to raise the federal claims.  <u>See</u> <u>J.B. ex rel. Hart v. Valdez</u>, 186 F.3d at 1291 (citing <u>Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)); <u>Sw. Air Ambulance, Inc. v. City of Las Cruces</u>, 268 F.3d 1162, 1177-78 (10th Cir. 2001).  When all of the elements mandating abstention clearly exist in the record, courts may, and should, address application of the <u>Younger</u>

v. Harris abstention doctrine <u>sua</u> <u>sponte</u>.  <u>See</u> <u>Bellotti v. Baird</u>, 428 U.S. 132, 143 n. 10 (1976)(stating that "abstention may be raised by the court <u>sua</u> <u>sponte</u>"); <u>Crown Point I, LLC v. Intermountain Rural Elec. Ass'n</u>, 319 F.3d 1211, 1214 (10th Cir. 2003)("The applicability of <u>Younger</u> abstention was not raised by the parties below.  However, the issue arose after a motions panel of this circuit determined, sua sponte, that the District Court was required to abstain from granting the plaintiff's request for injunctive relief based on the principles articulated in <u>Younger</u> . . . ."); <u>Morrow v. Winslow</u>, 94 F.3d 1386, 1390-91 & n. 3 (10th Cir. 1996)(raising and applying <u>Younger v. Harris</u> abstention doctrine <u>sua</u> <u>sponte</u>, holding that parties need not raise the <u>Younger v. Harris</u> abstention doctrine to preserve its applicability, and reversing and remanding for entry of an order of dismissal, because the district court failed to <u>sua</u> <u>sponte</u> apply the doctrine).  "<u>Younger</u> abstention is not discretionary once the [three] conditions are met, absent extraordinary circumstances that render a state court unable to give state litigants a full and fair hearing on their federal claims."  <u>Seneca-Cayuga Tribe v. Oklahoma</u>, 874 F.2d at 711(citation omitted).  <u>See</u> <u>Taylor v. Jaquez</u>, 126 F.3d 1294, 1296 (10th Cir.1997)(holding that, because "'application of the <u>Younger</u> doctrine is absolute . . . when a case meets the <u>Younger</u> criteria,' there is no discretion for the district court to exercise.").  When the elements of abstention under <u>Younger v. Harris</u> are met, a district court should dismiss the claims before it, unless a petitioner has brought claims which "cannot be redressed in the state proceeding," in which case the district court should stay the federal proceedings pending the conclusion of the state litigation. <u>Deakins v. Monaghan</u>, 484 U.S. 198, 194 (1988).  For example, where a party brings a claim for damages under 42 U.S.C. § 1983 (1979), as well as a request for equitable relief from a state court proceeding, a federal district court should dismiss the claims for equitable relief under <u>Younger v. Harris</u>, but stay the complaint with respect to the damages claim, because § 1983 is exclusively a federal cause of action.  <u>See</u> <u>Myers v. Garff</u>,

-34-

876 F.2d 79, 81 (10th Cir. 1989)(holding that a district court was right to dismiss claims for declaratory and injunctive relief, but that the district court should have stayed claims for damages under § 1983 against defendants until the state court proceedings ended).  See also Younger v. Harris, 401 U.S. at 43 (holding that the federal courts must dismiss suits requesting declaratory or injunctive relief when there are pending state criminal proceedings).

Younger v. Harris abstention applies where a party brings claims arising in equity; where Younger v. Harris abstention applies and a party has requested monetary relief based in law, the Tenth Circuit prefers to stay those claims while dismissing the claims for equitable relief.  See D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004).  This preference for staying legal claims for damages is grounded in the Supreme Court's discussion of why staying claims for money damages is appropriate even where other abstention criteria are met: "We have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that postpones adjudication of the dispute, not to dismiss the federal suit altogether."  392 F.3d at 1228 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. at 718).[11]  The Supreme Court in Quackenbush

---

[11]In Quackenbush v. Allstate Ins. Co., the Supreme Court explained that a court should stay, and not dismiss, legal claims for money damages where abstention under Burford v. Sun Oil Co., 319 U.S. 315 (1943),  would otherwise warrant a federal court dismissing a party's claims.  See 517 U.S. at 730 ("Under our precedents, federal courts have the power to dismiss or remand cases based on abstention only where the relief being sought is equitable . . . . Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine.").  Abstention under  Burford v. Sun Oil Co.

 allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

Quackenbush v. Allstate Ins. Co., 517 U.S. at 726-27 (internal quotations omitted).  Abstention under Burford v. Sun Oil Co. thus arises in a different context than abstention under Younger v.

-35-

v. Allstate Ins. Co. explained the interplay of claims for equitable and legal relief where a doctrine

of abstention is implicated:

> In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to "withhold action until the state proceedings have concluded;" that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether.

417 U.S. at 729-30 (quoting Growe v. Emison, 507 U.S. 25, 32 (1993)).  In D.L. v. Unified Sch.

Dist. No. 497, the Tenth Circuit reviewed a district court's dismissal, under Younger v. Harris, of

a party's claims requesting equitable relief, as well as compensatory and punitive damages, for

alleged violations under the ADA, as well as other statutes.  See 392 F.3d at 1228.  The Tenth

Circuit explained that abstention applied, under Younger v. Harris, "regardless of the relief initially

sought in the federal-court suit," if the Younger v. Harris criteria are met. 392 F.3d at 1228.  Where

a party sought monetary relief, in addition to equitable relief, however, the Tenth Circuit found that

a federal court can satisfy Younger v. Harris's rationale for avoiding interference with ongoing state-

court proceedings "by just staying proceedings on the federal damages claim until the state

proceeding is final."  392 F.3d at 1228 (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. at 730).

The Tenth Circuit went on to discuss that Younger v. Harris abstention warranted the district court

abstaining from adjudication of the plaintiffs' ADA claims, because "a resolution favorable to the

---

Harris, which counsels against exercising jurisdiction over matters which request equitable relief that would interfere with ongoing state-court proceedings.  Compare Quackenbush v. Allstate Ins. Co., 517 U.S. at 726-27 (federal courts should abstain from exercising jurisdiction over matters which present difficult issues of state law), with J.B. ex rel. Hart v. Valdez, 186 F.3d at 1291 (federal courts should abstain from exercising jurisdiction over matters which would interfere with ongoing state court proceedings).  The Tenth Circuit  has applied the Supreme Court's rationale to hold that staying, and not dismissing, legal claims for monetary relief is appropriate where abstention under Younger v. Harris is implicated.  See D.L. v. Unified Sch. Dist. No. 497, 392 F.3d at 1228.

[p]laintiffs' in this case would foreclose that suit [in state court], an interference with state-court litigation that is impermissible under <u>Younger</u>." 392 F.3d at 1229.  The Tenth Circuit found that, for the plaintiffs in <u>D.L. v. Unified Sch. Dist. No. 497</u>, there was no reason why their ADA claims for equitable relief could not be brought in state court, and thus the district court was right to dismiss those claims.  <u>See</u> 392 F.3d at 1229-30.  The Tenth Circuit ordered the district court to stay, however, the plaintiffs' compensatory and punitive damages claims brought under the ADA.  <u>See</u> 392 F.3d at 1232.[12]  This decision aligns with the Tenth Circuit's "general preference in abstention

---

[12]The Court's Memorandum Opinion and Order, denying Braverman's Second Motion, discussed that the Court believed it would likely be required to dismiss Braverman's Amended Complaint, notwithstanding her claim for money damages.  <u>See</u> MOO at 50-52.  In that MOO, the Court cited <u>Wideman v. Colorado</u>, 242 F.App'x 611 (10th Cir. 2007), wherein the Tenth Circuit affirms a district court's order dismissing all of a plaintiff's claims, even those for money damages, under <u>Younger v. Harris</u>.  <u>D.L. Unified Sch. Dist. No. 497</u> and <u>Wideman v. Colorado</u> appear contradictory.  The Tenth Circuit addressed this inconsistency in <u>D.L. Unified Sch. Dist. No. 497</u>, where the Tenth Circuit distinguished its order for the district court to stay the legal claims for money damages from a prior decision where the Tenth Circuit affirmed a district court dismissing all claims, even legal claims for damages, under <u>Younger v. Harris</u>:

> In <u>Weitzel v. Dep't of Commerce of State of Utah</u>, 240 F.3d 871, 874-75, 877-78 (10th Cir.2001), we affirmed the dismissal of a damages claim under the <u>Younger</u> doctrine.  But that decision has no precedential value with respect to this issue because the opinion did not address whether a stay would be the proper disposition.

<u>D.L. v. Unified Sch. Dist. No. 497</u>, 392 F.3d at 1228 n. 1.  <u>Wideman v. Colorado</u> did not address whether a stay would have been more appropriate than the district court's dismissal of the legal claims for money damages; rather, the Tenth Circuit's decision focused on the important state interest at issue in the ongoing state-court proceedings, a child custody dispute.  <u>See</u> 242 F.App'x at 614.  It appears that the Tenth Circuit wants district courts to follow its precedents which discuss the appropriateness of a stay, rather than the opinions which affirm a dismissal without discussing the possibility of staying damages claims.  <u>See</u> <u>D.L. v. Unified Sch. Dist. No. 497</u>, 392 F.3d at 1228 n.1.  Further, the factual situation in <u>D.L. v. Unified Sch. Dist. No. 497</u> is more on point with Braverman's Amended Complaint in that the plaintiffs in both matters have brought claims for equitable relief and monetary damages based on legal principles under the ADA.  <u>See</u> <u>D.L. v. Unified Sch. Dist. No. 497</u>, 392 F.3d at 1227.  The Court thus finds that it should follow the Tenth Circuit's pronounced preference for staying, and not dismissing, legal claims for damages where the abstention doctrines apply.  <u>See</u> <u>Allen v. Bd. of Educ., Unified Sch. Dist.</u>, 436 F.3d at 404.

cases for issuance of a stay rather than dismissal." Allen v. Bd. of Educ., Unified Sch. Dist., 68 F.3d 401, 404 (10th Cir. 1995).

### LAW REGARDING ABSTENTION UNDER YOUNGER v. HARRIS AS A JURISDICTIONAL BAR

In Younger v. Harris, the Supreme Court referred to its doctrine of abstention as a jurisdictional issue, stating: "We do not think this allegation even if true, is sufficient to bring the equitable jurisdiction of the federal courts into play to enjoin a pending state prosecution." 401 U.S. at 42. The Tenth Circuit has explicitly ruled that "Younger abstention is jurisdictional." D.L. v. Unified Sch. Dist. No. 497, 392 F.3d at 1228. Thus, a district court in the Tenth Circuit must "address [abstention under Younger v. Harris] at the outset because a determination that the district court lack[s] jurisdiction over a claim moots any other challenge to the claim, including a different jurisdictional challenge." D.L. v. Unified Sch. Dist. No. 497 392 F.3d at 1229. The Tenth Circuit has thus upheld a district court's dismissal of complaints, upon a party's motion under rule 12(b)(1), where the court "lacked jurisdiction over the claims under the Younger doctrine." Kanth v. Lubeck, 123 F.App'x 921, 923 (10th Cir. 2005)(unpublished opinion).[13] Because Younger v. Harris is a jurisdictional bar in the Tenth Circuit, a district court should look at motions to dismiss under Younger v. Harris in light of the standard prescribed for a motion to dismiss for lack of subject matter jurisdiction. Thus, a district court in the Tenth Circuit should evaluate whether the Younger v. Harris doctrine warrants abstention by evaluating all the facts before the court, not only those in

---

[13]Additionally, the United States Court of Appeals for the Ninth Circuit applies an inquiry similar to that on a 12(b)(1) motion when deciding if abstention under Younger v. Harris warrants dismissing a complaint, as the Ninth Circuit has looked to facts beyond the pleadings to determine whether an important state interest is implicated. See Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 883-88 (9th Cir. 2011)(looking to a state's legislative process and its interest in local waste management to determine whether an important state interest is present in a suit that meets the criteria for abstention under Younger v. Harris).

the complaint underlying the motion to dismiss.

## ANALYSIS

The Court is not barred, under *Rooker-Feldman*, from exercising jurisdiction over Braverman's First Amended Complaint.  Braverman does not ask the Court to relieve a harm that a state court decision caused her; rather, she seeks relief from actions which began before any state court ruling.  The Court must, however, abstain under <u>Younger v. Harris</u> from entertaining Braverman's claims, because any Court ruling would interfere with an ongoing state court proceeding.  Braverman's claims for money damages are based in theories of law, and not equity, and thus the Court will stay these claims pending the conclusion of Braverman's litigation in New Mexico state courts.  Because the Court finds that it must abstain from entertaining Braverman's First Amended Complaint, the Court will not discuss the merits of Braverman's claims.[14]

The Court has evaluated whether it must abstain from entertaining Braverman's First Amended Complaint in light of the standard the Tenth Circuit has defined for dismissals for lack of subject-matter jurisdiction, because abstention under <u>Younger v. Harris</u> is a jurisdictional issue.  <u>See</u> <u>D.L. v. Unified Sch. Dist. No. 497</u>, 392 F.3d at 1228.  Thus, the Court has considered all of the facts which Braverman has brought before the Court in ruling on the State Defendants' Motion to Dismiss.

## I. *ROOKER-FELDMAN* DOES NOT BAR THE COURT FROM ENTERTAINING BRAVERMAN'S FIRST AMENDED COMPLAINT.

"A federal court must, in every case, and at every stage of the proceeding, satisfy itself as

---

[14]On March 1, 2012, Braverman dismissed her claims against LPL Financial without prejudice.  <u>See</u> Notice of Dismissal of Claims Against LPL Financial Without Prejudice (Doc. 32)("LPL Financial Dismissal").  Thus, the Court will discuss only the State Defendants Motion to Dismiss in the context of the claims brought against the State Defendants.

to its own jurisdiction." <u>Cook v. Rockwell Intern. Corp.</u>, 618 F.3d 1127, 1135 n. 6 (10th Cir. 2010). As the Court is now aware of Braverman's loss in New Mexico state district court, the Court must determine whether it has jurisdiction over Braverman's action in this Court.  This Court may not serve as a court of appeal from New Mexico state courts.  See <u>Valdez v. Metro. Prop. & Cas. Ins. Co.</u>, 2012 WL 1132374, at *19 ("<u>Valdez</u>").  Were Braverman, as a state court loser,  coming before this Court to request a review of the correctness of the New Mexico state district court's judgment against her that was rendered before her proceeding in federal court commenced, the Court would have no jurisdiction over her First Amended Complaint.  See <u>Valdez</u>, 2012 WL 1132374, at *38. The Court finds, however, that Braverman is not requesting a review of the New Mexico state district court's judgment against her.  Rather, Braverman is requesting the same relief as she would request had she not brought suit in state court.  The Court, thus, has jurisdiction to entertain her First Amended Complaint.  See <u>Bolden v. City of Topeka</u>, 441 F.3d at 1138 (finding that *Rooker-Feldman* does not bar a party's complaint when the relief sought was independent of a state court judgment against the party); <u>Nesses v. Shepard</u>, 68 F.3d at 1005 (same).

In Braverman's First Amended Complaint, she requests the Court to award money damages and enjoin the actions of the State Defendants' actions.  See First Amended Complaint ¶ 50, at 13; <u>id.</u> ¶ 66, at 16.  The New Mexico state district court did not cause the specific harm which she alleges. The actions of the State Defendants, which she allege violate her rights, began before the New Mexico state district court issued its ruling.  Both her State Complaint and her First Amended Complaint allege that Judge Singleton's orders violated Braverman's rights during Braverman's divorce proceedings; Judge Singleton first issued her orders on October 29, 2010.  See State Complaint, ¶ 21, at 5; First Amended Complaint ¶ 16, at 4.  The New Mexico state district court, in the State Dismissal Order, did not empower Judge Singleton to issue orders for the first time,

rather the State Dismissal Order declined to enjoin Judge Singelton's ongoing actions.  Furthermore, Braverman has not requested that the Court examine and overrule the State Dismissal Order. Indeed, she did not even bring the State Dismissal Order to the Court's attention.  Thus, her First Amended Complaint does not fall within the narrow category of cases in which a "loser in state court invites federal district  court to overturn state court judgments," because Braverman is not alleging that the state court "judgment itself inflicted the injury" that she requests the Court to review.  Bolden v. City of Topeka, 441 F.3d at 1143-45.  Braverman's First Amended Complaint is instead identical to what it would have been "had there been no state court proceeding."   Bolden v. City of Topeka, 441 F.3d at 1138.   Therefore, even though Braverman's First Amended Complaint is "regarding the same subject matter, [and] even the same claims, as those presented in the state court action," *Rooker-Feldman* does not bar this Court from entertaining her suit.  441 F.3d at 1139.

## II.   THE COURT MUST ABSTAIN UNDER YOUNGER v. HARRIS FROM ENTERTAINING BRAVERMAN'S CASE.

The framers of the United States Constitution designed a system in which

there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

Younger v. Harris, 401 U.S. at 44.  Federal courts should not interfere with ongoing state court proceedings "by granting equitable relief such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" when the state forum provides an adequate avenue for relief.  Rienhardt v. Kelly, 164 F.3d at 1302.  A court in the Tenth Circuit should abstain from entertaining cases which implicate the Younger v. Harris doctrine, so long as an adequate opportunity is afforded in the state court proceedings to raise the federal claims.

See J.B. ex rel. Hart v. Valdez, 186 F.3d at 1291.

The state proceeding is ongoing; Judge Singleton has entered a Final Decree and assets continue to be transferred to Goldstein pursuant to that decree.  See First Amended Complaint ¶ 26, at 6 ("[T]he divorce Proceeding is continuing.").  The Supreme Court has held that, where the lawsuit out of which the federal proceeding arises is pending before the state court of appeals, it is ongoing for the purposes of Younger v. Harris abstention.  See  Pennzoil Co. v. Texaco Inc., 481 U.S. at 14 n.13 ("There is at least one pending judicial proceeding in the state courts; the lawsuit out of which Texaco's constitutional claims arose is now pending before a Texas Court of Appeals in Houston, Texas.").  Accord BP Am. Prod. Co. v. Kysar, No. CIV 05-0578, 2010 WL 2541695, at *6 (D.N.M. Apr. 22, 2010)(Browning, J.)(holding that a case on appeal is ongoing for abstention purposes).  The first criteria of Younger v. Harris abstention is therefore met.

This case involves an issue that is uniquely in furtherance of the state court's ability to perform their judicial functions, because Braverman seeks to enjoin the actions of Judge Singleton in adjudicating Braverman's divorce from Goldstein.  See First Amended Complaint ¶ 74, at 18.  Braverman has requested the Court to enjoin Judge Singleton's specific action of transferring Braverman's assets to Goldstein, including any transfer which may flow from the enforcement of the Final Decree in the divorce proceeding.  See First Amended Complaint ¶ 74, at 18.  The Supreme Court's decision in  Pennzoil Co.  v. Texaco Inc. is on point to Braverman's requested relief, where the Court discussed the states' interest in "forcing persons to transfer property in response to a court's judgment." 481 U.S. at 13.  The Supreme Court explained that, were a federal court to enjoin such transfers

> not only would federal injunctions in such cases interfere with the execution of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained.  So long as those challenges relate to pending

state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state court litigation mandates that the federal court stay its hand.

Pennzoil Co. v. Texaco Inc., 481 U.S. at 14.  Braverman asks the Court to enjoin the enforcement of an order to enforce the transfer of assets that the state court determined was appropriate, the same relief that the Supreme Court in Pennzoil Co. v. Texaco Inc. ruled requires a federal court to abstain.

Furthermore, a state has an important interest in divorce proceedings, because divorce proceedings "belong to the laws of the States and not to the laws of the United States." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. at 12-13 (internal quotations and citations omitted).

Accord Vaughan v. Smithson, 883 F.2d 63, 65 (10th Cir. 1989)(stating the rationale for the domestic-relations exception to federal diversity jurisdiction: "the states have a strong interest in domestic relations matters . . .[;] such disputes often require ongoing supervision, a task for which the federal courts are not suited . . .[;] and . . . such cases serve no particular federal interest.").[15]

---

[15]The domestic-relations exception is a judicially created exception to Congress' grant of diversity-based subject-matter jurisdiction to the federal district courts.

In the more than 100 years since [the Supreme Court] laid the seeds for the development of the domestic relations exception, the lower federal courts have applied it in a variety of circumstances.  Many of these applications go well beyond the circumscribed situations posed by Barber [v. Barber, 62 U.S. 582 (1858)] and its progeny.

Ankenbrandt v. Richards, 504 U.S. 689, 701(1992).  In 2006, the Supreme Court emphasized that "the exception covers only a narrow range of domestic relations issues . . . . [O]nly divorce, alimony, and child custody decrees remain outside federal jurisdictional bounds." Marshall v. Marshall, 547 U.S. 293, 307-08 (2006).  The Court, following the Supreme Court's direction in Marshall v. Marshall, recently held that the domestic-relations exception did not apply where the plaintiff asked the Court to re-distribute the marital estate based on claims of fraud.  See Martinez v. Martinez, No. CIV 09-02812010, WL 1608884, at * 17 (D.N.M. 2010)(Browning, J.).  It is not clear whether the domestic relations exception applies to cases that arise under the federal courts' federal-question jurisdiction.  See Johnson v. Rodrigues (Orozco), 226 F.3d 1103, 1111 n.4 (10th Cir. 2000)("Some district courts in the Second Circuit have applied the domestic-relations exception in federal question cases, but other Circuits have held that the exception is limited to diversity suits . . . . The

The Tenth Circuit has recognized that domestic relations can provide an important state interest in ongoing state proceedings such that the federal courts should abstain under Younger v. Harris.  See Morrow v. Winslow, 94 F.3d at 1397.  In Morrow v. Winslow, the ongoing state proceeding involved an adoption, and the state-court judge was named as a defendant in the federal proceeding.  See 94 F.3d at 1397.  The Tenth Circuit stated that "[t]he state, although not a party, obviously has an interest in the orderly conduct of the proceedings in its courts in a manner which protects the interests of the child and the family relationship."  94 F.3d at 1397.  Similar concerns are present when the state court proceeding involves a divorce; the state court must look to the equities involved and determine how to divide marital assets, while protecting both parties' interests.  The case before the Court implicates an important state interest -- New Mexico's interest in domestic relations -- because Braverman seeks to enjoin New Mexico's resolution of her divorce with Goldstein.

Braverman asserts that the Court should apply the "coercive/remedial distinction" that the

---

parties have not addressed this distinction and we do not feel it advisable or necessary . . . to do so.");  Rivers v. Hewitt, No. 11-0439, 2011 WL 1344231, at *2 (D. Colo. Apr. 4, 2011)(Tafoya, J.)("[Supreme Court] language suggests that the domestic relations exception applies to both diversity and federal question jurisdiction.").

    In this case, the Court does not rely on the domestic relations exception, because Braverman has not requested the Court to issue a "divorce, alimony, [or] child custody decree;" rather Braverman is seeking relief from alleged discrimination and constitutional violations in state court.  Velarde v. Velarde, 2009 WL 2426232, at * 6 (quoting Ankenbrandt v. Richards, 504 U.S. at 703).  Claims which relate to domestic relations, but are based on other causes of action, are not implicated by the domestic- relations exception.  See Johnson v. Rodrigues (Orozco), 226 F.3d at 1111-12(ruling that the domestic-relations exception did not bar a plaintiff's due-process claims, where the due process claims alleged that the Utah's adoption statutes "unconstitutionally denied him notice and an opportunity to be heard," even though deciding the plaintiff's due-process claim would affect a child custody determination).  Accordingly, Braverman's First Amended Complaint does not fall within the narrow category of cases which the domestic-relations exception precludes.  The Court refers to the domestic-relations exception in this Memorandum Opinion and Order only to emphasize the importance of the ongoing state proceeding to the State of New Mexico and the unique state interest that exists in divorce proceedings.  See Ankenbrandt v. Richards, 504 U.S. at 701.

Tenth Circuit applied in <u>Brown ex. rel. Brown v. Day</u>, and find on that ground that the Court is not bound to abstain under <u>Younger v. Harris</u>.  <u>See</u> Response to Motion to Dismiss ¶ 4, at 3 (citing <u>Brown ex. rel. Brown v. Day</u>, 555 F.3d at 882).  The distinction drawn between coercive and remedial proceedings in <u>Brown ex. rel. Brown v. Day</u> is inapplicable to the case before the Court. In <u>Brown ex. rel. Brown v. Day</u>, the Tenth Circuit recognized that different tests for determining whether a proceeding is "ongoing" for purposes of <u>Younger v. Harris</u> abstention apply to civil judicial and civil administrative proceedings:

> Similarly, in an attempt to cabin the <u>Younger</u> doctrine, the [Supreme] Court has suggested that <u>Younger</u> abstention is limited to situations where the <u>civil proceedings</u> in question (1) are enforcement proceedings or (2) involve certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions . . . . Although that analysis also suggests there should not have been <u>Younger</u> abstention in this case, we will use the dichotomy between remedial and coercive administrative proceedings set forth in [Ohio Civil Rights Comm'n v.] Dayton <u>Christian Schs.</u>, 477 U.S. 619, 627 n.2 (1986), as the touchstone for determining whether the <u>administrative proceeding</u> is the type of proceeding that merits <u>Younger</u> abstention. . . .

<u>Brown ex. rel. Brown v. Day</u>, 555 F.3d at 888 n.5 (emphasis added).  The Tenth Circuit explained that it would use "the dichotomy between remedial and coercive administrative proceedings. . . as the touchstone for determining whether [an] <u>administrative proceeding</u>" merits abstention under <u>Younger v. Harris</u>, because its sister courts tend to use that articulation and because the doctrine in <u>Younger v. Harris</u> originated in "concerns that federal plaintiffs might stymie state coercive proceedings by trying to bring suit in the federal courts."  555 F.3d at 889 n.5 (emphasis added). The Tenth Circuit noted, however, that while this test is "close kin to the distinctions drawn in the civil <u>Younger</u> cases," it applies only to administrative proceedings.  555 F.3d at 889 n.5.  In adopting the coercive/remedial distinction to determine whether a court must abstain under <u>Younger v. Harris</u> from interfering with a state administrative proceeding, the Tenth Circuit explained that the issue

-45-

was one of "first impression"; the "close-kin" is the application of <u>Younger v. Harris</u> to both "enforcement proceedings . . . [and] orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  555 F.3d at 888, 889 n. 5 (citing <u>New Orleans Pub. Serv., Inc. v. Council of City of New Orleans</u>, 491 U.S. 350, 368 (1989)).[16]  This test follows from the Supreme Court's holding in <u>Pennzoil Co. v. Texaco Inc.</u>, a civil judicial case, that abstention under <u>Younger v. Harris</u> should apply, "not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government."  481 U.S. at 11. The Tenth Circuit thus adopted the coercive/remedial distinction because administrative proceedings did not fit into the categories of either a criminal proceeding, or a proceeding that implicated important state interests, such that abstention was

---

[16]Although the Court previously held in <u>Martinez v. Martinez</u>, 2010 WL 1608884, that a divorce proceeding initiated by a private party is not "a state-initiated civil-enforcement proceeding that the Tenth Circuit would consider 'coercive'" or the type of ongoing proceeding that requires abstention, that decision did not take fully into account the Supreme Court's decision in <u>Pennzoil Co. v. Texaco Inc.</u>, 481 U.S. at 11.  <u>Martinez v. Martinez</u>, 2010 WL 1608884 at *16.  The Court's opinion also relied on <u>Brown ex rel. Brown v. Day</u> for the coercive/remedial distinction, but did not fully recognize that the coercive/remedial test was designed to determine <u>Younger v. Harris'</u> application to civil administrative proceedings and not to civil judicial proceedings.  <u>See Martinez v. Martinez</u>, 2010 WL 1608884, at *16.  The Court's opinion in <u>Martinez v. Martinez</u> involved the Magistrate Judge's Proposed Findings of Fact and Conclusions of Law in a case brought by a pro se plaintiff.  Accordingly, the Court did not have the benefit of robust briefing on the issue, as only one party addressed abstention under <u>Younger v. Harris</u>.  Nevertheless, the Court continues to believe that its holding in <u>Martinez v. Martinez</u> -- dismissing all claims under judicial immunity or for failure to state a claim -- is correct.  The incomplete analysis of <u>Younger v. Harris</u> and its progeny did not affect the ultimate result on abstention, because the Court found that there was not an ongoing proceeding for the purposes of abstention under <u>Younger v. Harris</u>.  <u>See Martinez v. Martinez</u>, 2010 WL 1608884, at *16 ("That the jurisdiction of the state court is in some sense continuing should not justify considering the state-court proceeding 'ongoing' for the purposes of <u>Younger</u> abstention.").  The Court found that the state proceeding was not ongoing, because a final decree had already been entered, and the parties to the state proceeding had chosen not to pursue their state court judicial remedies.  <u>See Martinez v. Martinez</u>, 2010 WL 1608884, at *15-17.

warranted.  See 555 F.3d at 889 n. 5.  The Tenth Circuit did not indicate that the coercive/remedial distinction should be extended to differentiate amongst civil judicial proceedings, which already had established tests for determining if abstention under Younger v. Harris is warranted.  See 555 F.3d at 891.

Therefore, Braverman's citation to Brown ex. rel. Brown v. Day as support for her argument that the Court should not abstain because the "state court proceedings invovled here were . . . not coercive," is off-point.  Response to Motion to Dismiss ¶ 4, at 3.  The coercive/remedial distinction is not a doctrine which federal courts use to determine whether Younger v. Harris abstention is appropriate in state court civil judicial proceedings; the distinction is used to determine whether Younger v. Harris abstention applies because an administrative proceeding is still ongoing. Furthermore, Braverman has declined to note that her First Amended Complaint is different from the complaint in Brown ex. rel. Brown v. Day.  In Brown ex. rel. Brown v. Day, the Tenth Circuit ruled that a separate reason that abstention was not warranted was that "Brown seeks not to enjoin the state proceedings, but to secure relief from the state's allegedly unlawful conduct."  555 F.3d at 889.  Braverman, on the other hand, seeks to enjoin the her state court divorce proceeding by requesting an injunction that prohibits the State Defendants from enforcing a Final Decree, the opposite of the complaint which the Tenth Circuit held in Brown ex. rel. Brown v. Day was not barred under Younger v. Harris.  Thus, Braverman's reliance on Brown ex. rel. Brown v. Day is not persuasive, and the Court finds that she has requested an injunction of ongoing state court proceedings, such as a federal court may not issue under Younger v. Harris.

Braverman argues that Younger v. Harris does not apply, because her case does not meet the third element in that she alleges she has no adequate forum in state court to bring her claims.  See Response to Motion to Dismiss ¶ 3, at 2.  Braverman argues that she has "no other forum in which

-47-

[she] can obtain relief from Singleton's acts," Second Motion ¶ 17, at 7, yet she admitted that an appeal in the Court of Appeals of New Mexico would grant the same relief as that which she currently seeks from the Court:

> [I]t's true that Braverman has filed a notice of appeal [in state court] and  . . . a motion to stay execution, which would have effectively the same impact as what we're [requesting] here . . . [and if we are] unhappy about what the state court does with that motion to stay we can seek a review of that.

Tr. at 36:12-37:4 (Boyle).  While Braverman has argued that her rights under the Constitution and the ADA can only be enforced in federal court, see Tr. at 11:4-12 (Boyle), New Mexico state courts have the authority to hear those claims as well.  See, e.g., Haywood v. Drown, 556 U.S. 729 (2009)("State courts . . . have a concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited.").  The ADA does not expressly prohibit state jurisdiciton, and neither does the Constitution with respect to due process claims.  See, e.g., D.L. v. Unified Sch. Dist. No. 497, 392 F.3d at 1229 (ordering a district court to abstain, under Younger v. Harris, from entertaining a party's ADA and Constitutional claims, because, in part "no reason appears why Plaintiffs' contentions here could not be interposed . . . in state court").  She has made interlocutory appeals, but there is nothing to indicate that she cannot appeal at the end of the case, the more usual means of appeal.  Braverman's appeal to the Court of Appeals of New Mexico is now dismissed, by the parties' stipulation, yet the Court still has no reason to believe that the state courts are an inadequate forum for the relief Braverman requests.  That Braverman's appeal to the Court of Appeals of New Mexico was dismissed by stipulation denotes only that she has reached some accord in state court and found the appeal to be unnecessary.

Braverman may be suggesting that requiring her to sue Judge Singleton and Special Master Hall in the ongoing proceeding over which they preside is not providing her an adequate forum.

This prong of <u>Younger v. Harris</u> does not require the forum to allow claims that otherwise are not permissible; in other words, this prong does not change the law. Just because New Mexico does not allow judges to be sued individually does not make the forum inadequate; the ADA itself does not allow individuals, except "employers" within the ADA's definition, to be sued. <u>Cordova v. New Mexico Taxation and Revenue Dept.</u>, No. CIV 08-0681, 2011 WL 7164459, at *33 (D.N.M. 2011)(Browning, J.)(quoting <u>Butler v. City of Prairie Vill., Kan.</u>, 172 F.3d 736, 744 (10th Cir. 1999)). All that is required is that there be an adequate forum to raise these issues. Here, there is a forum with the court of appeals. Because Braverman can likely sue in either state court or federal court, in this case or in another case, for the actions and omissions of which she complains, the adequate remedy analysis does not change because the claims are against Judge Singleton and Special Master Hall. As to the claims against the State of New Mexico, Judge Singleton and Special Master Hall will likely preside over that case, even if it implicates their actions; a judge's actions are often at issue on appeal, and that fact does not prohibit the judge from sitting on the case. <u>See Wideman v. Colorado</u>, 242 F.App'x at 613-615 (affirming a district court's decision to abstain under <u>Younger v. Harris</u> from entertaining a father's claims which allege, as a basis for seeking relief in federal court, that the state court had mistreated him in a child custody dispute; the Tenth Circuit stated that the "Colorado state court proceedings offer [the father] an adequate opportunity to litigate any federal constitutional issues that may arise"). Accordingly, Braverman can bring the identical ADA claim in her state case and can argue the same matter that she seeks to bring here; it is unlikely that an ADA claim against the individual Defendants will be successful in either place, so it will likely be only against the State of New Mexico in either forum.[17] Judges usually do not present a

_____

[17]The Court is not commenting on the merits of Braverman's claims. The Court is only addressing the availability of suit in state court for the claims she has brought in this Court.

conflict of interest or create an appearance of impropriety by presiding over a case against their government employer, even if their actions are what is generally at issue. As to the constitutional claims against individuals, Braverman may not be able to bring her claims against the individual defendants in state court, but she may bring her claims against the State of New Mexico in state court. See Carter v. City of Las Cruces, 121 N.M. 580, 582, 915 P.2d 336 (Ct. App. 1996)(holding that state sovereign immunity does not bar claims against a state brought under § 1983); Tennessee v. Lane, 541 U.S. 509, 518, 533-34 (2004)("Title II [of the ADA] as it applies to the cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress § 5 authority" to "abrogate the States' Eleventh Amendment immunity."). See also Manning v. N.M. Energy, Minerals & Natural Res. Dept., 140 N.M. 528, 538, 144 P.3d 87, 97 (2006)(citing Tennessee v. Lane and noting that the ADA is an example of Congressional legislation that abrogates state sovereign immunity). The ability to bring claims against individuals in federal court is a legal fiction to overcome the Eleventh Amendment and is in all practical effects a case against the state. See Ex Parte Young, 209 U.S. 123, 159-60 (1908). Here, because Braverman can sue the State of New Mexico for her constitutional and ADA claim in state court, the state court provides an adequate forum for all of her claims.

The Court thus must abstain, under Younger v. Harris, from entertaining Braverman's First Amended Complaint. The Court thus is unpersuaded that any "extraordinary circumstances" are present which would make New Mexico state courts unable to give Braverman a "full and fair hearing on her federal claims," and the Court will need to abstain. Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d at 711.

Braverman's claims for compensatory and punitive damages, however, are not subject dismissal under Younger v. Harris abstention. The Tenth Circuit has expressed a preference for

staying legal claims for damages where a federal court must otherwise abstain from adjudicating equitable claims which would interfere with ongoing state court proceedings.  See D.L. v. Unified Sch. Dist. No. 497, 392 F.3d  at 1228.  Accordingly, the Court will stay Braverman's claims for money damages and dismiss all other claims without prejudice under the Younger v. Harris abstention doctrine.

The Court will not address the merits of Braverman's claims, as the Court must abstain from issuing any ruling that would interfere with her ongoing state court divorce proceeding.

**IT IS ORDERED** that: (i) the State Defendants' Motion to Dismiss is granted in part and denied in part; (ii) the Court will abstain from entertaining Braverman's claim for injunctive relief and dismiss that claim without prejudice; (iii) the Court will stay Braverman's claim for money damages pending the conclusion of her state court litigation; and (iv) the parties must provide the Court with status updates for all related state court proceedings every ninety days.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Kate Braverman
Santa Fe, New Mexico

      *Plaintiff pro se*

Gary K. King
  Attorney General of New Mexico
Scott Fuqua
  Assistant Attorney General
Santa Fe, New Mexico

      *Attorneys for the Defendants State of New Mexico, Judge Sarah Singleton, and Special Master James Hall*

-51-

Richard S. Lees
Richard S. Lees, P.A.
Santa Fe, New Mexico

*Attorney for Proposed Intervenor Alan H. Goldstein*

Ross Crown
Lewis and Roca, LLP
Albuquerque, New Mexico

*Attorney for dismissed Defendant LPL Financial*